No. 22-16020

# In the United States Court of Appeals for the Ninth Circuit

TERESA MACCLELLAND; KAREN UMBERGER; SCOTT WILLITS;
VALERIE REED; JOHN ST. JARRE; LOUISE MONSOUR; VANESSA WEST;
TIM FRASCH; DARLEEN PEREZ; WILLIAM KAUPELIS; KERRY SHOWALTER;
BRUCE SCHRAMM; PATRICIA GAGAN; WILLIAM ERIC LOUGH;
MICHAEL CARNEY; ANNA GUTIERREZ; JANETTE LISNER; MARILYN KAYE;
TERESA TOY; MICHAEL BRANOM; GLORIA STERN; DAVID MASSARO;
AUGUSTUS JOHNSON; EDNA TOY; MOLLY BROWN; LINDA JENKINS;
GABRIELLE POZZUOLI, FOR THEMSELVES, AS PRIVATE ATTORNEYS
GENERAL, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
PLAINTIFFS-APPELLEES

*v.*

CELLCO PARTNERSHIP, DBA VERIZON WIRELESS;
VERIZON COMMUNICATIONS, INC., DEFENDANTS-APPELLANTS

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA (CIV. NO. 21-8592)
(THE HONORABLE EDWARD M. CHEN, J.)*

## BRIEF OF APPELLANTS

CRYSTAL NIX-HINES
SHON MORGAN
MARINA LEV
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
*865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017*

CHRISTINA HENRIQUEZ
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
*555 Twin Dolphin Drive,
5th Floor
Redwood Shores, CA 94065*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
YISHAI SCHWARTZ
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
*2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com*

JING YAN
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
*1285 Avenue of the Americas
New York, NY 10019*

## CORPORATE DISCLOSURE STATEMENT

Appellant Verizon Communications, Inc., has no parent corporation, and no publicly held company owns 10% or more of its stock. Verizon Communications indirectly owns 10% or more of appellant Cellco Partnership.

# TABLE OF CONTENTS

Page

Introduction ........................................................................................1

Statement of jurisdiction ...................................................................2

Statement of the issues ....................................................................2

Statement of the case ........................................................................3

Summary of argument ......................................................................12

Argument .........................................................................................18

I.    The district court erred by declining to send the question
of unconscionability to the arbitrator ........................................20

    A.    An arbitration agreement clearly and unmistakably
delegates questions of arbitratility to the arbitrator
by incorporating the rules of the American
Arbitration Association ...................................................21

    B.    There is no exception to the AAA incorporation rule
for unsophisticated parties ..............................................25

    C.    The district court erred by declining to enforce the
delegation of questions of arbitrability to the arbitrator ............29

II.    Even absent the delegation, the district court should not
have addressed the unconscionability of contractual
provisions outside the arbitration agreement .........................31

III.    The district court's unconscionability analysis was erroneous ..............35

    A.    The mass-arbitration provision is not substantively
unconscionable ...............................................................36

        1.    The mass-arbitration provision employs a fair
and established process for resolving numerous
similar claims .......................................................37

        2.    The district court erred by concluding that the mass-
arbitration provision is substantively unconscionable .......41

    B.    The Federal Arbitration Act preempts the district court's
application of state law to the collective-arbitration waiver ........47

Page

Table of contents—continued:

C. The six-month notice provision is not substantively unconscionable ........................................................................54

D. The integration clause is not substantively unconscionable ........57

IV. The decision below should be reversed or, in the alternative, vacated ..........................................................................59

## TABLE OF AUTHORITIES

### CASES

*Abramson* v. *Juniper Networks, Inc.*,
9 Cal. Rptr. 3d 422 (Ct. App. 2004) ......................................................46

*Armendariz* v. *Foundation Health Psychcare Services, Inc.*,
6 P.3d 669 (Cal. 2000) ....................................................45, 46, 60, 61

*Arnold* v. *Homeaway, Inc.*, 890 F.3d 546 (5th Cir. 2018) ..........................23, 24

*ASP Properties Group, L.P.* v. *Fard, Inc.*,
35 Cal. Rptr. 3d 343 (Ct. App. 2005) ..........................................45, 59

*AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333 (2011) .......................*passim*

*Awuah* v. *Coverall North America, Inc.*, 554 F.3d 7 (1st Cir. 2009) .........23, 30

*B.D.* v. *Blizzard Entertainment, Inc.*,
292 Cal. Rptr. 3d 47 (Ct. App. 2022) ..............................................27

*Belaustegui* v. *International Longshore & Warehouse Union*,
36 F.4th 919 (9th Cir. 2022) ..........................................................61

*Blair* v. *Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019) .....................*passim*

*Blanton* v. *Domino's Pizza Franchising, LLC*,
962 F.3d 842 (6th Cir. 2020) ..............................................23, 24, 26

*Brennan* v. *Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ..........................*passim*

Page

Cases—continued:

*Bridge Fund Capital Corp.* v. *Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010)................................................................33, 34

*Briggs* v. *Merck Sharp & Dohme*, 796 F.3d 1038 (9th Cir. 2015)..............37, 43

*Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440 (2006)......................31

*Caballero* v. *Premier Care Simi Valley LLC*,
284 Cal. Rptr. 3d 560 (Ct. App. 2021) ...........................................27

*Campbell* v. *Boston Scientific Corp.*, 882 F.3d 70 (4th Cir. 2018)....................38

*Caremark, LLC* v. *Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022).............32

*Casa del Caffe Vergnano S.P.A.* v. *ItalFlavors, LLC*,
816 F.3d 1208 (9th Cir. 2016)........................................................26, 27, 28

*Chavarria* v. *Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) ......................42

*Checking Account Overdraft Litigation, In re*,
856 Fed. Appx. 238 (11th Cir. 2021)................................................24

*Chevron U.S.A., Inc., In re*, 109 F.3d 1016 (5th Cir. 1997) ...............................37

*Commonwealth Edison Co.* v. *Gulf Oil Corp.*,
541 F.2d 1263 (7th Cir. 1976)..........................................................24

*Communications Workers* v. *AT&T Inc.*, 6 F.4th 1344 (D.C. Cir. 2021)........24

*Connor* v. *First Student, Inc.*, 423 P.3d 953 (Cal. 2018)....................................39

*Contec Corp.* v. *Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ..................23

*Cordas* v. *Uber Technologies, Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) ......25

*DiCarlo* v. *MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021) ..............................26

*Dish Network LLC* v. *Ray*, 900 F.3d 1240 (10th Cir. 2018) ..............................23

Page

Cases—continued:

*Ellis* v. *U.S. Security Associates*,
169 Cal. Rptr. 3d 752 (Ct. App. 2014) ....................................55, 56

*Epic Systems Corp.* v. *Lewis*, 138 S. Ct. 1612 (2018).....................48, 49, 51, 52

*Fallo* v. *High-Tech Institute*, 559 F.3d 874 (8th Cir. 2009).............................23

*Field Intelligence Inc.* v. *Xylem Dewatering Solutions Inc.*,
49 F.4th 351 (3d Cir. 2022)...............................................................24

*Ford Motor Warranty Cases*,
218 Cal. Rptr. 3d 185 (Ct. App. 2017) ...............................................39

*G.G.* v. *Valve Corp.*, 799 Fed. Appx. 557 (9th Cir. 2020)...................................25

*Gountoumas* v. *Giaran, Inc.*, Civ. No. 18-7720,
2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) .................................25

*Green Tree Financial Corp.* v. *Randolph*, 531 U.S. 79 (2000) .........................42

*Grey* v. *American Management Services*,
139 Cal. Rptr. 3d 210 (Ct. App. 2012) ...............................................58

*Grice, In re*, 974 F.3d 950 (9th Cir. 2020)............................................................18

*Hanford Nuclear Reservation Litigation, In re*,
534 F.3d 986 (9th Cir. 2008)....................................................38, 46

*Hardeman* v. *Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021),
*cert. denied*, 142 S. Ct. 2834 (2022) ................................................37

*Hedging Concepts, Inc.* v. *First Alliance Mortgage Co.*,
49 Cal. Rptr. 2d 191 (Ct. App. 1996) ................................................29

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .......................................................8, 20, 21, 26

*Ingalls* v. *Spotify USA, Inc.*, Civ. No. 16-3533,
2016 WL 6679561 (N.D. Cal. Nov. 14, 2016)................................25

Page

Cases—continued:

*Isaak* v. *Superior Court*,
  288 Cal. Rptr. 3d 795 (Ct. App. 2022) ..............................................39

*Iskanian* v. *CLS Transportation Los Angeles, LLC*,
  327 P.3d 129 (Cal. 2014) ......................................................49, 50

*Jackson* v. *S.A.W. Entertainment Limited*,
  629 F. Supp. 2d 1018 (N.D. Cal. 2009)..............................................56

*Jipping* v. *First National Bank Alaska*,
  735 Fed. Appx. 436 (9th Cir. 2018).................................................58

*Johnson & Johnson Talcum Powder Cases*,
  249 Cal. Rptr. 3d 642 (Ct. App. 2019))............................................39

*Kilgore* v. *KeyBank, N.A.*, 718 F.3d 1052 (9th Cir. 2013) ................................42

*Kindred Nursing Centers Limited Partnership* v. *Clark*,
  137 S. Ct. 1421 (2017) ..........................................................54

*Lim* v. *TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) ...............................36

*Little* v. *Auto Stiegler, Inc.*, 63 P.3d 979 (Cal. 2003)..................................40

*Magill* v. *Wells Fargo Bank, N.A.*, Civ. No. 21-1877,
  2021 WL 6199649 (N.D. Cal. June 25, 2021).........................................25

*Martinez* v. *BaronHR, Inc.*, 265 Cal. Rptr. 3d 523 (Ct. App. 2020) ......................27

*Martinez* v. *Master Protection Corp.*,
  12 Cal. Rptr. 3d 663 (Ct. App. 2004) ..........................................56, 57

*McGill* v. *Citibank, N.A.*, 393 P.3d 85 (Cal. 2017)....................................*passim*

*McLellan* v. *Fitbit, Inc.*, Civ. No. 16-36,
  2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ........................................25

*Miller* v. *Gammie*, 335 F.3d 889 (9th Cir. 2003) .......................................52

Page

Cases—continued:

*MK Hillside Partners* v. *Commissioner*,
  826 F.3d 1200 (9th Cir. 2016) ............................................................52

*Mohamed* v. *Uber Technologies*, 848 F.3d 1201 (9th Cir. 2016)...........24, 26, 44

*Momot* v. *Mastro*, 652 F.3d 982 (9th Cir. 2011)................................................26

*Moreno* v. *Sanchez*, 131 Cal. Rptr. 2d 684 (Ct. App. 2003) ..............................55

*Mountain Air Enterprises, LLC* v. *Sundowner Towers, LLC*,
  398 P.3d 556 (Cal. 2017) ...................................................................58

*Muriithi* v. *Shuttle Express, Inc.*, 712 F.3d 173 (4th Cir. 2013) ...............33, 34

*O'Connor* v. *Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018)...............20

*Oracle America, Inc.* v. *Myriad Group, A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ......................................................20, 22

*OTO, L.L.C.* v. *Kho*, 447 P.3d 680 (Cal. 2019) .......................................36, 39, 40

*Owens* v. *Auxilium Pharmaceuticals, Inc.*,
  895 F.3d 971 (7th Cir. 2018)...............................................................38

*Pinnacle Hip Implant Products Liability Litigation, In re*,
  888 F.3d 753 (5th Cir. 2018)...............................................................38

*Poublon* v. *C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017)................*passim*

*Prima Paint Corp.* v. *Flood & Conklin Manufacturing Co.*,
  388 U.S. 395 (1967)..................................................................19, 32

*Pure Wafer Inc.* v. *City of Prescott*, 845 F.3d 943 (9th Cir. 2017)....................58

*Qualcomm Inc.* v. *Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006)......................24

*Ramirez* v. *Vintage Pharmaceuticals, LLC*, 852 F.3d 324 (3d Cir. 2017) ......39

*Reigelsperger* v. *Siller*, 150 P.3d 764 (Cal. 2007)................................................27

Page

Cases—continued:

*Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63 (2010) ....................... *passim*

*Revitch* v. *DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) ................................19

*Richardson* v. *Coverall North America, Inc.*,
    811 Fed. Appx. 100 (3d Cir. 2020),
    *cert. denied*, 141 S. Ct. 1685 (2021) ...............................................24

*Romero* v. *Watkins & Shepard Trucking, Inc.*,
    9 F.4th 1097 (9th Cir. 2021) ..........................................................18

*Sakkab* v. *Luxottica Retail North America, Inc.*,
    803 F.3d 425 (9th Cir. 2015).................................................. *passim*

*Samaniego* v. *Empire Today LLC*,
    140 Cal. Rptr. 3d 492 (Ct. App. 2012) ..........................................57

*Sanchez* v. *Valencia Holding Co., LLC*, 353 P.3d 741 (Cal. 2015) ...................41

*Simply Wireless, Inc.* v. *T-Mobile US, Inc.*,
    877 F.3d 522 (4th Cir. 2017)...........................................................23

*Soltani* v. *Western & Southern Life Insurance Co.*,
    258 F.3d 1038 (9th Cir. 2001)........................................................55

*Sonic-Calabasas A, Inc.* v. *Moreno*, 311 P.3d 184 (Cal. 2013)....................40, 55

*St. Paul Fire & Marine Insurance Co.* v. *AmerisourceBergen Corp.*,
    295 Cal. Rptr. 3d 400 (Ct. App. 2022) ..........................................38

*StockX Customer Data Security Breach Litigation, In re*,
    19 F.4th 873 (6th Cir. 2021) ..........................................................34

*Terminix International Co.* v. *Palmer Ranch Limited*
    *Partnership*, 432 F.3d 1327 (11th Cir. 2005) .................................24

*Thrifty Payless, Inc.* v. *The Americana at Brand, LLC*,
    160 Cal. Rptr. 3d 718 (Cal. Ct. App. 2013) ...................................59

Page

Cases—continued:

*Tompkins* v. *23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016) ........................ 44, 55

*Victoria* v. *Superior Court*, 710 P.2d 833 (Cal. 1985) ........................................ 45

*Viking River Cruises, Inc.* v. *Moriana*, 142 S. Ct. 1906 (2022) .............. *passim*

*Wilson* v. *21st Century Insurance Co.*, 171 P.3d 1082 (Cal. 2007) ................... 43

## STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ................................................. *passim*

    9 U.S.C. § 2 ................................................................................... 19

    9 U.S.C. § 3 ................................................................................... 31

    9 U.S.C. § 4 ............................................................................... 19, 31

    9 U.S.C. § 16(a)(1)(A) ...................................................................... 2

    9 U.S.C. § 16(a)(1)(B) ...................................................................... 2

28 U.S.C. § 1332(d)(2) ........................................................................... 2

California Private Attorneys General Act,
    Cal. Labor Code §§ 2698-2699.8 ............................................. *passim*

Cal. Civ. Code § 1643 ........................................................................... 45

Cal. Civ. Code § 1654 ........................................................................... 45

Cal. Civ. Code § 1670.5(a) ................................................................... 60

## MISCELLANEOUS

American Arbitration Association, Consumer Arbitration Rules,
    <tinyurl.com/aaaconsumerarbrules> ....................................... 4, 30

Eldon E. Fallon et al., *Bellwether Trial in Multidistrict Litigation*,
    82 Tul. L. Rev. 2323 (2008) ..................................................... 38, 42

Page

Miscellaneous—continued:

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022) ..................41

## INTRODUCTION

This is an appeal from an order denying a motion to compel arbitration under an arbitration agreement that undisputedly encompasses the claims at issue. In refusing to compel arbitration, the district court deviated from the text of the Federal Arbitration Act, the ordinary rules of contract interpretation, and the decisions of other courts of appeals, to carve out a unique "unsophisticated party" exception to the general principle that an arbitration agreement's incorporation of the American Arbitration Association's rules establishes that the parties clearly and unmistakably intended to delegate questions of arbitrability to the arbitrator. The court then declined to enforce the arbitration agreement on the ground that the agreement was "permeated" by unconscionability. In reaching that conclusion, the court violated Supreme Court precedent by adjudicating unconscionability challenges to contractual provisions outside the arbitration agreement. And it interpreted several of the agreement's provisions in erroneous ways that ensured they were unconscionable.

The district court's decision was deeply flawed. The court should never have reached the question of unconscionability in the first instance, because the agreement delegates questions of arbitrability to the arbitrator. But even were that not the case, the federal rule of severability required the court to send to the arbitrator plaintiffs' unconscionability challenges to contractual provisions outside the arbitration agreement. The district court's substantive

analysis was also erroneous: almost all of the challenged provisions are enforceable under California law, and the sole unenforceable provision does not provide a basis for invalidating the entire arbitration agreement. The district court's order denying the motion to compel arbitration should be reversed. In the alternative, the order should be vacated and the case remanded for further proceedings.

## STATEMENT OF JURISDICTION

On July 1, 2022, the district court issued an order denying appellants' motion to compel arbitration and stay further proceedings. *See* ER-3–29. Appellants filed a notice of appeal on July 12, 2022. *See* ER-164–166. This Court has jurisdiction under 9 U.S.C. § 16(a)(1)(A) and (B). The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). *See* ER-47.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred by concluding that the parties' arbitration agreement, which incorporates the rules of the American Arbitration Association, fails to provide clear and unmistakable evidence that the parties intended to delegate questions of arbitrability to the arbitrator, on the ground that plaintiffs are unsophisticated parties.

2.      Whether, even in the absence of a delegation, the district court erred by deciding the unconscionability of provisions of the parties' contract that are severable from the arbitration agreement as a matter of federal law.

2

3.     Whether the district court erred by declining to enforce the parties' arbitration agreement on the ground that it is unconscionable under California law.

## STATEMENT OF THE CASE

1.     Appellant-defendant Cellco Partnership, which does business as Verizon Wireless, is the Nation's leading provider of wireless telecommunications service.  Appellant-defendant Verizon Communications, Inc., is Cellco's parent corporation.  *See* ER-47.  Appellees, plaintiffs below, are 27 individuals who purchased postpaid wireless service from defendants.  *See* ER-62–141.

On November 3, 2021, three of the plaintiffs filed this putative class action against defendants in the Northern District of California, later amending their complaint to add the remaining plaintiffs.  *See* D. Ct. Dkt. 1; ER-46–47.  Plaintiffs allege that defendants have misled consumers by failing to disclose, and then later concealing, that postpaid wireless customers are charged a monthly administrative fee in addition to the advertised price of a monthly plan.  *See* ER-48–62 (operative complaint at the time of the decision on appeal).  Plaintiffs assert claims under three California consumer-protection statutes and state common law.  *See* ER-147–161.  Plaintiffs request relief in the form of damages, individual and public injunctive relief, and disgorgement.  *See* ER-161–162.

2.     Defendants moved to compel arbitration under each of plaintiffs' customer agreements. *See* D. Ct. Dkt. 20.

a.     The parties' contracts include an arbitration agreement written in capital letters and set off from the rest of the agreement with a gray background. *See* ER-37–39. Certain key provisions are also in bold. *See* ER-37–39. The arbitration agreement states that "you and Verizon both agree to resolve disputes only by arbitration or in small claims court." ER-37. For claims over $10,000, the agreement provides that any arbitration will proceed under the Consumer Arbitration Rules of the American Arbitration Association (AAA). *See* ER-37. For claims of $10,000 or less, the party bringing the claim can choose between the AAA's Consumer Arbitration Rules or the Rules for Binding Arbitration of the Better Business Bureau (BBB). *See* ER-37. The agreement provides website addresses for both organizations. *See* ER-37. Notably, the AAA's Consumer Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration R. 14(a) <tinyurl.com/aaaconsumerarbrules>.

The arbitration agreement also contains an express waiver of class, collective, and representative arbitrations. As is relevant here, the collective-arbitration waiver states that "the arbitrator may award money or injunctive

relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." ER-37. The waiver further states that "[n]o class, representative or private attorney general or general injunctive relief theories of liability or prayers for relief may be maintained in any arbitration held under this agreement." ER-37.

In a provision addressing so-called "mass arbitration," which occurs when the same counsel files numerous arbitrations raising similar legal challenges, the agreement provides that, "[i]f 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims" using "the same or coordinated" counsel, the claims must proceed "in a coordinated proceeding." ER-38. In that proceeding, counsel for the customers and counsel for defendants "each select five cases to proceed first in arbitration in a bellwether proceeding." ER-38. "[I]f the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding," the agreement requires the parties to select another batch of ten cases to arbitrate in a second bellwether proceeding. ER-38. The process continues "until the parties are able to resolve all of the claims, either through settlement or arbitration." ER-38.

The arbitration agreement concludes with a waiver of the right to a jury trial, providing that, "[i]f for any reason a claim proceeds in court rather than through arbitration, you and Verizon agree that there will not be a jury trial." ER-39.

The customer agreement also contains two severability clauses. One is located within the arbitration agreement and states that, "[i]f for some reason the prohibition on class arbitrations set forth" in the collective-arbitration waiver "cannot be enforced as to all or part of a dispute, then the agreement to arbitrate will not apply to that dispute or part of the dispute." ER-38. The other is a general severability clause located outside the arbitration agreement that provides, "[i]f any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitration . . .), is ruled invalid, that part may be removed from this agreement." ER-39.

b. Plaintiffs opposed the motion to compel arbitration, arguing that six provisions in the customer agreement are unconscionable under California law. *See* D. Ct. Dkt. 29, at 10-23. Only three of those provisions are part of the arbitration agreement: the collective-arbitration waiver, the mass-arbitration provision, and the jury-trial waiver. *See id.* at 13, 14-16, 17-23.

The remaining three provisions are outside the arbitration agreement. *See* D. Ct. Dkt. 29, at 11-13, 13-14, 16-17. The first provision outside the arbitration agreement—the six-month notice provision—requires customers to notify defendants in writing about any dispute regarding the customer's bill within six months of receiving the bill, or else "waive[] [the] right . . . to bring an arbitration or small claims case regarding any such dispute." ER-35.

The second provision—the punitive-damages waiver—limits the parties to "direct damages" and expressly prohibits the recovery of punitive damages. ER-36. The third provision—the integration clause—provides that "[t]his agreement and the documents it incorporates form the entire agreement between us" and that "[y]ou can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement." ER-39.

Plaintiffs contended that the entire arbitration agreement was unconscionable and thus invalid. They argued that the district court should disregard the agreement's severability clauses on the ground that the agreement is "permeated" with unconscionability and was drafted in bad faith. *See* D. Ct. Dkt. 29, at 23-24.

In reply, defendants argued that plaintiffs were required to arbitrate their unconscionability challenges. Defendants pointed to the arbitration agreement's incorporation of the AAA rules for claims over $10,000 and noted that, in *Brennan* v. *Opus Bank*, 796 F.3d 1125 (2015), this Court held, in the context of an arbitration agreement between two sophisticated parties, that "[i]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id*. at 1130; *see* D. Ct. Dkt. 34, at 2-4.

3.     The district court denied defendants' motion to compel arbitration. *See* ER-3–29.  The court noted that plaintiffs did not dispute that they had assented to the arbitration agreement or that their claims fell with the agreement's scope.  *See* ER-6–7.  But the court declined to enforce the agreement, holding that it was unconscionable.  *See* ER-7–29.

a.     The district court first held that the agreement lacked the necessary "clear and unmistakable evidence" of an intent to delegate questions of arbitrability to the arbitrator.  ER-7–9; *see Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  The district court acknowledged *Brennan* but noted that this Court had declined to decide whether the same rule applied to agreements involving an unsophisticated party.  *See* ER-7–8; *Brennan*, 796 F.3d at 1131.

The district court then held that the *Brennan* rule did not apply "[w]here at least one party is unsophisticated." ER-8.  The court largely relied on the decisions of some district courts in this circuit that have reached the same conclusion.  *See* ER-8.  The district court reasoned that "[c]ommon customers" of defendants "should not be expected to understand that the incorporation by reference of the AAA rules  .  .  .  would mean that the validity and enforceability of the arbitration provision would be resolved by an arbitrator." ER-8–9.  The district court added that its conclusion was "especially true" here because the arbitration agreement allows customers to choose to

8

arbitrate under the BBB rules for claims of $10,000 or less, and the BBB rules lack an "explicit delegation clause." ER-9. The court reasoned that "it is not clear that the consumer would consider any individual claim to be worth over $10K." ER-9 (citation omitted).

The district court also declined to defer to an arbitrator to determine plaintiffs' challenges to provisions outside the arbitration agreement, reasoning that defendants' argument based on Supreme Court precedent "exalts form over substance." ER-9.

b.     The district court proceeded to hold that the arbitration agreement was unenforceable because of unconscionability. *See* ER-10–29.

i.     The district court determined that the parties' agreement was "at least minimally procedurally unconscionable" because it was a contract of adhesion. ER-11. But the court recognized that, because plaintiffs had "only established a minimal amount of procedural unconscionability," California law required a showing of "significant substantive unfairness to avoid arbitration." ER-11. The Court proceeded to hold that all six of the challenged contract provisions were substantively unconscionable. *See* ER-12–26.

*Mass-arbitration provision.* — The district court held that the mass-arbitration provision was unconscionable. *See* ER-20–26. The court determined that the procedures could impose undue delay on consumers before they could submit a demand for arbitration. *See* ER-23. And the court stated

9

that, because a customer was not permitted to file a demand for arbitration until the customer's case was selected through the bellwether process, the limitations period may run before filing, giving defendants a complete defense to the claim. *See* ER-23. The court also concluded that the mass-arbitration provision lacked "mutuality" because defendants were free to select the same law firm without restriction in all of their arbitrations, whereas any group of 25 plaintiffs represented by the same law firm was subject to the mass-arbitration provision. *See* ER-24.

*Collective-arbitration waiver.* — The district court held that the collective-arbitration waiver improperly precluded plaintiffs from seeking public injunctive relief, in violation of the California Supreme Court's decision in *McGill* v. *Citibank*, *N.A.*, 393 P.3d 85 (2017). *See* ER-16–18. The court recognized that, in *Viking River Cruises, Inc.* v. *Moriana*, 142 S. Ct. 1906 (2022), the Supreme Court held that the Federal Arbitration Act partially preempted a related California rule forbidding the waiver of certain representative, private-attorney-general claims. *See* ER-18. But the district court disagreed with defendants that *Viking River* precluded plaintiffs' challenge. *See* ER-18.

*Six-month notice provision.* — The district court recognized that "[a] provision which requires consumers to *notify* [defendants] of a dispute within a set amount of time differs from" a contractual limitations period, in part because it is less "draconian." ER-13, ER-14. But the court concluded that the

10

notification provision was substantively unconscionable because the six-month time limit was shorter than the statutory limitation periods applicable to plaintiffs' claims, and a customer who fails to comply with the provision "will forfeit her right to bring suit." ER-13.

*Integration clause.* — The district court next concluded that the integration clause was substantively unconscionable because it "purports to exclude *all* extrinsic evidence without *any* exceptions, even to claims for which extrinsic evidence or parole evidence may be considered." ER-19.

*Jury-trial waiver.* — The district court held that the jury-trial waiver violated California law, but it put "no weight" on that conclusion, because the provision applied only "when a claim is *not* being arbitrated" and thus did not "limit the scope of arbitration." ER-15 (citation omitted).

*Punitive-damages waiver.* — Defendants did not dispute the unenforceability of the punitive-damages waiver under California law. *See* ER-15.

ii.    The district court declined to sever the provisions it found unconscionable because, in its view, the agreement was "permeated" by unconscionability. *See* ER-26–29. The court acknowledged that the customer agreement contained two severability provisions and that, "as a mechanical matter, the problematic provisions could be excised." ER-28. But the court refused to do

so, asserting that severance might "incentivize[]" companies "to retain unenforceable provisions." ER-29. The court thus denied the motion to compel arbitration. *See* ER-29.

4.     On September 29, 2022, the district court entered a partial stay pending appeal, allowing only limited discovery. *See* ER-30.

## SUMMARY OF ARGUMENT

The district court erred in numerous ways in refusing to enforce the parties' arbitration agreement. As a threshold matter, the court erred by reaching the question of unconscionability at all, because the parties delegated questions of arbitrability to the arbitrator. But even if that were not the case, the district court violated Supreme Court precedent by ruling on the unconscionability of contractual provisions outside the arbitration agreement. The district court's substantive resolution of plaintiffs' unconscionability challenges fails on its own terms as well. The district court's decision denying the motion to compel arbitration should be reversed or, in the alternative, vacated.

I.     The district court erred by declining to send the question of unconscionability to the arbitrator.

A.     In *Brennan* v. *Opus Bank*, 796 F.3d 1125 (2015), this Court held that, because the AAA rules empower the arbitrator to decide questions of his or her own jurisdiction, the incorporation of those rules into an arbitration

agreement creates a clear and unmistakable delegation of questions of arbitrability to the arbitrator. Fully ten other courts of appeals have reached the same conclusion with respect to the AAA or similarly worded rules, and none has reached the contrary result. While this Court in *Brennan* purported to limit its decision to the facts before it—which involved an agreement between sophisticated parties—the Court made clear that nothing in the opinion should be taken to require a different result where one party is unsophisticated. Since *Brennan*, two courts of appeals have expressly rejected the argument that the AAA-incorporation rule should apply only where both parties are sophisticated, and this Court has reached the same conclusion in an unpublished opinion.

B.    In the wake of *Brennan*, a conflict has developed among the district courts in this circuit on the question whether the sophistication of the parties is relevant to the AAA-incorporation rule. The correct answer is that it is not. Nothing in the text of the Arbitration Act supports a distinction between sophisticated and unsophisticated parties. And any such distinction cannot be reconciled with the objective theory of contracts, under which a party's contractual obligations are determined by the language of the contract rather than the party's subjective understanding of the agreement.

C.    There is no dispute here that the parties' arbitration agreement incorporates the AAA rules. And while the district court suggested that the

incorporation of the BBB rules for claims under $10,000 might confuse a consumer, that reasoning rests on the same flawed premise as the district court's analysis of the AAA incorporation:  namely, that a consumer's potential lack of understanding of a contract overrides its objective meaning.  The district court thus erred by declining to send plaintiffs' unconscionability challenges to the arbitrator.

II.    Even absent the delegation, the district court erred by addressing the unconscionability of contractual provisions outside the arbitration agreement.  Longstanding Supreme Court precedent makes clear that a party cannot avoid an arbitration agreement by arguing that a contractual provision separate from the arbitration agreement is invalid.  The district court violated that federal rule of severability by adjudicating plaintiffs' challenges to the six-month notice provision, the punitive-damages waiver, and the integration clause.  At a minimum, the district court should have sent the challenges to those three provisions to the arbitrator.

III.    While the Court need not reach the issue, the district court's unconscionability analysis was also erroneous.  The district court recognized that only a minimal amount of procedural unconscionability is present in the arbitration agreement.  And contrary to the court's determination, the agreement is not substantively unconscionable.

A.      The mass-arbitration provision is valid because it employs a fair and established process for resolving numerous similar claims.  The agreement contemplates that the parties will use bellwether arbitrations to gain information about the claims, which can then facilitate a global resolution.  Both federal and California courts have recognized the benefit of bellwether proceedings in mass litigation and commonly use them in multidistrict litigation.  The mass-arbitration provision thus does not violate California public policy or alter fundamental legal duties.  The provision instead serves entirely legitimate purposes:  to increase efficiency in dispute resolution and to avoid the *in terrorem* settlement pressure created by mass arbitrations that require defendants to pay millions of dollars in arbitration fees without regard to the merits of the claims, with the ultimate goal of forcing a costly settlement.

The district court's reasons for concluding that the mass-arbitration provision was unconscionable lack merit.  While the provision may delay the adjudication of some claims in a mass arbitration—as is the case with bellwether trials in mass and multidistrict litigations—the provision is designed to produce a quicker overall resolution by facilitating a global resolution.  The district court was also incorrect to interpret the mass-arbitration provision as allowing the limitations period to run after a claimant has provided written notice of their claims to defendants and to continue to run while a claimant is waiting to file their claim in a bellwether arbitration.  The agreement does not

require such an interpretation, and the most sensible reading is that a consumer tolls the limitations period by providing defendants with a written notice of dispute. Defendants also agreed to waive any limitations defense that would arise solely from the commencement of a coordinated proceeding. Finally, the provision does not lack mutuality. Both plaintiffs and defendants are permitted to select the counsel of their choice, and only a modicum of bilaterality is required in any event.

B.    The Arbitration Act preempts the district court's application of California law to the collective-action waiver. The district court concluded that the agreement violates *McGill* v. *Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), which prohibits agreements that require the waiver of claims for statutory public injunctive relief. While this Court upheld the *McGill* rule in *Blair* v. *Rent-A-Center, Inc.*, 928 F.3d 819 (2019), that decision relied almost entirely on the Court's earlier decision in *Sakkab* v. *Luxottica Retail North America, Inc.*, 803 F.3d 425 (2015). The decision in *Sakkab* upheld the validity of the California rule against the waiver of representative claims under the Private Attorney General Act, reasoning that such claims do not impermissibly alter the nature of arbitration, as conceived by the Arbitration Act, because an individual's pursuit of representative claims under the Act does not present the same procedural complexities as class actions. But the Supreme Court rejected that reasoning in *Viking River Cruises, Inc.* v. *Moriana*, 142 S. Ct. 1906 (2022),

explaining that parties cannot be forced to arbitrate claims for third-party relief regardless of procedural complexity, and holding that the Arbitration Act partially preempts the rule that *Sakkab* upheld.

*Viking River* thus eliminates the foundation for *Blair* and renders it no longer good law. Against that backdrop, the Court should hold that the Arbitration Act preempts the *McGill* rule. As applied by the district court, that rule puts contracting parties to a choice that the Arbitration Act forbids: forgo true bilateral arbitration or include an express provision in the arbitration agreement permitting claims for public injunctive relief to be heard in court.

C.    The six-month notice provision is not unconscionable. The weight of California precedent demonstrates that a six-month contractual limitations period is valid, and the notice provision requires only that the claimant provide written notice to defendants about a bill-related dispute; it is not necessary for the claimant to commence a lawsuit or arbitration.

D.    The integration clause is also not unconscionable. Like other standard integration clauses, it provides only that the customer agreement constitutes the parties' entire agreement and that any statements made by defendants' representatives outside the contract do not alter the agreement. The district court violated California law by interpreting the agreement in a way that ensured it was unconscionable.

IV.    The appropriate remedy in this case depends on the particular disposition the Court reaches.  If the Court agrees that the district court erred by holding that the arbitration agreement's incorporation of the AAA rules does not constitute a clear and unmistakable delegation, it should reverse the decision below.  The Court should also reverse if it reaches the substantive question of unconscionability and concludes that all of the above provisions are not unconscionable.  But if the Court were to conclude that some but not all of the disputed contract provisions are unconscionable, vacatur of the district court's order and a remand for further proceedings on the question of severability would be appropriate.

## ARGUMENT

The Federal Arbitration Act "places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms." *In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020).  In that way, the Act "reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Romero* v. *Watkins & Shepard Trucking, Inc.*, 9 F.4th 1097, 1100 (9th Cir. 2021) (internal quotation marks and citation omitted).  The Act "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* (citation omitted).

Under Section 2 of the Act, a written arbitration agreement involving a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act thus "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Poublon* v. *C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (internal quotation marks and citation omitted).

Under Section 4 of the Act, a court must grant a motion to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; *see also Prima Paint Corp.* v. *Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403 (1967) (interpreting Section 3 to impose the same requirement for stay motions). "Because the Act leaves no place for the exercise of discretion by a district court, a federal court's role is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Revitch* v. *DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (internal quotation marks and citations omitted).

It is undisputed that plaintiffs entered into arbitration agreements that cover their claims. *See* ER-6. The district court held that the agreements

were invalid, however, on the ground that they were unconscionable under California law. That holding was flawed in three fundamental respects. *First*, the court should not have reached the question of unconscionability at all, because the arbitration agreement delegates questions of arbitrability to the arbitrator. *Second*, even absent the delegation, the court was not permitted to resolve the validity of contractual provisions outside the arbitration agreement. *Third*, the court's substantive analysis of unconscionability was erroneous on its own terms. Under de novo review, *see O'Connor* v. *Uber Technologies, Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018), the district court's order denying appellants' motion to compel arbitration should be reversed. In the alternative, the order should be vacated and the case remanded for further proceedings.

## I. THE DISTRICT COURT ERRED BY DECLINING TO SEND THE QUESTION OF UNCONSCIONABILITY TO THE ARBITRATOR

The question whether an arbitration agreement is unenforceable because of unconscionability is a threshold question of "arbitrability." *See, e.g.*, *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63, 72-75 (2010). As a default rule, courts are to resolve any such questions that arise on a motion to compel arbitration. *See Oracle America, Inc.* v. *Myriad Group, A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). But the Federal Arbitration Act "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc.*

20

v. *Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). For a court to conclude that such an agreement exists, there must be "clear and unmistakable" evidence that the parties intended to "delegate threshold arbitrability questions to the arbitrator." *Id.* at 530.

Here, the parties' arbitration agreement provides the requisite clear and unmistakable evidence by incorporating the AAA rules. The district court nevertheless decided the question of unconscionability, holding that the incorporation of the AAA rules does not constitute a clear and unmistakable delegation "[w]here at least one party is unsophisticated." ER-8. That was erroneous.

### A. An Arbitration Agreement Clearly And Unmistakably Delegates Questions Of Arbitrability To The Arbitrator By Incorporating The Rules Of The American Arbitration Association

This Court and numerous other courts of appeals have held that an arbitration agreement's incorporation of the AAA rules constitutes clear and unmistakable evidence of an intent to arbitrate questions of arbitrability.

1. In *Brennan* v. *Opus Bank*, 796 F.3d 1125 (2015), this Court held that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* at 1130. *Brennan* involved an employment contract that required disputes between the employer (a bank) and the employee (an executive vice president)

21

to be "settled by binding arbitration in accordance with the Rules of the American Arbitration Association." *Id.* at 1128 (citation omitted). The applicable AAA rules stated that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* (citation omitted).

The Court held that the incorporation of that AAA rule into the arbitration agreement provided "clear and unmistakable" evidence that the parties agreed to delegate questions of arbitrability to the arbitrator. *Brennan*, 769 F.3d at 1130. The Court noted that it had already held that the incorporation of the UNCITRAL Rules—"which contain a jurisdictional provision almost identical to the one in the AAA rules"—"constitute[s] clear and unmistakable evidence" of a delegation. *Id.* (quoting *Oracle*, 724 F.3d at 1074-1075). And it observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules" suffices to delegate questions of arbitrability to the arbitrator. *Id.* (citation omitted).

After reaching that conclusion, the Court noted that the "issue of the sophistication of the parties" arose at oral argument. *Brennan*, 796 F.3d at 1130. The Court declined to address that issue, however, because it viewed both parties as sophisticated. *See id.* at 1130-1131; *see also Oracle*, 724 F.3d at 1075 n.2 (same). But *Brennan* made clear that its holding "should not be interpreted to require that the contracting parties be sophisticated or that the

contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* The Court added that its holding "does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Id. Brennan* acknowledged that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* at 1130-1131 (compiling cases from seven other courts of appeals).

2.    Judicial consensus on the AAA-incorporation rule has grown even stronger since *Brennan*. Today, all ten courts of appeals to have considered the question have held that the incorporation of the AAA rules (or similarly worded rules) provides clear and unmistakable evidence that the parties agreed to arbitrate questions of arbitrability. *See Awuah* v. *Coverall North America, Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Contec Corp.* v. *Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Simply Wireless, Inc.* v. *T-Mobile US, Inc.*, 877 F.3d 522, 527-528 (4th Cir. 2017) (same holding as to "substantively identical" JAMS rules), *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524; *Arnold* v. *Homeaway, Inc.*, 890 F.3d 546, 551-552 (5th Cir. 2018); *Blanton* v. *Domino's Pizza Franchising, LLC*, 962 F.3d 842, 845-846 (6th Cir. 2020); *Fallo* v. *High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009); *Dish*

*Network LLC* v. *Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Terminix International Co.* v. *Palmer Ranch Limited Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Communications Workers* v. *AT&T Inc.*, 6 F.4th 1344, 1347-1348 (D.C. Cir. 2021); *Qualcomm Inc.* v. *Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006), *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524; *see also Field Intelligence Inc.* v. *Xylem Dewatering Solutions Inc.*, 49 F.4th 351, 356 n.1 (3d Cir. 2022) (recognizing the general rule but "sav[ing] it for another day"); *Commonwealth Edison Co.* v. *Gulf Oil Corp.*, 541 F.2d 1263, 1272-1273 (7th Cir. 1976) (holding that the selection of the AAA rules in an arbitration agreement incorporated those rules into the agreement).

In addition, two courts of appeals have expressly held that the Arbitration Act does not permit courts to "distinguish between 'sophisticated' and 'unsophisticated' parties" when assessing whether a delegation is present. *Blanton*, 962 F.3d at 851; *see also Arnold*, 890 F.3d at 552. This Court and two other courts of appeals have reached the same conclusion in unpublished opinions. *See G.G.* v. *Valve Corp.*, 799 Fed. Appx. 557, 558 (9th Cir. 2020); *In re Checking Account Overdraft Litigation*, 856 Fed. Appx. 238, 244 (11th Cir. 2021); *Richardson* v. *Coverall North America, Inc.*, 811 Fed. Appx. 100, 104 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021); *cf. Mohamed* v. *Uber Technologies*, 848 F.3d 1201, 1208-1209 (9th Cir. 2016) (holding that a contract be-

tween a ride-sharing company and its drivers clearly and unmistakably delegated questions of arbitrability to the arbitrator, without any discussion of the sophistication of the parties).  No court of appeals has reached a contrary conclusion.

### B. There Is No Exception To The AAA Incorporation Rule For Unsophisticated Parties

In the wake of the Court's decision in *Brennan*, some district courts in this circuit have held that, regardless of the sophistication of the parties, the incorporation of arbitral rules that permit the arbitrator to resolve questions of arbitrability is sufficient to delegate those questions to the arbitrator.  *See, e.g.*, *Gountoumas* v. *Giaran, Inc.*, Civ. No. 18-7720, 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018); *Cordas* v. *Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *McLellan* v. *Fitbit, Inc.*, Civ. No. 16-36, 2017 WL 4551484, at *2-*3 (N.D. Cal. Oct. 11, 2017).  But others, including the district court in the decision below, have held that the incorporation rule does not apply "[w]here at least one party is unsophisticated."  ER-8; *see, e.g.*, *Magill* v. *Wells Fargo Bank, N.A.*, Civ. No. 21-1877, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Ingalls* v. *Spotify USA, Inc.*, Civ. No. 16-3533, 2016 WL 6679561, at *3-*4 (N.D. Cal. Nov. 14, 2016).  This Court should now definitively resolve the conflict by holding that the sophistication of the parties is irrelevant to determining whether an arbitration agreement contains clear and unmistakable evidence of a delegation.

25

To begin with, the unsophisticated-party exception has no basis in the text of the Federal Arbitration Act. As the Sixth Circuit has explained, "nothing in the [Act] purports to distinguish between 'sophisticated' and 'unsophisticated' parties." *Blanton*, 962 F.3d at 851. And a court has "no authority to redline Congress's work," *id.*, by "engraft[ing] its own exceptions onto the statutory text." *Henry Schein*, 139 S. Ct. at 530.

The unsophisticated-party exception also contravenes the ordinary rules of contract interpretation. The Supreme Court has explained that the "clear and unmistakable" standard "pertains to the parties' *manifestation of intent*, not the agreement's *validity*." *Rent-A-Center*, 561 U.S. at 69 n.1. And unless the parties' post-dispute conduct manifests an intent to arbitrate the question of arbitrability, a court should "turn to the terms of their agreement" to answer the question. *Momot* v. *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *see Mohamed*, 848 F.3d at 1209. Under the federal common law of arbitrability, which adopts general principles of contract interpretation, a court interprets the terms of an arbitration agreement according to an objective standard. *See Casa del Caffe Vergnano S.P.A.* v. *ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (citation omitted). The "focus" is "the parties' objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties." *DiCarlo* v. *MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir.

26

2021) (internal quotation marks and citation omitted); *see Casa del Caffe*, 816 F.3d at 1212.

An objective standard likewise governs the formation of contracts under state law. In California, for example, "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *B.D.* v. *Blizzard Entertainment, Inc.*, 292 Cal. Rptr. 3d 47, 58 (Ct. App. 2022); *see Reigelsperger* v. *Siller*, 150 P.3d 764, 767 (Cal. 2007). For that reason, "[o]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it." *Caballero* v. *Premier Care Simi Valley LLC*, 284 Cal. Rptr. 3d 560, 564-565 (Ct. App. 2021) (citation omitted). What matters is the objective meaning of the parties' words and actions, not whether there is reason to believe that the party "did not intend to do what his words bound him to do." *Martinez* v. *BaronHR, Inc.*, 265 Cal. Rptr. 3d 523, 529-530 (Ct. App. 2020). That same principle applies to incorporated terms, as "a contract and a document incorporated by reference into the contract are read together as a single document." *Poublon*, 846 F.3d at 1269 (applying California law).

Applying the objective theory of contracts, this Court held in *Brennan* that an agreement's express incorporation of the AAA rules clearly and unmistakably delegates questions of arbitrability to the arbitrator. *See* 796 F.3d at 1130. The Court saw no ambiguity in the agreement: the "clear and unmistakable" evidence of an agreement to arbitrate questions of arbitrability was the contractual language that arbitration shall proceed "in accordance with the [AAA] Rules," which state that "the arbitrator shall have the power to rule on his or her own jurisdiction." *Id.* at 1128.

The unsophisticated-party exception is irreconcilable with the objective theory of contracts. As the district court made clear, the premise of the exception is that unsophisticated parties may not "understand that the incorporation by reference of the AAA rules—without spelling out the actual provision—would mean that the validity and enforceability of the arbitration provision would be resolved by an arbitrator." ER-8–9. The exception is thus at bottom a presumption that an unsophisticated party does not understand what the words in a consumer contract mean. But the subjective understanding of the parties is not what matters: "[m]utual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." *Casa del Caffe*, 816 F.3d at 1212 (citation omitted).

Here, the parties' objective words, affirmed repeatedly in successive acknowledgments of terms of service, demonstrate that they agreed to arbitrate arbitrability. Disregarding those objective manifestations of intent would not only contravene black-letter contract law but also undermine the "reasonable stability in commercial transactions" that the objective theory of contracts is intended to protect. *Hedging Concepts, Inc.* v. *First Alliance Mortgage Co.*, 49 Cal. Rptr. 2d 191, 198 (Ct. App. 1996) (citation omitted).

In sum, there is no valid legal basis for the district court's unsophisticated-party exception to the unanimous rule among the courts of appeals that the incorporation of the AAA rules (or similar arbitral rules) provides clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability. No court of appeals has adopted such a rule, and this Court should not become the first.

### C. The District Court Erred By Declining To Enforce The Delegation Of Questions Of Arbitrability To The Arbitrator

Applying the proper rule here, the district court should have sent the question of unconscionability to the arbitrator. The arbitration agreement here incorporates the AAA rules for claims over $10,000. *See* ER-37. And the AAA rule at issue here is identical to the one in *Brennan*. Rule 14(a) of the AAA's Consumer Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to

the arbitrability of any claim or counterclaim." AAA Consumer Arbitration R. 14(a) <tinyurl.com/aaaconsumerarbrules>. As the First Circuit observed, that is "about as 'clear and unmistakable' as language can get." *Awuah*, 554 F.3d at 11.

The district court briefly suggested that the agreement lacked clarity on the delegation issue for another reason. As the court observed, the parties' arbitration agreement treats claims over $10,000 differently from claims under $10,000. For claims over $10,000, the AAA rules govern; for claims under $10,000, the party bringing the claim can choose between the AAA rules and the BBB rules. *See* ER-37. In the district court's view, the proposition that a "[c]ommon consumer" would not recognize the import of the incorporation of the AAA Rules was "especially true" because the "BBB Rules do not include an explicit delegation clause." ER-9 (emphasis omitted). "[I]t is not clear," the district court concluded, "that the consumer would consider any individual claim to be worth over $10K." ER-9.

That reasoning is flawed for reasons already explained. Whether or not a consumer would recognize the value of his or her claim is irrelevant to the clear-and-unmistakable-intent requirement. *See* pp. 26-29, *supra*. What matters instead is whether the agreement incorporates the AAA rules for a particular type of claim and whether the claim at issue is of that type. *Cf. Brennan*, 796 F.3d at 1131 (sending a question of arbitrability to an arbitrator after

concluding that a carveout from the delegation did not apply). Plaintiffs have never contended that their claims are worth under $10,000; to the contrary, they conceded that "[t]he Customer Agreement specifies arbitration before the American Arbitration Association" and that they would "opt for AAA arbitration" if they had a choice. D. Ct. Dkt. 29, at 3 n.3. The option to arbitrate claims for less than $10,000 under the BBB rules thus does not affect the delegation with respect to the claims asserted here.

The district court erred by declining to enforce the parties' delegation of questions of arbitrability to the arbitrator. On that basis alone, the district court's order denying defendants' motion to compel arbitration should be reversed.

## II. EVEN ABSENT THE DELEGATION, THE DISTRICT COURT SHOULD NOT HAVE ADDRESSED THE UNCONSCIONABILITY OF CONTRACTUAL PROVISIONS OUTSIDE THE ARBITRATION AGREEMENT

Beyond the validity of the delegation, the district court also erred by declining to compel the arbitration of plaintiffs' challenges to provisions of the parties' contracts outside of the arbitration agreement. The Supreme Court has long held that Sections 3 and 4 of the Federal Arbitration Act create a federal "rule of severability," under which "the issue of [a] contract's validity is considered by the arbitrator in the first instance" unless "the challenge is to the arbitration clause itself." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546

U.S. 440, 445-446 (2006); *see, e.g.*, *Rent-A-Center*, 561 U.S. at 70-71; *Prima Paint*, 388 U.S. at 403-404. In other words, a court "may resolve challenges directed specifically to the validity of the arbitration provision itself," but it "must send to the arbitrator any other challenges" to the agreement. *Caremark, LLC* v. *Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).

The district court violated the federal rule of severability by assessing the unconscionability of provisions outside the arbitration agreement. The six-month notice provision, the punitive-damages waiver, and the integration clause are not part of the arbitration agreement, as the district court itself recognized. *See* ER-9. Physically, they appear outside the arbitration agreement, which is set off from the rest of the customer agreement by a gray background. *See* ER-35–39. And substantively, those provisions govern plaintiffs' rights regardless of forum. For example, the six-month notice provision speaks expressly of a general waiver of one's "right to dispute the bill . . . and to bring an arbitration or small claims case regarding any such dispute." ER-35. The punitive-damages waiver speaks in terms of "claims" in general and is likewise not limited to arbitration. *See* ER-36. And the integration clause concerns what documents form the parties' agreement and on what communications a customer can rely, again regardless of forum. ER-39. Because those provisions are not part of the arbitration agreement, they are severable from the agreement as a matter of federal law. *See Caremark*, 43 F.4th

at 1029.

The district court dismissed defendants' argument on this score as "exalt[ing] form over substance." ER-9 (citation omitted). In the court's view, it was permitted to decide the unconscionability of the three provisions outside the arbitration agreement because "[a]ll but one of [those] provisions are functionally intertwined with the arbitration clause and thus were anticipated to affect the scope of arbitration." ER-9. The district court did not explain the nature or origin of its "functionally intertwined" test, and its reasoning was in any event erroneous.

As this Court has made clear, the federal severability principle is a bright-line rule requiring a plaintiff to argue that "an arbitration clause, *standing alone*, is unenforceable—for reasons *independent* of any reasons the remainder of the contract might be invalid." *Bridge Fund Capital Corp.* v. *Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (emphases added). Applying that same understanding, the Fourth Circuit has declined to determine whether a contractual limitations provision located outside an arbitration agreement is unconscionable. *See Muriithi* v. *Shuttle Express, Inc.*, 712 F.3d 173, 183-184 (2013). As that court explained, a general contractual limitations provision outside an arbitration agreement "discretely answers the question *when* any claim under the [contract] must be brought," whereas an arbitration

agreement that is "silent on that issue" "addresses the proper forum *where* such claims under the [contract] must be brought." *Id.* at 184.

Plaintiffs' challenges to the six-month notice provision, the punitive-damages waiver, and the integration clause are not directed at the arbitration agreement "standing alone." *Bridge Fund*, 622 F.3d at 1000. While those provisions may or may not affect any arbitration, *see* pp. 57-59, *infra*, their unconscionability would provide a defense to enforcement of the *entire agreement*, not merely the arbitration provision. But under the federal severability rule, "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center*, 561 U.S. at 71; *see In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 885-886 (6th Cir. 2021). Plaintiffs do not explain how any of those three provisions creates a problem that is unique to arbitration; their argument is simply that those provisions are invalid in all of their applications. Accordingly, the district court erred by addressing the unconscionability challenges to those provisions, even assuming that the agreement did not delegate questions of arbitrability to the arbitrator in the first place.

## III. THE DISTRICT COURT'S UNCONSCIONABILITY ANALYSIS WAS ERRONEOUS

The Court should not proceed further if it agrees that an arbitrator was required to decide whether the challenged contract provisions were unconscionable. But having reached the substantive question of unconscionability, the district court erred in numerous respects.

Under California law, parties seeking to invalidate a contract on unconscionability grounds must demonstrate that the contract is "both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260. The two forms of unconscionability work as a "sliding scale," such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted).

"[T]he adhesive nature of [a] contract is sufficient to establish some degree of procedural unconscionability in a range of circumstances." *Poublon*, 846 F.3d at 1261 (internal quotation marks and citation omitted). But a contract's adhesive nature, "without more," creates "a low degree of procedural unconscionability at most." *Id.* at 1262. Where, as here, the contract's adhesive nature is the sole basis for finding procedural unconscionability, the agreement remains enforceable "unless the degree of substantive unconscionability is high." *Id.* at 1261 (citation omitted).

35

Substantive unconscionability entails more than "a simple old-fashioned bad bargain." *Lim* v. *TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021) (citation omitted). Rather, the agreement must "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy or attempt to impermissibly alter fundamental legal duties." *OTO, L.L.C.* v. *Kho*, 447 P.3d 680, 693 (Cal. 2019) (internal quotation marks and citation omitted). Under that standard, the mass-arbitration provision, the collective-action waiver, the six-month notice provision, and the integration clause are not unconscionable. The district court erred by reaching a contrary conclusion.

## A.   The Mass-Arbitration Provision Is Not Substantively Unconscionable

The mass-arbitration provision states that, "[i]f 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims" using "the same or coordinated" counsel, the claims must proceed "in a coordinated proceeding." ER-38. In a coordinated proceeding, counsel for each side "select[s] five cases to proceed first in arbitration in a bellwether proceeding," with the goal of facilitating a global settlement. ER-38. "If the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding," the parties select another batch of ten cases to arbitrate in a second bellwether proceeding. ER-38. The process continues "until the parties are able to resolve all of the claims, either through settlement or arbitration."

ER-38. Contrary to the district court's conclusion, that provision is not substantively unconscionable.

### 1. The Mass-Arbitration Provision Employs A Fair And Established Process For Resolving Numerous Similar Claims

The mass-arbitration provision seeks to resolve the inefficiency of mass arbitration through the use of bellwether arbitrations. A bellwether arbitration, like a bellwether trial, is a "test case" used "to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions." *Briggs* v. *Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015). The mass-arbitration provision expressly contemplates the use of information gained from the bellwether arbitrations to "resolve the remaining cases." ER-38.

The coordinated process established by the arbitration agreement closely resembles bellwether proceedings regularly employed in mass litigation. In federal court, "both bench and bar" have long accepted the procedure of trying the cases of "some members of a large group of claimants" in order to "provide a basis for enhancing prospects of settlement or for resolving common issues or claims." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). Bellwether proceedings are frequently used in federal multidistrict litigation, which involves the consolidation of numerous similar cases into a single forum for joint proceedings. *See*, *e.g.*, *Hardeman* v. *Monsanto Co.*, 997

F.3d 941, 950 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022); *Owens* v. *Auxilium Pharmaceuticals, Inc.*, 895 F.3d 971, 972 (7th Cir. 2018); *In re Pinnacle Hip Implant Products Liability Litigation*, 888 F.3d 753, 763 (5th Cir. 2018).

Numerous federal courts have recognized the benefits of bellwether proceedings in complex litigation. As this Court has explained, bellwether proceedings are "designed to produce a verdict that would highlight the strengths and weaknesses of the parties' respective cases" and thereby "promote settlement." *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 995 (9th Cir. 2008); *accord Campbell* v. *Boston Scientific Corp.*, 882 F.3d 70, 76 (4th Cir. 2018). Those proceedings also allow counsel for the parties to "organize the products of pretrial common discovery" and "understand the risks and costs associated with the litigation." Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338 (2008) (Fallon).

California courts have likewise blessed the bellwether approach in mass litigation. In the words of one California court, bellwether proceedings "can serve to winnow and sharpen not only discovery, but claims, defenses, calendaring decisions, motion practice, arguments, hearings or trial, adjudication, indeed every aspect of the litigation process—to the benefit of the parties, the court, and the public alike." *St. Paul Fire & Marine Insurance Co.* v. *AmerisourceBergen Corp.*, 295 Cal. Rptr. 3d 400, 411-412 (Ct. App. 2022). California

courts often use bellwether proceedings in Judicial Council Coordinated Proceedings, the state-court equivalent of federal multidistrict litigation. *See Connor* v. *First Student, Inc.*, 423 P.3d 953, 955 & n.2 (Cal. 2018); *Isaak* v. *Superior Court*, 288 Cal. Rptr. 3d 795, 798 (Ct. App. 2022); *Johnson & Johnson Talcum Powder Cases*, 249 Cal. Rptr. 3d 642, 648 (Ct. App. 2019). In fact, the California Judicial Council's guide on the management of complex litigation suggests that the parties and the court should consider "the trial of one or more test cases" to resolve "complex cases that involve numerous parties and issues." *Ford Motor Warranty Cases*, 218 Cal. Rptr. 3d 185, 198 (Ct. App. 2017) (citing Judicial Council of California, *Deskbook on the Management of Complex Civil Litigation* § 2.61(3)(a), at 2-30 (2016)). Nor is California alone: "most states" employ bellwether proceedings to resolve mass tort cases. *Ramirez* v. *Vintage Pharmaceuticals, LLC*, 852 F.3d 324, 332 (3d Cir. 2017).

The broad acceptance of bellwether proceedings to resolve mass litigation belies the district court's determination that the mass-arbitration provision in the customer agreement is substantively unconscionable. Plaintiffs have not argued, and the district court did not find, that the mass-arbitration provision "impair[s] the integrity of the bargaining process." *OTO*, 447 P.3d at 693 (citation omitted). And given the California judiciary's express approval of a similar bellwether process to resolve mass litigation, plaintiffs cannot show that the mass-arbitration provision "contravene[s] the public interest or

public policy." *Id.* In fact, the California Supreme Court has made clear that the use of "litigation-like procedures, on their own, are not necessarily so one-sided as to make an arbitration agreement unconscionable." *Id.* at 695. After all, "an arbitration process closely resembling civil litigation can be as advantageous for the [plaintiff] as for the [defendant]." *Id.*; *see Little* v. *Auto Stiegler, Inc.*, 63 P.3d 979, 986 n.1 (Cal. 2003).

The mass-arbitration provision does not "impermissibly alter fundamental legal duties" either. *OTO*, 447 P.3d at 693. The provision creates an "accessible and affordable" process that allows for the efficient resolution of mass claims and facilitates a global settlement. *Sonic-Calabasas A, Inc.* v. *Moreno*, 311 P.3d 184, 204 (Cal. 2013). The provision also does not require claimants to waive statutory rights or remedies. While plaintiffs may dislike the mass-arbitration procedures provided in their customer agreements, "[t]he unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme." *Id.*

The mass-arbitration provision at issue here serves another legitimate purpose. Under the parties' agreement, defendants are responsible for paying all administrative and arbitrator fees and for reimbursing a claimant for the claimant's filing fee. *See* ER-38. When counsel for a group of claimants files hundreds or thousands of claims in arbitration at the same time, the cost to defendants to proceed simultaneously in all of those cases could reach into the

40

tens of millions of dollars. *See* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1345-1349 (2022) (providing examples). Coordinated proceedings reduce the "illegitimate, *in terrorem* settlement pressure" imposed by the threat of such exorbitant fees. *Id.* at 1350. And under California law, "a contract can provide a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Sanchez* v. *Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015) (internal quotation marks and citation omitted). There is thus nothing substantively unconscionable about the mass-arbitration provision.

### 2. The District Court Erred By Concluding That The Mass-Arbitration Provision Is Substantively Unconscionable

The district court nevertheless concluded that the mass-arbitration provision is unconscionable for three reasons. *See* ER-23–25. Those reasons do not withstand scrutiny.

a. The district court first concluded that the mass-arbitration provision is "unreasonably favorable" to defendants because it would require some customers to "wait months, more likely years," for their cases to be selected for arbitration. ER-23. But the whole purpose of the mass-arbitration provision is to facilitate a *quicker* resolution of the claims than would be achieved by clogging the system with countless individual adjudications. The bell-

wether process is designed to provide the parties with the information necessary to reach a global settlement. The parties are likely to settle long before the need to adjudicate every individual claim. As one of the most experienced federal district judges in overseeing MDLs has noted, "[d]espite criticisms of inefficiency, judicial economy is undoubtedly well-served by MDL consolidation," because "[t]he relevant comparison is not between a massive MDL and an 'average case,' but rather between a massive MDL and the alternative of thousands of similar cases clogging the courts." *See* Fallon 2330. The same is true for mass arbitration.

The district court's conclusion also rests entirely on speculation about a surpassingly unlikely outcome. For the delay calculated by the district court to arise, large numbers of customers would have to raise similar claims. Those customers would then have to choose to be represented by the same or coordinated counsel. Multiple rounds of bellwether arbitrations would then have to fail to produce a global resolution. Only under that chain of multiple hypothetical contingencies would the delay the district court calculated come to pass. Such a speculative contingency is "plainly insufficient" to "justify the invalidation of an arbitration agreement." *Green Tree Financial Corp.* v. *Randolph*, 531 U.S. 79, 91 (2000); *see Chavarria* v. *Ralphs Grocery Co.*, 733 F.3d 916, 925-926 (9th Cir. 2013); *Kilgore* v. *KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013).

42

To the extent the district court was concerned that defendants might deliberately prolong the bellwether proceedings, *see* ER-21, ER-23, that possibility not only is speculative but is barred by the covenant of good faith and fair dealing. That covenant, which California implies in all contracts, requires "each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits." *Wilson* v. *21st Century Insurance Co.*, 171 P.3d 1082, 1086-1087 (Cal. 2007). Refusal to handle the proceeding and discuss resolution in good faith would do just that, because it would entirely undermine the purpose of bellwether proceedings (*i.e.*, "to facilitate settlement," *Briggs*, 796 F.3d at 1051) and would thereby prevent the plaintiffs from receiving the benefit of the bellwether provision. If defendants were to attempt such a violation of their implied covenant, plaintiffs would be free to seek appropriate relief. And because "the implied covenant of good faith and fair dealing prevents" defendants from using the bellwether provision "in a way that would make it unconscionable," that provision "is not substantively unconscionable." *Poublon*, 846 F.3d at 1269 (citation omitted).

b.     The district court also concluded that the mass-arbitration provision, "when coupled with the statute of limitations," creates a risk that claims against defendants "will be effectively barred." ER-23. The district court reached that conclusion because the mass-arbitration provision states that a claimant may not "file" a demand for arbitration until earlier-selected cases

are resolved. *See* ER-23. The court further noted that the arbitration agreement allows the parties to raise the "same defenses" that "would be available in court, including any applicable statute of limitations." ER-23; *see* ER-37.

The district court's interpretation is incorrect. The agreement is best understood as tolling the limitations period where the claimant provides timely notice of any claims and a coordinated proceeding is commenced. The six-month notice provision expressly states that, by writing to defendants or sending a completed notice-of-dispute form, a customer "preserve[s] [the] right to bring an arbitration or small claims case." ER-35. In addition, the mass-arbitration provision states that all coordinated claims "shall proceed in arbitration" and that the process continues until "the parties are able to resolve *all* of the claims, either through settlement or arbitration." ER-38 (emphasis added).

By stating that the bellwether process may continue until "all" claims are resolved, the mass-arbitration provision does not envision that some claims will become procedurally barred merely because they fall at the end of the line. Indeed, in the proceedings below, defendants agreed to "consider all applicable statutes of limitations tolled for the duration of [a] coordinated arbitration proceeding" involving plaintiffs or any other similarly situated consumers. D. Ct. Dkt. 44, at 1; *see Mohamed*, 836 F.3d at 1212; *Tompkins* v. *23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (Watford, J., concurring).

44

Even if the agreement were ambiguous on this score, California law would require the ambiguity to be resolved in favor of tolling. In California, a court interpreting an ambiguous contractual provision "must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." *ASP Properties Group, L.P.* v. *Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (Ct. App. 2005) (citation omitted); *see* Cal. Civ. Code § 1643. In addition, "ambiguities in standard form contracts are to be construed against the drafter." *Victoria* v. *Superior Court*, 710 P.2d 833, 835 (Cal. 1985); *see* Cal. Civ. Code § 1654. The district court's interpretation of the arbitration agreement—which would render the agreement unduly harsh in a manner hostile to the non-drafter—runs afoul of both principles.

c. The district court separately concluded that the mass-arbitration provision "lacks mutuality" because it "imposes restrictions on a law firm representing twenty-five or more of [defendants'] customers with 'similar claims'" while leaving defendants "free to select the same law firm to represent [them] in all of its arbitrations." ER-24. No impermissible inequality is present.

Under California law, "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope"; only "a modicum of bilaterality" is required. *Armendariz* v. *Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 692 (Cal. 2000). For example, "[w]hen only the weaker party's

claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality." *Abramson* v. *Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422, 437 (Ct. App. 2004). But when the difference in terms is less substantial, or when there is "at least some reasonable justification for such one-sidedness based on 'business realities,'" an arbitration agreement is enforceable. *Armendariz*, 6 P.3d at 692.

There is no dispute that the arbitration agreement is bilateral in that defendants are required to assert any claims they have against a customer in arbitration. And here, individual claimants, like defendants, are free to select the lawyer of their choice. The only condition on that choice is that, if many claimants choose the same (or coordinated) counsel, they must participate—as must defendants—in a process designed to promote the efficient resolution of similar claims. *See Hanford Nuclear Reservation Litigation*, 534 F.3d at 995. As explained, there are reasonable justifications for the mass-arbitration provision: it promotes overall efficiency and reduces the settlement pressure created by the significant arbitration fees that accompany mass arbitration. *See* pp. 37-41, *supra*. That "business reality" more than justifies the mass-arbitration provision. *See Armendariz*, 6 P.3d at 691.

**B.** **The Federal Arbitration Act Preempts The District Court's Application Of State Law To The Collective-Arbitration Waiver**

As relevant here, the collective-arbitration waiver states that "the arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." ER-37. The provision further states that "[n]o class, representative or private attorney general or general injunctive relief theories of liability or prayers for relief may be maintained in any arbitration held under this agreement." ER-37. The district court held that the collective-action waiver prohibits parties from seeking public injunctive relief in any forum, in violation of *McGill* v. *Citibank, N.A.*, 393 P.3d 85 (Cal. 2017). *See* ER-16–18. The Arbitration Act preempts the *McGill* rule as applied by the district court.

1.    Certain California consumer-protection statutes authorize a remedy known as public injunctive relief. "By definition, the public injunctive relief available under [those statutes] is primarily for the benefit of the general public." *McGill*, 393 P.3d at 94 (internal quotation marks and citation omitted). The relief has "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 87 (internal quo-

tation marks and citation omitted). To the extent a plaintiff benefits individually from a public injunction, that benefit is merely "incidental" to the primary purpose of the relief. *Id.* at 94 (citation omitted).

In *McGill*, the California Supreme Court addressed the validity under state law of an arbitration agreement that provided, "[i]f you or we require arbitration of a [c]laim, neither you, we, nor any other person may pursue the [c]laim in arbitration as a class action, private attorney general action or other representative action, nor may such [c]laim be pursued on your or our behalf in any litigation in any court." 393 P.3d at 88. The court held that the agreement violated public policy because it waived the parties' right to seek public injunctive relief "in any forum." *Id.* at 90.

This Court upheld the *McGill* rule as consistent with the Arbitration Act in *Blair* v. *Rent-A-Center, Inc.*, 928 F.3d 819 (2019). The Court first reasoned that the *McGill* rule did not discriminate against arbitration because it is a "generally applicable contract defense derived from long-established California public policy." *Id.* at 828. The Court further held that the rule did not "stand[] as an obstacle to the accomplishment of the [Arbitration Act's] objectives" by interfering with the fundamental aspects of arbitration, as did the rules requiring class arbitration invalidated in *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333 (2011), and *Epic Systems Corp.* v. *Lewis*, 138 S. Ct. 1612 (2018). *Blair*, 928 F.3d at 828-831 (citation omitted). The Court understood

48

*AT&T Mobility* and *Epic Systems* to turn primarily on the degree of "procedural formality" the state-law rule injected into arbitration. *Id.* at 828 (citation omitted). The Court concluded that *McGill* does not run afoul of those cases because public injunctive relief "does not require formalities inconsistent with arbitration" and does not involve a "switch from bilateral arbitration to a multiparty action." *Id.* at 828-829 (internal quotation marks, citation, and ellipsis omitted).

In reaching that conclusion, this Court relied heavily on its earlier decision in *Sakkab* v. *Luxottica Retail North America, Inc.*, 803 F.3d 425 (2015). There, the Court considered the validity of the rule set forth in *Iskanian* v. *CLS Transportation Los Angeles, LLC*, 327 P.3d 129 (Cal. 2014), that an employment agreement cannot require an employee to waive the right to pursue claims under the California Private Attorneys General Act (PAGA) on behalf of other employees. *See id.* at 149. This Court held that the *Iskanian* rule does not violate the Arbitration Act, in part because it "does not diminish parties' freedom to select informal arbitration procedures." *Sakkab*, 803 F.3d at 435. That was so, the Court reasoned, because a PAGA claim does not constitute a "procedure for resolving the claims of other employees" and thus does not implicate *AT&T Mobility* (and by extension *Epic Systems*). *Id.* at 436.

2.     The Supreme Court's recent decision in *Viking River Cruises, Inc.* v. *Moriana*, 142 S. Ct. 1906 (2022), is clearly irreconcilable with *Sakkab* and *Blair*.

In *Viking River*, the Supreme Court addressed the same question as did this Court in *Sakkab*: namely, whether the Arbitration Act preempts the *Iskanian* rule prohibiting the waiver of representative PAGA claims. The Supreme Court held that the rule was partially preempted. *See Viking River*, 142 S. Ct. at 1913-1915. The Court explained that PAGA claims are representative in two senses: one, in that a plaintiff proceeds as a private attorney general on behalf of the State; and two, in that the plaintiff can seek penalties for harms to other employees. *See id.* at 1916. The Supreme Court held that the Arbitration Act allowed a State to prohibit waivers of PAGA claims that are representative only in the first sense—that is, PAGA claims where the employee acts as a private attorney general but seeks relief only for his own individual injury (denominated by the Supreme Court as "individual PAGA claims"). *Id.* at 1922-1923. But the Court also held that the Arbitration Act forbids a State from conditioning enforcement of an agreement to arbitrate individual PAGA claims on a defendant's agreement to the arbitration of PAGA claims that are representative in the second sense—that is, PAGA claims where the employee seeks damages for harms to other employees (denominated as "representative PAGA claims"). *Id.* at 1923-1925.

50

The Supreme Court explained that the problem with representative PAGA claims stems from the "built-in mechanism of claim joinder." *Viking River*, 142 S. Ct. at 1923. "Requiring arbitration procedures to include a joinder rule of that kind," the Court continued, "compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether." *Id.* at 1924. And because California law did not allow for the arbitration of "individual" PAGA claims separate from the litigation of "representative" PAGA claims, the Supreme Court held that the state-law rule violated the principle of *AT&T Mobility* and *Epic Systems*. *See id.* at 1924-1925.

The reasoning in *Sakkab* is inconsistent with the reasoning in *Viking River*. In *Sakkab*, this Court concluded that the state-law rule prohibiting the waiver of representative PAGA actions was valid because it did not create the same procedural complexities as does the litigation of numerous claims on behalf of a class. *See* 803 F.3d at 435-436. But *Viking River* makes clear that the principle of preemption set forth in *AT&T Mobility* and *Epic Systems* is not limited to state-law rules requiring class or multiparty arbitration. Instead, that principle also applies to state-law remedies that allow a plaintiff to seek relief on behalf of absent parties. *Viking River* thus abrogates *Sakkab*.

With *Sakkab* abrogated, *Blair*'s foundation is lacking. The *Blair* Court relied heavily on *Sakkab*, even stating that "*Sakkab* all but decides this case"

and that "*Sakkab* is squarely on point." *Blair*, 928 F.3d at 825, 828. But the foundational premise that *Blair* drew from *Sakkab*—namely, that *AT&T Mobility* and *Epic Systems* forbid only rules that mandate the arbitration of multiparty claims that require procedural complexity—is invalid after *Viking River*.

A decision by this Court ceases to serve as binding precedent when the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller* v. *Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). "[T]he issues decided by the higher court," moreover, "need not be identical in order to be controlling." *Id*. The courts of appeals "are bound not only by the holdings of [the Supreme Court's] decisions but also by their mode of analysis." *MK Hillside Partners* v. *Commissioner*, 826 F.3d 1200, 1206 (9th Cir. 2016) (internal quotation marks and citation omitted); *see Miller*, 335 F.3d at 900. Under those principles, *Blair* is no longer good law.

3.    With *Blair* set aside, the question is whether the Arbitration Act preempts *McGill* as the district court applied it here. The answer is yes. Under *Viking River*, the Arbitration Act preempts state-law rules invalidating a traditional, bilateral arbitration agreement on the ground that the right to seek relief on behalf of others is a nonwaivable substantive right. By defini-

tion, public injunctive relief primarily benefits the public at large and only incidentally benefits the plaintiff. *See* pp. 47-48, *supra*. And as even the *Blair* Court recognized, "arbitration of a public injunction will in some cases be more complex than arbitration of a conventional individual action or a representative PAGA claim." 928 F.3d at 829.

In addition, the district court's application of *McGill* here creates problems similar to the ones created by the non-severability rule in *Viking River*. The court interpreted the arbitration agreement here to waive the right to seek public injunctive relief "in any forum." ER-16. But that is so only because the customer agreement contains a bilateral arbitration agreement. If that were sufficient to invalidate an arbitration agreement, then the *McGill* rule would require parties either to forgo bilateral arbitration or to include an express provision stating that a party can file an action for public injunctive relief in court. *See Blair*, 928 F.3d at 831 (suggesting as much). But the former requirement would violate *Viking River*, and the latter would create a rule that "appl[ies] only to arbitration or that derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility*, 563 U.S. at 339.

To be sure, the Supreme Court did say in *Viking River* that the Arbitration Act "does not require courts to enforce contractual waivers of substantive rights and remedies." 142 S. Ct. at 1919. But the Court was clearly referring to rights related to the claimant's *own personal dispute*. That is why the Court

distinguished between "'individual' PAGA claims based on personally sustained violations" and "representative" PAGA claims that seek relief for harms to other employees. *Id.* at 1923-1924. The contrary interpretation would make the Arbitration Act "trivially easy for States to undermine." *Kindred Nursing Centers Limited Partnership* v. *Clark*, 137 S. Ct. 1421, 1428 (2017). A State could simply sidestep *Viking River* by declaring any right to pursue non-individualized claims in arbitration to be "substantive" and thus nonwaivable. Indeed, under that interpretation of *Viking River*, California courts could effectively override *AT&T Mobility* simply by labeling the availability of class arbitration as a substantive, nonwaivable right.

That cannot be correct. To the contrary, the Arbitration Act preempts the *McGill* rule insofar as it permits the invalidation of a bilateral arbitration agreement on the ground that a plaintiff cannot seek public injunctive relief in arbitration. The district court erred by relying on *McGill* in refusing to enforce the arbitration agreement, in part on the ground that the collective-action waiver in the parties' agreement is unconscionable.

## C. The Six-Month Notice Provision Is Not Substantively Unconscionable

Under the consumer agreement, customers must notify defendants in writing about any dispute regarding the customer's bill within six months of receiving the bill, or else "waive[] [the] right . . . to bring an arbitration or small claims case regarding any such dispute." ER-35. Under California law,

it is a "well-settled proposition" that "the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way." *Moreno* v. *Sanchez*, 131 Cal. Rptr. 2d 684, 695 (Ct. App. 2003) (citation omitted); *see also Tompkins*, 840 F.3d at 1032 (referring to *Moreno* as "[t]he leading California case on this issue"). Courts thus "generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable." *Moreno*, 131 Cal. Rptr. 2d at 695. A length of time is "reasonable" if "the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained." *Ellis* v. *U.S. Security Associates*, 169 Cal. Rptr. 3d 752, 758 (Ct. App. 2014).

Under that standard, the six-month notice requirement is not unconscionable. "[T]he weight of California case law strongly indicates that [a] six-month limitation provision is not substantively unconscionable." *Soltani* v. *Western & Southern Life Insurance Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). That makes sense, because six months is usually "sufficient [time] to investigate and file an action," *Ellis*, 169 Cal. Rptr. 3d at 758. And all that customers need to do to comply with the provision here is to notify defendants in writing

about the dispute. Customers thus have additional time beyond the six months to develop their legal arguments. In the district court's words, the notice provision here is thus "easier" to comply with, and less "draconian," than a true contractual limitations period. ER-13, ER-14.

The district court nonetheless held that the notice requirement is unconscionable. *See* ER-13–14. The court first reasoned that noncompliance with the requirement would have the same effect as noncompliance with a contractual limitations period: namely, the customer would be unable to proceed with a claim. *See* ER-14. But that is beside the point. Under California law, even a true contractual limitations provision does not rise to the level of unconscionability as long it is reasonable. *See Ellis*, 169 Cal. Rptr. 3d at 758. That is the case here for the reasons just explained.

The district court also cited *Jackson* v. *S.A.W. Entertainment Limited*, 629 F. Supp. 2d 1018 (N.D. Cal. 2009) (Chen, Magis. J.), and *Martinez* v. *Master Protection Corp.*, 12 Cal. Rptr. 3d 663 (Ct. App. 2004), in support of its conclusion. The decision in *Jackson* largely relies on *Martinez*, *see Jackson*, 629 F. Supp. 2d at 1028-1029, and *Martinez* held that a true six-month limitations period in an employment agreement was unconscionable, *see* 12 Cal. Rptr. 3d at 117-118. But as another California court recently explained, although the "import of such a clause is quite different in the context of the stat-

utory wage and hour claims," "a contractual provision that unilaterally short-ens a limitations period to six months, taken alone, does not necessarily render an adhesion contract substantively unconscionable." *Samaniego* v. *Empire Today LLC*, 140 Cal. Rptr. 3d 492, 499 (Ct. App. 2012). Because this case does not involve an employment agreement, *Martinez* is inapposite.

The six-month notice requirement imposes minimal burden on customers and provides sufficient time to discover a problem with a bill. It thus is not substantively unconscionable.

### D. The Integration Clause Is Not Substantively Unconscionable

The integration clause in the parties' agreement provides that "[t]his agreement and the documents it incorporates form the entire agreement," and it informs customers that "[y]ou can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement." ER-39. The district court interpreted that provision to preclude the arbitrator from considering extrinsic evidence "under any circumstances, including to show fraud." ER-20. As a result, the court concluded that the integration clause is substantively unconscionable.

That conclusion was incorrect. Contracts routinely contain integration clauses stating that the contract is the parties' entire agreement and that the

contract supersedes all prior agreements. *See, e.g.*, *Mountain Air Enterprises, LLC* v. *Sundowner Towers, LLC*, 398 P.3d 556, 564 (Cal. 2017); *Grey* v. *American Management Services*, 139 Cal. Rptr. 3d 210, 213 (Ct. App. 2012). That is all the integration clause does here. It begins by stating that the customer agreement is the parties' entire agreement, and it proceeds to explain that the customer "can't rely on any other documents, or on what's said by any Sales or Customer Services Representatives." ER-39. While the latter language could be construed broadly, *see* ER-19, in context, it clearly refers to the subject matter of the previous sentence—which concerns the scope of the parties' agreement, *see* ER-39.

To be sure, the integration clause here lacks the legalese of many "common integration clause[s]." ER-19. It thus does not say, "[n]o alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment." *Jipping* v. *First National Bank Alaska*, 735 Fed. Appx. 436, 436 (9th Cir. 2018). Nor does it say that the agreement "supersed[es] . . . all prior and contemporaneous agreements, representations, negotiations and understandings." *Pure Wafer Inc.* v. *City of Prescott*, 845 F.3d 943, 947 (9th Cir. 2017). But it is designed to have the same effect. By interpreting the integration clause to "negate substantive legal rights and remedies," ER-19, the district court effectively faulted defendants for using ordinary language in

a consumer agreement. The court should instead have read the integration clause as consistent with the black-letter rule that "extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of [a contract's] integration clause." *Thrifty Payless, Inc.* v. *The Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 727 (Ct. App. 2013).

Even if the integration clause were ambiguous, the district court would still have erred. As noted above, *see* p. 45, California law requires a contract to be interpreted in a way that will make it lawful. California law also mandates that ambiguities should be construed against the drafter. *See id.* Both of those rules required the district court to interpret any ambiguity in the integration clause against an interpretation that prohibits the consideration of extrinsic evidence to prove fraud or misrepresentation. *See ASP Properties*, 35 Cal. Rptr. 3d at 351. The district court erred by adopting that interpretation.

## IV.  THE DECISION BELOW SHOULD BE REVERSED OR, IN THE ALTERNATIVE, VACATED

If the Court agrees that the arbitration agreement validly delegates questions of arbitrability to the arbitrator, it should reverse the decision below. But if the Court disagrees and proceeds to address the district court's substantive decision on unconscionability, the appropriate remedy will depend on the Court's precise disposition.

1.      In the proceedings below, defendants did not contest that California law prohibits the waiver of punitive damages where the statute conferring the right of action allows for the recovery of those damages.  But if the Court concludes that neither the mass-arbitration provision, the collective-action waiver, the six-month notice provision, nor the integration clause is unconscionable, the punitive-damages waiver would not provide a sufficient basis to refuse to enforce the arbitration agreement.

As an initial matter, because the punitive-damages waiver is part of the broader contract rather than the arbitration agreement, federal law requires that provision's severance and the arbitration agreement's enforcement.  *See* pp. 31-34, *supra*.  But even if the Court were to reject that argument, Section 1670.5(a) of the California Civil Code authorizes a court, upon determining that a provision of a contract is unconscionable, either to refuse to enforce the contract or to sever the offending provision.  California law thus gives the district court "some discretion as to whether to sever or restrict the unconscionable provision." *Armendariz*, 6 P.3d at 695.  But that discretion is limited:  a court may decline to enforce an agreement entirely only where the agreement is "permeated" by unconscionability.  *Id.*  "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* at 696.

Here, severance of the punitive-damages waiver would be appropriate if it is the only unconscionable provision in the customer agreement. That waiver is "collateral to the main purpose of the contract," which is to set forth the terms under which defendants provide wireless services to its customers. *Armendariz*, 6 P.3d at 696. And the agreement contains a severability clause. *See* ER-39. If the Court concludes that the mass-arbitration provision, the representative-action waiver, the six-month notice provision, and the integration clause comport with California law, the Court should sever the punitive-damages waiver and reverse the district court's order denying the motion to compel arbitration. *Cf. Poublon*, 846 F.3d at 1273.

2.　If the Court were to conclude that some, but not all, of the disputed contract provisions are unconscionable, vacatur and remand would be appropriate. The district court's severability analysis was premised on its conclusion that five provisions in the customer agreement were unconscionable under California law. *See* ER-26–29. The court thus did not have occasion to decide the question of severability in a context where only a subset of those provisions are unconscionable. Because this Court is a "court of review, not first view," *Belaustegui* v. *International Longshore & Warehouse Union*, 36 F.4th 919, 930 (9th Cir. 2022) (citation omitted), it would be appropriate to remand for the district court to decide the question of severability if the Court

61

concludes that some, but not all, of the disputed contract provisions are unconscionable.

## CONCLUSION

The order of the district court denying the motion to compel arbitration should be reversed. In the alternative, the order should be vacated and the case remanded for further proceedings.

Respectfully submitted,

/s/ Kannon K. Shanmugam

CRYSTAL NIX-HINES
SHON MORGAN
MARINA LEV
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
  *865 South Figueroa Street,*
    *10th Floor*
  *Los Angeles, CA 90017*

CHRISTINA HENRIQUEZ
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
  *555 Twin Dolphin Drive,*
    *5th Floor*
  *Redwood Shores, CA 94065*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
YISHAI SCHWARTZ
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*

JING YAN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

NOVEMBER 21, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-16020

I am the attorney or self-represented party.

**This brief contains** | 13,870 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Kannon K. Shanmugam | **Date** | 11/21/2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 22-16020

The undersigned attorney or self-represented party states the following:

○  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> Vasquez v. Cebridge Telecom CA, LLC, No. 21-17009, raises issues closely related to the issues in this appeal.

**Signature** | /s/ Kannon K. Shanmugam | **Date** | 11/21/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**         *New 12/01/2018*