No. 22-16020

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

TERESA MACCLELLAND; KAREN UMBERGER; SCOTT WILLITS; VALERIE REED;
JOHN ST. JARRE; LOUISE MONSOUR; VANESSA WEST; TIM FRASCH;
DARLEEN PEREZ; WILLIAM KAUPELIS; KERRY SHOWALTER; BRUCE SCHRAMM;
PATRICIA GAGAN; WILLIAM ERIC LOUGH; MICHAEL CARNEY; ANNA GUTIERREZ;
JANETTE LISNER; MARILYN KAYE; TERESA TOY; MICHAEL BRANOM;
GLORIA STERN; DAVID MASSARO; AUGUSTUS JOHNSON; EDNA TOY;
MOLLY BROWN; LINDA JENKINS; GABRIELLE POZZUOLI,
For Themselves, As Private Attorneys General, and
On Behalf Of All Others Similarly Situated,

*Plaintiffs-Appellees*,

v.

CELLCO PARTNERSHIP, DBA VERIZON WIRELESS;
VERIZON COMMUNICATIONS, INC.,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the Northern District of California
No. 3:21-cv-08592-EMC
Hon. Edward M. Chen

_____

## PLAINTIFFS-APPELLEES'
## ANSWERING BRIEF

_____

HATTIS & LUKACS
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION .................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................... 1

STATEMENT OF THE CASE ............................................ 4

    A.    Plaintiffs Are 27 California Consumers Who Are Represented By The Same Two Law Firms. ............................................ 4

    B.    Plaintiffs Filed A False Advertising Class Action Against Verizon Over A Deceptive "Administrative Charge." ..................... 5

    C.    Verizon Moved To Compel Arbitration. ............................ 6

    D.    The District Court Denied Verizon's Motion To Compel Arbitration. ............................................................. 7

SUMMARY OF THE ARGUMENT .................................... 8

STANDARDS OF REVIEW ............................................... 9

ARGUMENT .................................................................... 12

I.    California Law Applies To State Law Issues In This Dispute. ................... 12

II.    The Customer Agreement Dated October 20, 2021, Governs This Dispute. ....................................................... 13

III.    The Court Must Analyze The Delegation Clause And The Arbitration Agreement As They Were Written, Not As Verizon Is Attempting To Change Them On The Fly .................... 13

IV.    The Mass Arbitration Provision Can Force Claimants To Wait Decades For Their Arbitrations To Occur—Long After Their Limitations Periods Have Expired .................................. 15

i

V.      The Delegation Clause Is Unenforceable Because It Does Not
        Clearly And Unmistakably Delegate To An Arbitrator The
        Authority To Answer Threshold Questions Of Arbitrability. .....................21

        A.      The Delegation Clause Does Not Contain Language About
                Delegation........................................................................... 24

        B.      There Is No Clear and Unmistakable Delegation Because One
                Of The Two Choices Of Arbitral Society Rules—The BBB
                Rules—Does Not Contain A Delegation Clause. ............................ 25

        C.      The Incorporation by Reference of Arbitral Society Rules Is
                Not A Clear and Unmistakable Delegation When At Least One
                Party Is Unsophisticated.................................................................. 28

VI.     The Delegation Clause Promises An Illusory Remedy Because It
        Structures An Arbitration Regime That Prevent Claimants From
        Having Access To An Arbitrator.................................................................32

VII.    The Delegation Clause And The Arbitration Agreement Are Each
        Unconscionable...........................................................................................35

        A.      The Delegation Clause And The Arbitration Agreement Are
                Procedurally Unconscionable........................................................... 36

        B.      The Delegation Clause Is Substantively Unconscionable. ................ 37

        C.      The Arbitration Agreement Is Substantively Unconscionable. ......... 38

                1.      Verizon's 180-Day Contractual Limitations Period
                        Unconscionably Curtails the Three and Four Years
                        Claimants Have to File UCL, FAL, and CLRA Claims...........39

                2.      Verizon's Punitive Damages Waiver is Unconscionable.........42

                3.      The Provision Waiving Public Injunctive Relief Violates
                        the *McGill* Rule—Which Was Not Overturned by *Viking
                        River*. .....................................................................................43

                4.      Verizon's Exculpatory Clause is Substantively
                        Unconscionable In Two Separate and Independent Ways. ......48

ii

a.    The clause is unconscionable because it is exculpatory. ..50

b.    Verizon's exculpatory clause unconscionably limits a consumer's right to adequate discovery in arbitration. ..52

5.    The Mass Arbitration Provision is Substantively Unconscionable.........................................................................53

a.    The mass arbitration provision creates an inferior forum tilted unconscionably in favor of Verizon. ...................53

b.    The mass arbitration provision does not provide for a true bellwether process.................................................57

VIII.  The District Court Acted Within Its Discretion In Refusing To Sever The Unenforceable Provisions, Which Permeate The Arbitration Agreement. .....................................................................64

CONCLUSION ....................................................................................67

## SUB-TABLE OF CONTRACTUAL PROVISIONS

**Provision**                                                        **Page**

Choice of Law Provision .……………………………………  12

Lock-In Clause .……………………………………………… 13

Mass Arbitration Provision .……………………………………… 15

Limitations Revival Clause  .………………………………………  16

Delegation Clause .…………………………………………... 21

180-Day Contractual Limitations Period .……………………… 39

Punitive Damages Waiver .…………………………………….. 42

Public Injunctive Relief Waiver .………………………………… 43

Exculpatory Clause .……………………………………………… 48

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                       <u>**Pages**</u>

*Abernathy v. DoorDash, Inc.,*
   438 F. Supp. 3d 1062 (N.D. Cal. 2020)............................................................63

*Abramson v. Juniper Networks, Inc.,*
   9 Cal. Rptr. 3d 422 (Cal. Ct. App. 2004)........................................................41

*Ahlstrom v. DHI Mortgage Co., Ltd., L.P.,*
   21 F.4th 631 (9th Cir. 2021)............................................................................33

*Ajamian v. CantorCO2e, L.P.,*
   137 Cal. Rptr. 3d 773 (Cal. Ct. App. 2012)..........................................25, 30, 66

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
   6 P.3d 669 (Cal. 2000) ..............................................................................passim

*Arnold v. HomeAway, Inc.,*
   890 F.3d 546 (5th Cir. 2018)...........................................................................31

*ASP Properties Group, L.P. v. Fard, Inc.,*
   35 Cal. Rptr. 3d 343 (Cal. Ct. App. 2005).......................................................52

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011).................................................................................passim

*Avery v. Integrated Healthcare Holdings, Inc.,*
   159 Cal. Rptr. 3d 444 (Cal. Ct. App. 2013).....................................................15

*Awuah v. Coverall North America, Inc.,*
   554 F.3d 7 (1st Cir. 2009) ...................................................................33, 34, 35

*Blair v. Rent-A-Center, Inc.,*
   928 F.3d 819 (9th Cir. 2019)...............................................................9, 44, 47

*Blanton v. Domino's Pizza Franchising LLC,*
   962 F.3d 842 (6th Cir. 2020)...........................................................................31

iv

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015)........................................................29

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
  622 F.3d 996 (9th Cir. 2010).................................................12, 66

*Briggs v. Merck Sharp & Dohme,*
  796 F.3d 1038 (9th Cir. 2015)......................................................58

*Brobeck, Phleger & Harrison v. Telex Corp.,*
  602 F.2d 866 (9th Cir. 1979)..................................................14, 26

*Carma Developers (California), Inc. v. Marathon Development California, Inc.,*
  826 P.2d 710 (Cal. 1992) ............................................................57

*Cintia Corsi et al. v. Cellco Partnership et al.,*
  Case No. 3:22-cv-04621 (D.N.J.)..................................................65

*Circuit City Stores, Inc. v. Mantor,*
  335 F.3d 1101 (9th Cir. 2003).......................................................65

*Cooper v. Agrify Corp.,*
  No. C21-0061-RSL-JRC,
  2022 WL 2374587 (W.D. Wash. June 2, 2022)..............................31

*Davis v. Kozak,*
  267 Cal. Rptr. 3d 927 (Cal. Ct. App. 2020)....................................53

*Eiess v. USAA Federal Savings Bank,*
  404 F. Supp. 3d 1240 (N.D. Cal. 2019).........................................29

*Federal Savings and Loan Insurance Corp. v. Gemini Management,*
  921 F.2d 241 (9th Cir. 1990)........................................................48

*Fernandez v. Bridgecrest Credit Co., LLC,*
  2022 WL 898593 (9th Cir. Mar. 28, 2022)....................................44

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995)........................................................23, 24, 30

*G.G. v. Valve Corp.,*
    799 Fed. App'x 557 (9th Cir. 2020) ................................................31

*Gostev v. Skillz Platform, Inc.,*
    --- Cal. Rptr. 3d ---,
    2023 WL 2252693 (Cal. Ct. App. Feb. 28, 2023)................................ 10, 29, 30

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002).........................................................................23

*In re Chevron U.S.A., Inc.,*
    109 F.3d 1016 (5th Cir. 1997)......................................................58

*In re Safeguard Self-Storage Trust,*
    2 F.3d 967 (9th Cir. 1993)...........................................................39

*Jackson v. Rent-A-Center, Inc.,*
    581 F.3d 912 (9th Cir. 2009)........................................................33

*Judd v. Weinstein,*
    967 F.3d 952 (9th Cir. 2020).................................................... 10, 32

*Kilgore v. KeyBank, N.A.,*
    718 F.3d 1052 (9th Cir. 2013).......................................................9

*Knutson v. Sirius XM Radio Inc.,*
    771 F.3d 559 (9th Cir. 2014).....................................................9, 10

*Lewis v. Hopper,*
    295 P.2d 93 (Cal. Ct. App. 1956)................................................40

*Lim v. TForce Logistics, LLC,*
    8 F.4th 992 (9th Cir. 2021)..........................................................14

*MacClelland v. Cellco Partnership,*
    609 F. Supp. 3d 1024 (N.D. Cal. 2022).....................................passim

*Manhattan Loft, LLC v. Mercury Liquors, Inc.,*
    93 Cal. Rptr. 3d 457 (Cal. Ct. App. 2009).....................................16

*McBurnie v. Acceptance Now, LLC,*
    --- F. Supp. 3d ---,
    2022 WL 17342195 (N.D. Cal. Nov. 30, 2022)................................................46

*McGill v. Citibank, N.A.,*
    393 P.3d 85 (Cal. 2017) ...................................................................................44

*McGrath v. Doordash, Inc.,*
    No. 19-cv-05279-EMC,
    2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ..................................................59

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003)....................................................................45, 47

*Mohamed v. Uber Technologies, Inc.,*
    848 F.3d 1201 (9th Cir. 2016)........................................................................31

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011)..........................................................................24

*Moreno v. Sanchez,*
    131 Cal. Rptr. 2d 684 (Cal. Ct. App. 2003).....................................................40

*Nelson v. Dual Diagnosis Treatment Center, Inc.,*
    292 Cal. Rptr. 3d 740 (Cal. Ct. App. 2022).......................................24, 27, 66

*Nyulassy v. Lockheed Martin Corp.,*
    16 Cal. Rptr. 3d 296 (Cal. Ct. App. 2004).......................................................41

*Oracle America, Inc. v. Myriad Group A.G.,*
    724 F.3d 1069 (9th Cir. 2013)...................................................................23, 29

*OTO, L.L.C. v. Kho,*
    447 P.3d 680 (Cal. 2019) ...............................................................................36

*Pokorny v. Quixtar, Inc.,*
    601 F.3d 987 (9th Cir. 2010)..........................................................................53

*Prager University v. Google LLC,*
    301 Cal. Rptr. 3d 836 (Cal. Ct. App. 2022).....................................................57

*Predmore v. Nick's Management, Inc.,*
    2021 WL 409736 (N.D. Tex. Feb. 4, 2021).....................................34

*Rent-A-Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010)..................................................................passim

*Riverisland Cold Storage, Inc v. Fresno-Madera Production Credit Ass'n,*
    291 P.3d 316 (Cal. 2013) ..................................................................49

*Roa v. Lodi Medical Group, Inc.,*
    695 P.2d 164 (Cal. 1985) .................................................................20

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.,*
    38 Cal. Rptr. 2d 783 (Cal. Ct. App. 1995).......................................50

*Sabra v. Maricopa County Community College District,*
    44 F.4th 867 (9th Cir. 2022)...............................................................11

*Sakkab v. Luxottica Retail North America, Inc.,*
    803 F.3d 425 (9th Cir. 2015)......................................................47, 48

*Salve Regina College v. Russell,*
    499 U.S. 225 (1991).........................................................................10

*Sanchez v. Valencia Holding Co., LLC,*
    353 P.3d 741 (Cal. 2015) .................................................................36

*Simmons v. Ratterree Land Co.,*
    17 P.2d 727 (Cal. 1932) ...................................................................50

*Smith v. Rickards,*
    308 P.2d 758 (Cal. Ct. App. 1957)...................................................50

*Soltani v. Western & Southern Life Insurance Co.,*
    258 F.3d 1038 (9th Cir. 2001)..........................................................41

*Sonic-Calabasas A, Inc. v. Moreno,*
    311 P.3d 184 (Cal. 2013) .................................................................50

*Stirlen v. Supercuts, Inc.,*
    60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997)........................................67

*Styne v. Stevens,*
    26 P.3d 343 (Cal. 2001) ...................................................................20

*United States v. Sanmina Corp.,*
    968 F.3d 1107 (9th Cir. 2020)..........................................................10

*Vaughn v. Tesla, Inc.,*
    303 Cal. Rptr. 3d 457 (Cal. Ct. App. Jan. 4, 2023)..........................46

*Viking River Cruises, Inc. v. Moriana,*
    142 S. Ct. 1906 (2022).................................................................44, 48

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior
    University,*
    489 U.S. 468 (1989)..........................................................................31

*Western Filter Corp. v. Argan, Inc.,*
    540 F.3d 947 (9th Cir. 2008).............................................................40

*Wherry v. Award, Inc.,*
    123 Cal. Rptr. 3d 1 (Cal. Ct. App. 2011)..........................................40

*Zaborowski v. MHN Government Services, Inc.,*
    601 F. App'x 461 (9th Cir. 2014)..................................................21, 64

**Statutes**

Cal. Bus. & Prof. Code § 17208.....................................................16, 41

Cal. Civ. Code § 1670.5........................................................................26

Cal. Civ. Code § 1761........................................................................... 4

Cal. Civ. Code § 1783......................................................................16, 41

Cal. Civ. Proc. Code § 1282.4..............................................................20

Cal. Civ. Proc. Code § 338....................................................................41

**<u>Treatises</u>**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) .........................................60, 61

**<u>Other Authorities</u>**

AAA Consumer Arbitration Rules, Rule 14 ............................................................27

AAA Supplementary Rules For Multiple Case Filings, Rule MC-9 .....................18

BBB Rules of Arbitration, Rule 2 ........................................................................27

## INTRODUCTION

This appeal is about an arbitration agreement that goes too far. The district court was shocked by the content of the agreement and correctly refused to compel arbitration under its illusory, unconscionable and inseverable terms. In short, an arbitration agreement that requires claimants to wait decades or longer for a hearing, allows statutes of limitation to tick away and subjects claimants to unlawful restrictions on what evidence they can obtain and what damages they can seek is not an alternative to litigation; it is an inferior and unfair forum that violates claimants' rights under federal and state law. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 697 (Cal. 2000). This Court of Appeals should affirm.

## STATEMENT OF JURISDICTION

Plaintiffs and Appellees Teresa MacClelland, Et Al., agree with the Statement of Jurisdiction submitted by Defendants and Appellants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications, Inc. (collectively, "Verizon"). *See* Verizon's Opening Appellate Brief ("OAB") 2.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.** Whether California law applies to state law issues arising from or relating to the My Verizon Wireless Customer Agreement ("Customer Agreement," "Agreement," "Cust. Agr." or "Agr.").

**II.**     Whether Verizon's Customer Agreement dated October 20, 2021, governs.

**III.**     Whether this court must analyze the delegation clause and the arbitration agreement as they were written.

**IV.**     Whether the mass arbitration provision can force claimants to wait decades for their arbitrations to occur.

**V.**     Whether the delegation clause is unenforceable because it does not clearly and unmistakably delegate to an arbitrator the authority to answer threshold questions of arbitrability.

**V.A.**     Whether the delegation clause contains language about delegation.

**V.B.**     Whether there can be a clear and unmistakable delegation when one of the two choices of arbitral society rules—the Better Business Bureau rules—does not contain a delegation clause.

**V.C.**     Whether the incorporation by reference of arbitral society rules is a clear and unmistakable delegation when at least one party is unsophisticated.

**VI.**     Whether the delegation clause provides for an illusory remedy.

**VII.**     Whether the delegation clause and the arbitration agreement are each unconscionable.

**VII.A.**    The delegation clause and the arbitration agreement are procedurally unconscionable. (Verizon does not contest this issue.)

**VII.B.**    Whether the delegation clause is substantively unconscionable.

**VII.C.**    Whether the arbitration agreement is substantively unconscionable.

**VII.C.1.**    Whether Verizon's 180-day contractual limitations period is substantively unconscionable.

**VII.C.2.**    Whether Verizon's punitive damages waiver is unconscionable. (Verizon does not contest this issue.)

**VII.C.3.**    Whether the decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), holds that the Federal Arbitration Act preempts the "*McGill* rule"—the rule of California law that deems unenforceable a contractual provision which prohibits a party from obtaining public injunctive relief in any forum. *McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017).

**VII.C.4.**    Whether Verizon's exculpatory clause—which prohibits consumers but not Verizon from obtaining or submitting relevant evidence—is substantively unconscionable.

**VII.C.4.a.**    Whether the clause is unconscionable because it is exculpatory.

**VII.C.4.b.**     Whether the clause is unconscionable because it limits a consumer's right to adequate discovery in arbitration.

**VII.C.5.**     Whether Verizon's mass arbitration provision is substantively unconscionable.

**VII.C.5.a.**     Whether the mass arbitration provision creates an inferior forum tilted unconscionably in favor of Verizon.

**VII.C.5.b.**     Whether mass arbitration provision does not provide for a true bellwether process.

**VIII.**     Whether the district court abused its discretion in refusing to sever the unenforceable provisions.

## STATEMENT OF THE CASE

**A.     Plaintiffs Are 27 California Consumers Who Are Represented By The Same Two Law Firms.**

Plaintiff Teresa MacClelland is one of 27 named plaintiffs. First Amended Complaint ("FAC") ¶¶ 15–41 (Excerpts of Record ("ER") 46–47)). Each Plaintiff is a resident of California. *Ibid.* Each Plaintiff is a "consumer" under California law. FAC ¶ 514 (ER-148); Cal. Civ. Code § 1761(d) (defining "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes").

Each Plaintiff is represented by the consumer rights law firms of Hattis & Lukacs and DeNittis Osefchen Prince, P.C. ER-163. Each Plaintiff has instructed their lawyers that, if their claim is compelled to arbitration, each Plaintiff's claim should be filed immediately. *See* Declaration of Daniel M. Hattis In Support Of Plaintiffs' Opposition To Defendants' Motion To Compel Arbitration And Stay Proceedings ("Hattis Decl."), ¶ 5 (Supplemental Excerpts of Record ("SER") 38).[1]

### B. Plaintiffs Filed A False Advertising Class Action Against Verizon Over A Deceptive "Administrative Charge."

Plaintiffs allege that Verizon has engaged, and continues to engage, in a pervasive false advertising scheme, whereby Verizon advertises flat monthly rates for its wireless service plans but then charges higher rates via a disguised and fabricated extra charge on the bill, which Verizon calls the "Administrative Charge." FAC ¶ 1 (ER-43). Plaintiffs also allege that for years, Verizon explicitly and falsely stated on its monthly bills that the Administrative Charge is a surcharge imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments." FAC ¶¶ 6, 73–75 (ER-44, 55–57).

Plaintiffs allege four claims: (1) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) violation of the False

---

[1]     When a declaration appears in the Supplemental Excerpts of Record, only the exhibits relevant to this appeal, if any, are included.

Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.; and (4) breach of the implied covenant of good faith and fair dealing. FAC ¶¶ 511–578 (ER-147–161).

Plaintiffs pursue their claims on behalf of themselves and also on behalf of a proposed class of California consumers, defined as:

> All individual consumers in California who currently subscribe or formerly subscribed to a postpaid wireless service plan from Verizon and were charged what Verizon labeled an "Administrative Charge" within the applicable statutes of limitations.

FAC ¶ 501 (ER-144).

In their capacity as individuals and private attorneys general, Plaintiffs pray for public injunctive relief prohibiting Verizon from falsely advertising to the general public the prices of its wireless service plans. FAC, Prayer, ¶ A (ER-161). In their capacity as named plaintiffs seeking to represent a putative class, Plaintiffs pray separately for private injunctive relief and monetary relief, among other remedies. FAC, Prayer, ¶¶ B, C (ER-161–62). Plaintiffs demanded trial by jury. FAC, p. 121 (ER-163).

### C. Verizon Moved To Compel Arbitration.

Verizon moved to compel arbitration and for a stay of proceedings (D. Ct. Dkt. 20 (ER-180–81)), with the motion supported by the Declaration of Lacy Kennedy, IV (SER-73–83).

Plaintiffs filed an Opposition ("Oppo.") (SER-42–72), which was supported by the Declaration of Daniel M. Hattis (SER-36–41). Verizon filed a Reply. D. Ct. Dkt. 34 (ER-183).

On May 19, 2022, the district court heard oral argument. Transcript of Proceedings, dated May 19, 2022 ("Transcript") (SER-7–35). At the end of the hearing, the district court took the matter under submission. Tr. 23:25 (SER-29).

On June 8, 2022—after the hearing but before the Court issued a ruling— Verizon filed a document asserting that, going forward, Verizon would toll the statute of limitations for Plaintiffs and other claimants in Plaintiffs' position. Declaration of Lacy Kennedy, IV I.S.O. Verizon's Request For Leave To File Notification Of Change To Customer Agreement ("Kennedy Tolling Decl."), ¶ 8 (SER-5).

### D. The District Court Denied Verizon's Motion To Compel Arbitration.

On July 1, 2022, the district court denied Verizon's motion to compel arbitration and for a stay of proceedings. ER-3–29; *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022). On July 12, 2022, Verizon filed a notice of appeal from the order. ER-164–66.

## <u>SUMMARY OF THE ARGUMENT</u>

The bottom line of this appeal is that Verizon ignored its obligations under federal and state law to structure an arbitration system in which arbitrations occur fairly and in a reasonable time. *Concepcion*, 563 U.S. at 345; *Armendariz*, 6 P.3d at 697.

Instead, Verizon crafted a system that, if enforced, would require claimants to wait decades or longer for an arbitration. *See* Sections IV, VII(c)(5), *infra*. As the claimants are forced to wait, their limitations periods would expire. *Ibid.* The arbitrations are illusory. *See* Section VI, *infra*.

If arbitrations were to occur, claimants would be subject to unconscionable restrictions, such as a waiver of the right to seek punitive damages and public injunctive relief, as well as a one-sided exculpatory clause that prohibits claimants—but not Verizon—from submitting relevant evidence. *See* Sections VII(c)(2), (3), (4), *infra*.

Meanwhile, Verizon failed to draft a clear and unmistakable delegation of authority to the arbitrator to decide threshold issues of arbitrability. *See* Section V, *infra*.

Finally, the district court correctly exercised its discretion in refusing to sever the many unlawful provisions and instead declaring the arbitration agreement as a whole unenforceable. *See* Section VIII, *infra*.

## **STANDARDS OF REVIEW**

Verizon's Opening Appellate Brief makes one glancing and inaccurately overbroad reference to a de novo standard of appellate review. OAB 20. Plaintiffs hereby provide a more granular discussion.

The district court denied Verizon's motion to compel arbitration and to stay proceedings (ER-29:20; *MacClelland*, at 1046)[2], which this Court reviews de novo. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc).

The district court held that multiple provisions of Verizon's arbitration agreement were unconscionable (ER-10:19–26:4; *MacClelland*, at 1033–1044), which this Court reviews de novo. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014).

The district court ruled that the Federal Arbitration Act ("FAA") does not preempt the "*McGill* rule"—a principle of California law that prohibits the enforcement of a contract which prevents a claimant from obtaining public injunctive relief in any forum (ER-18:4-20; *MacClelland*, at 1038–39), which this Court reviews de novo. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019).

---

[2] In this brief, the Order of the district court will be cited with a pin cite to the Excerpts of Record followed by a parallel pin cite to the corresponding page in Volume 609 of the Federal Supplement, Third.

The district court's decision below is heavily grounded in California state law. While a federal appellate court reviews de novo determinations of state law, *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991), that review is cabined and constrained. "Federal courts are required to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of general law and however much the state rule may have departed from prior decisions of the federal courts." *Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020) (quotation marks omitted).[3]

Separately, a district court's **factual findings** are reviewed for clear error, *Knutson*, 771 F.3d at 564, in which reversal requires that a district court's finding be "illogical, implausible, or without support in the record," *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).

---

[3]    This constrained standard of review regarding state law is germane to this Court's application of *Gostev v. Skillz Platform, Inc.*, --- Cal. Rptr. 3d ---, 2023 WL 2252693, *7 (Cal. Ct. App. Feb. 28, 2023), which recently clarified that, as a matter of California contract law, the mere incorporation by reference of arbitral society rules in an arbitration agreement does *not* clearly and unmistakably delegate threshold issues of arbitrability to the arbitrator when at least one of the parties is unsophisticated. *See* Section V.C, *infra*. Some federal courts have in the past drifted toward the opposite outcome. OAB 23–25. But a California appellate court has now issued a precedential ruling of state law for federal courts to follow, "however much the state rule may have departed from prior decisions of the federal courts." *Judd*, 967 F.3d at 955.

Three of the facts found by the district court are particularly pertinent to this appeal: (1) "the average disposition time for an arbitration takes a little under seven months" (ER-21:1-3; *MacClelland*, at 1040); (2) if Verizon's mass arbitration provision were applied to 2,712 claimants represented by Plaintiffs' counsel, the provision would "delay[] the ability of one to vindicate a legal claim by years, possibly *156 years* . . . ." (ER-23:6-7; *MacClelland*, at 1042 (emphasis in original)); and (3) "The AAA Rules are not quoted or appended to the Agreement" (ER-8:27; *MacClelland*, at 1032).

Verizon's brief did not challenge these factual findings—or any others—and did not present a specific and distinct argument as to why the district court's findings of fact were clearly erroneous. *See Sabra v. Maricopa County Community College District*, 44 F.4th 867, 881 n.5 (9th Cir. 2022) ("[W]e will not consider matters on appeal that are not *specifically* and *distinctly* argued in appellant's opening brief[.]") (quotation marks omitted) (emphasis in original).[4]

Finally, the district court found that, since Verizon's arbitration agreement was permeated by unconscionability, the unlawful provisions would not be severed

---

[4]     The facts found by the district court are logical, plausible, and supported by the record. *See* (for facts 1 & 2) Plaintiffs' Oppo. to Defendants' Mot. To Compel Arb. And Stay Proceedings, pp. 3:23–4:21, 17:19–18:1 (SER-49–50, 63–64), and Hattis Decl. ¶¶ 3–5 (SER-37–38); and (for fact 3) Verizon Customer Agreement, p. 6 (ER-37). These factual findings are established and incontrovertible for purposes of this appeal.

but, instead, the entirety of the arbitration agreement would be deemed unenforceable. ER-26:5–29:17; *MacClelland*, at 1044–46. This court "review[s] a district court's choice not to sever unconscionable portions of an arbitration agreement governed by California law for abuse of discretion." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

## **ARGUMENT**

### I. **California Law Applies To State Law Issues In This Dispute.**

The principal ***choice of law provision*** in Verizon's Customer Agreement reads: "Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state." Agr., p. 8 (ER-39).

Plaintiffs are all residents of California and had a phone number in their account with a California area code at the time they accepted the Customer Agreement. FAC ¶¶ 15–41 (ER-46–47); Hattis Decl. ¶ 9 (SER-39). California law therefore applies to all state law issues arising from or related to the Customer Agreement and Plaintiffs' claims.

The Customer Agreement also states (at 6), "The Federal Arbitration Act applies to this agreement." Agr. ¶ 1 (ER-37). The agreement does *not* state that federal law or the FAA applies exclusively.

## II. The Customer Agreement Dated October 20, 2021, Governs This Dispute.

The parties agree that the version of the Customer Agreement that governs this dispute and is to be reviewed by this Court is the version dated October 20, 2021. ER-32–39 (text of agreement).

Once the governing version is identified, Verizon is locked into that version for purposes of this lawsuit. In a provision that Plaintiffs will refer to as ***the Lock-In Clause***, Verizon stated: "[I]f we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change." Agr., p. 2 (ER-33). Since this entire appeal is about dispute resolution provisions, Verizon cannot for the duration of this lawsuit change any of those provisions—by amendment or waiver or otherwise—as they apply to Plaintiffs and the proposed class.

## III. The Court Must Analyze The Delegation Clause And The Arbitration Agreement As They Were Written, Not As Verizon Is Attempting To Change Them On The Fly.

Plaintiffs contend that the delegation clause and the arbitration agreement are unconscionable or otherwise unenforceable. (Plaintiffs are *not* arguing anywhere in this Answering Brief that the Customer Agreement as a whole is

13

unenforceable. Plaintiffs' focus is entirely on the delegation clause and, separately, the arbitration agreement.)

The district court held, "In assessing unconscionability, the Court must examine the validity of a contractual provision as of the time of the contract is made[.]" ER-21:22–23; *MacClelland*, at 1041.

The district court is correct because California law prohibits a party from avoiding an unconscionability determination through the ploy of waiving the unlawful provision. An attempted waiver of an unconscionable provision "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." *Armendariz*, 6 P.3d at 697 (quotation marks omitted); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1004 (9th Cir. 2021) ("[W]aiving unconscionable elements of the delegation clause does not change the analysis of whether the delegation clause, as drafted, is unconscionable."); *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979) ("[W]hether a contract is fair or works an unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight.").[5]

---

[5]     Separately, Verizon is prohibited by the implied covenant of good faith and

This Court must review and pass judgment on Verizon's delegation clause and the arbitration agreement ***as they were written***. ER-32–39 (text of agreement).

This Court is required to disregard Verizon's after-the-fact pledge that it will toll the limitations period for customers who have served notice or filed suit. Kennedy Tolling Decl. ¶ 8 (SER-5). Similarly, the Court is required to reject Verizon's attempts to surreptitiously amend the agreement by "interpreting" a clause to mean something other than what it says. *See* OAB 58 (in which Verizon argues that its exculpatory clause was "designed to have the same effect" as a differently worded integration clause).[6]

## IV. The Mass Arbitration Provision Can Force Claimants To Wait Decades For Their Arbitrations To Occur—Long After Their Limitations Periods Have Expired.

Many of the arguments in this brief are based on the workings of the mass arbitration provision that appears within Verizon's arbitration agreement.

The ***mass arbitration provision*** reads:

> If 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims, and counsel for the Verizon Wireless customers bringing the claims are the same or coordinated for these customers, the claims shall proceed in arbitration in a coordinated

---

fair dealing from changing a dispute resolution provision after a dispute arises. *See, e.g., Avery v. Integrated Healthcare Holdings, Inc.*, 159 Cal. Rptr. 3d 444, 454 (Cal. Ct. App. 2013).

[6]    In other words, Plaintiffs are the ones adhering to the objective theory of contracts, while Verizon is the one trying to substitute its subjective understanding. OAB 28–29.

> proceeding. Counsel for the Verizon Wireless customers and counsel for Verizon Wireless shall each select five cases to proceed first in arbitration in a bellwether proceeding. The remaining cases shall not be filed in arbitration until the first ten have been resolved. If the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding, each side may select another five cases to proceed to arbitration for a second bellwether proceeding. This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration. A court will have authority to enforce this clause and, if necessary, to enjoin the mass filing of arbitration demands against Verizon.

Agr. ¶ 6 (ER-38) (original entirely capitalized). The mass arbitration provision is sometimes referred to as "Section 6" or "Paragraph 6" because its paragraph is numbered "(6)" within the arbitration agreement. ER-38.

The mass arbitration provision works in tandem with the ***limitations revival clause***, which reads:

> The same defenses are also available to both parties as would be available in court, including any applicable statute of limitations.

ER-37 (original entirely capitalized and entirely in bold). (Plaintiffs call this clause the "limitations revival clause" because, as a baseline rule, statutes of limitation do not apply in arbitrations governed by California law,[7] but, per the clause, Verizon resurrected the limitations defense and made it available to itself in arbitration.)

---

[7]     California statutes of limitation require that an "action" be filed within a certain amount of time. *See, e.g.*, Cal. Civ. Code § 1783 (three years to file CLRA "action"); Cal. Bus. & Prof. Code § 17208 (four years for UCL "action"). But "[a]n 'action' does not include arbitration." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 93 Cal. Rptr. 3d 457, 464 (Cal. Ct. App. 2009).

The mass arbitration provision pretends to administer claims against Verizon in an orderly fashion. In reality, it is designed to destroy most claims by preventing them from being arbitrated in a timely manner.

The following list of bullet points explains what Verizon's mass arbitration provision actually does. This is not a lawyer's "parade of horribles." The simple application of facts, law and math to the language of the provision reveals a ferociously one-sided system of dispute resolution designed to quash claims and severely limit Verizon's exposure to costs and damages.

- If 25 or more Verizon customers are represented by the same or coordinated counsel, then their claims are adjudicated by the American Arbitration Association ("AAA") or the Better Business Bureau ("BBB") in batches of 10 arbitrations at a time. Agr. ¶ 6 (ER-38).

- The average arbitration takes 6.9 months to administer, according to the AAA. ER-21:1-2; *MacClelland*, at 1040; Oppo. 3:23-25 (SER-49) (As explained in the Standards of Review, *supra*, this is an undisputable fact for purposes of this appeal.)

- A total of 100 claims subject to the mass arbitration provision (i.e., being administered in batches of 10) would require 5.75 years to arbitrate at the AAA's average rate. A total of 1,000 claims would require 57.5 years to arbitrate. Etcetera.

• Verizon goes out of its way to ensure that it is *never* obligated to engage in good faith settlement talks. The mass arbitration provision does not require good faith negotiations; instead, it expressly allows Verizon to string out the arbitrations to the bitter end: "This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration." Agr. ¶ 6 (ER-38). Elsewhere in the arbitration agreement, Verizon states, "We may, *but are not obligated to*, make a written settlement offer anytime before the arbitration hearing." Agr. ¶ 5 (ER-38).[8] Verizon also states that a pre-arbitration notice requirement exists "to allow Verizon to make a fair, fact-based offer of settlement *if it chooses to do so*." Agr. ¶ 4 (ER-38).[9]

• Verizon has a strong financial incentive to not settle. At roughly 20 arbitrations a year and with business-side filing and arbitration fees of $3,200 per case in mass arbitrations,[10] stringing out the arbitrations will lead to arbitration

---

[8] In this brief, all emphases within quotations are added, unless otherwise stated.

[9] The AAA Supplementary Rules For Multiple Case Filings envision the parties mediating after an Answer is filed, but the mediation is voluntary. "Any party may unilaterally opt out of mediation upon written notification to the AAA and the other parties to the arbitration." Rule MC-9 (https://www.adr.org/sites/default/files/Supplementary_Rules_MultipleCase_Filings.pdf). *See also* Request For Judicial Notice ("RFJN") No. 2.

[10] AAA Consumer Arbitration Rules, Costs of Arbitration, pp. 33–34 (https://adr.org/sites/default/files/Consumer-Rules-Web.pdf). *See also* RFJN No. 1.

costs for Verizon of about $66,000 a year in arbitration fees (plus attorneys' fees). Oppo. 19:24-28 (SER-65). Even if Verizon loses every arbitration, this $66,000 plus attorneys' fees is all Verizon has to pay in costs (separate from damages) each year to avoid further liability—leaving Verizon with no incentive to settle thousands of claims for potentially millions of dollars.

- To the extent that Verizon's settling large numbers of claims could encourage more thousands of claims to be filed, the mass arbitration provision throttles those future claims as well, forcing almost all of them to wait decades.

- The limitations revival clause allows the claimants' statutes of limitation to tick away and expire while the claimants wait years or decades for their arbitrations to just be *filed*. The mass arbitration provision contains no language—none—that would toll these limitations periods. (And, as discussed in Section III, *supra*, Verizon's belated assurance of tolling is legally worthless.)

- The provision lacks mutuality because *only consumers* face restrictions and risk due to their choice of counsel. If a claimant retains an experienced consumer rights law firm that already represents 25 or more consumers alleging similar claims against Verizon, the claimant risks delay and having their claims time barred; the claimant is incentivized by the mass arbitration provision to retain less experienced counsel or to represent themselves. Meanwhile, Verizon can retain one law firm to defend it from an unlimited number

of claims without jeopardy of losing its defenses to time.[11] Verizon and its chosen law firm can reap the rewards of being repeat players who learn the intricacies of how to defend against these claims—while depriving consumers of that benefit.

- The mass arbitration provision interferes with a claimant's ability to retain the counsel of their choice. As California residents, Plaintiffs have a due process right under the state constitution to be represented by retained counsel in civil proceedings. *Roa v. Lodi Medical Group, Inc.*, 695 P.2d 164, 166 (Cal. 1985) ("our cases have long recognized that the constitutional due process guarantee" grants the "right to be represented by retained counsel in civil actions"); *see also* Cal. Civ. Proc. Code § 1282.4(a) (right to attorney at arbitration). But the mass arbitration provision grossly interferes with consumers' right to retain counsel by creating a strong disincentive (long delays) to hire experienced counsel, which in turn creates an incentive to represent themselves.

- The mass arbitration provision places counsel with more than 25 clients in the conflicted position of having to choose which clients will have their arbitrations heard now and which later. All 27 Plaintiffs have instructed their counsel that, if forced to arbitrate, all want to file their demands for arbitration as soon as possible. Hattis Decl. ¶ 5 (SER-38). But, per the mass arbitration

---

[11]    "[S]tatutes of limitations do not apply to defenses." *Styne v. Stevens*, 26 P.3d 343, 350 (Cal. 2001).

provision, only ten arbitrations can move forward at a time, with Plaintiffs' counsel being forced to choose five.

- Plaintiffs cannot emphasize enough that the mass arbitration provision prohibits a claimant from even ***filing*** a demand for arbitration before all previous batches-of-ten have been arbitrated. ER-38.[12]

Now that the principal problems with the mass arbitration provision have been enumerated in this section, Plaintiffs will address precisely why these problems render the provision legally unenforceable.

## V. The Delegation Clause Is Unenforceable Because It Does Not Clearly And Unmistakably Delegate To An Arbitrator The Authority To Answer Threshold Questions Of Arbitrability.

The ***delegation clause***—in which "AAA" refers to the American Arbitration Association and "BBB" refers to the Better Business Bureau—within Verizon's arbitration agreement reads:

> For claims over $10,000, the AAA's Consumer Arbitration Rules will apply. For claims of $10,000 or less, the party bringing the claim can choose either the AAA's Consumer Arbitration Rules or the BBB's

---

[12] Verizon may argue in Reply that these concerns about delay are theoretical and do not affect the 27 named Plaintiffs, whose arbitrations could be completed in about two years. Verizon would be wrong because California law takes into account whether a contractual provision would inhibit or chill third parties from seeking to vindicate their rights, *Armendariz*, 6 P.3d at 687, and this Court applies that principle. *See Zaborowski v. MHN Government Services, Inc.*, 601 F. App'x 461, 463 (9th Cir. 2014) (A fee-shifting clause's "effect is to chill employees from seeking vindication of their statutory rights by pursuing claims in arbitration."). *See also* ER-22:8–23:1; *MacClelland*, at 1041–42 (collecting cases).

> Rules For Binding Arbitration. You can get procedures, rules and fee information from the AAA (www.adr.org), the BBB (www.bbb.org) or from us.

Agr. ¶ 2 (ER-37) (original entirely capitalized) (domain names are *not* links); *see also* OAB 29–31.

Challenges to the delegation clause must always be decided by a court. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract[.]'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("*Rent-A-Center II*") (quoting 9 U.S.C. § 2). "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Center II*, 561 U.S. at 71.

Plaintiffs contend that the delegation clause is unconscionable. The initial threshold question is therefore, Who decides if the delegation clause is unconscionable? Verizon contends that its arbitration agreement requires the question to be answered by an arbitrator. OAB 20–21. Plaintiffs disagree; Plaintiffs contend that the delegation clause is not enforceable and demand that a court decide the question. Plaintiffs are therefore raising an "arbitrability" issue in the

sense that they are challenging "whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

"Gateway" questions of arbitrability are presumptively reserved for a court to decide. "[T]here is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). If the Court thinks in this case that delegation to an arbitrator is a close question, Plaintiffs win; there is no putting a thumb on the scale in favor of arbitration.

The only way to overcome the presumption that a court will answer an arbitrability question is for a contract to "clearly and unmistakably" delegate the specific issue to an arbitrator. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up). The "clear and unmistakable" standard is a heightened standard imposed by the U.S. Supreme Court, *Rent-A-Center*, 561 U.S. at 70 n.1, because the question of who-decides-arbitrability is a "rather arcane" topic that the parties "might not focus upon" due to the expectancy that a court would decide, *First Options*, 514 U.S. at 945.

The precedents of our highest court and this Court support the proposition that the "clear and unmistakable" standard is stringent and difficult to satisfy. The delegation provision must be issue-specific "given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id*. For evidence of the parties' assent to arbitrate a specific gateway issue, a court can look to "a course of conduct demonstrating assent" or "an express agreement to do so," *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011), but silence or ambiguity is to be interpreted *against* arbitration, *First Options*, 514 U.S. at 945.

## A. The Delegation Clause Does Not Contain Language About Delegation.

When the text of Verizon's delegation clause is reviewed, one defect is immediately apparent: The delegation clause lacks any language about delegation.

Not a single word of the clause states that an arbitrator will be deciding the specific issue of whether the delegation clause or arbitration agreement is valid. Federal law requires specificity in a delegation, *First Options*, 514 U.S. at 945, but none exists here. The most basic element of a delegation clause—the delegation— is missing; ergo, it cannot be clear and unmistakable. *Nelson v. Dual Diagnosis Treatment Center, Inc.*, 292 Cal. Rptr. 3d 740, 750 (Cal. Ct. App. 2022) (delegation not clear and unmistakable because "clause does not mention arbitrability, nor is it mentioned anywhere else in the agreement"); *Ajamian v.*

24

*CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 786 (Cal. Ct. App. 2012) ("The absence of such express language (or extrinsic evidence to the same effect) therefore gives rise to the inference that the parties did *not* consider the matter.") (emphasis in original).

> **B.      There Is No Clear and Unmistakable Delegation Because One Of The Two Choices Of Arbitral Society Rules—The BBB Rules— Does Not Contain A Delegation Clause.**

Verizon is incorrect when it states (at OAB 13) that the delegation clause "incorporates" the AAA rules into the arbitration agreement. The agreement gives a claimant the option of choosing **either** the AAA's rules or the BBB's rules for binding arbitration of claims for $10,000 or less. Agr. ¶ 2 (ER-37).

But the BBB rules do not contain an explicit delegation clause. ER-9:11; *MacClelland*, at 1032 ("The BBB rules do *not* contain an explicit delegation clause."); *see also* BBB Rules (Request For Judicial Notice ("RFJN") No. 3). There thus cannot be "clear and unmistakable" evidence that the parties agreed to arbitrate issues of arbitrability when one of the two potential sets of rules for arbitration does not contain an explicit delegation clause.

Notably, Verizon ***does not dispute*** in its brief that the BBB rules do not contain an explicit delegation clause. Instead, Verizon argues that "Plaintiffs have never contended that their claims are worth under $10,000" and thus that "[t]he

option to arbitrate claims for less than $10,000 under the BBB rules does not affect the delegation" such that the AAA Rules' delegation clause must apply. OAB 31.

Verizon has it backward. Plaintiffs have never contended that their claims are worth *more than* $10,000. *See, e.g.,* FAC ¶ 2 (ER-43) (Administrative Charge currently $1.95 per month per line) & Prayer, ¶ B(4) (ER-162) (praying for "damages to Plaintiffs and the Class in the amount they paid in Administrative Charges"). Thus, Plaintiffs have the ability to choose either the AAA or the BBB rules. Agr. ¶ 2 (ER-37).

Moreover, this Court is required to analyze what the contract said at the time it was made, not how it might later be performed. *Brobeck, Phleger & Harrison*, 602 F.2d at 875; Cal. Civ. Code § 1670.5(a) (court reviews contract "at the time it was made"). At the time a consumer agreed to Verizon's delegation clause, she would have had no idea if she would ultimately be alleging a claim for more than $10,000. In fact, it is unlikely that any individual consumer would consider or predict that a future claim regarding the consumer's wireless service could total $10,000 or more. *See* ER-9:11-14; *MacClelland*, at 1032 (no clear and unmistakable delegation, "particularly since it is not clear that the consumer would consider any individual claim to be worth over $10K.").

Verizon argues (at OAB 4, 29–30) that a clear and unmistakable delegation occurred because the arbitration agreement incorporates the AAA rules, which contain AAA Rule 14(a):

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

AAA Rule 14(a) (RFJN No. 1).

Even assuming, without conceding, that the delegation clause incorporates AAA Rule 14(a) and that it is a valid delegation, Verizon fatally muddled the delegation by also incorporating the BBB rules. A consumer would have to review both sets of rules in detail, and the contradiction—or, at minimum, ambiguity—between the two sets of rules on the topic of delegation results in a failed delegation. *Nelson*, 292 Cal. Rptr. 3d at 749 ("[T]o be effective, any attempted delegation cannot be equivocal or ambiguous.").

The BBB rules contain only a general statement about the scope of arbitration at BBB Rule 2, which is titled "Scope Of BBB Arbitration," and which reads in the second paragraph: "The arbitrator shall decide any dispute about whether a particular issue falls within the parties' arbitration agreement." BBB Rule 2 does not expressly provide the arbitrator with authority to rule on a question of *validity* or *enforceability* of the arbitration agreement.[13]

---

[13]    *See* BBB Rules https://www.bbb.org/content/dam/iabbb/dispute-

### C. The Incorporation by Reference of Arbitral Society Rules Is Not A Clear and Unmistakable Delegation When At Least One Party Is Unsophisticated.

Verizon takes the position that a consumer must *as a matter of law*: (1) determine in advance that any future dispute the particular consumer may have with Verizon would be for more than $10,000; (2) read the reference in Verizon's delegation clause to "www.adr.org," (3) go to www.adr.org using a different window or device (because it is not a hyperlink), (4) find the current version of the AAA Consumer Rules on the website, (5) read all 55 rules as well as the prefatory and concluding matter, and (6) identify that a delegation of arbitrability occurs in Rule 14(a). That is asking an awful lot of someone who just wants cell phone service.

The district court correctly ruled that, "[w]here at least one party is unsophisticated, courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." ER-8:2-5; *MacClelland*, at 1031.

This Court in 2013 and again in 2015 declined to rule one way or the other as to whether the incorporation by reference of the rules of an arbitral society is a clear and unmistakable delegation when at least one party to the contract is

---

handling/bbb-rules-of-arbitration-pre-dispute.pdf. *See also* RFJN No. 3.

unsophisticated. *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015); *Oracle America*, 724 F.3d at 1075 n.2.

Since then, "the majority of the lower courts in the Ninth Circuit have held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." *Eiess v. USAA Federal Savings Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (collecting cases). *See also* ER-8:2-21; *MacClelland*, at 1031–32 (updated collection).

Now, the California Court of Appeal has confirmed the decisions of those district courts. In *Gostev v. Skillz Platform, Inc.*, --- Cal. Rptr. 3d ---, 2023 WL 2252693, *7 (Cal. Ct. App. Feb. 28, 2023), the court held as a matter of California contract law that "the incorporation by reference of AAA Commercial Arbitration Rules does not provide clear and unmistakable evidence the parties intended to delegate to the arbitrator the question of unconscionability in this case," i.e., when at least one party is unsophisticated.

When a broad arbitration agreement fails to specify in the agreement itself that the arbitrator will decide questions of arbitrability, a "reasonable inference is that all of this language is only intended to bring within the exclusive scope of arbitration all *substantive* disputes, claims or controversies on which a court action might otherwise be brought, while the *enforceability* of the arbitration provision

29

itself remains a matter for determination by a court." *Id.* at \*4 (quoting *Ajamian*, 137 Cal. Rptr. 3d at 783).

A delegation clause is not saved simply because the application of the rules of contractual construction would ultimately lead an attorney to read through an arbitral society's rules and identify one rule as containing a delegation clause. "Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue." *Id.* at \*6 (quoting *Ajamian*, at 789).

Since Plaintiffs are bringing this lawsuit in their capacity as consumers on behalf of a class of consumers, they are unsophisticated parties in the eyes of the law for purposes of this lawsuit. Verizon is undisputedly a highly sophisticated party.

Consequently, since the Customer Agreement and this dispute are governed by California law (*see* Applicable Law, *supra*), the district court sitting in diversity[14] was obligated to apply California contract law—which now holds that mere incorporation by reference of an arbitral society's rules is not a clear and unmistakable delegation of authority to the arbitrator to resolve questions of arbitrability when one party is unsophisticated.[15]

---

[14]    FAC ¶ 44 (ER-47) (pleading diversity jurisdiction).

[15]    To be clear: While federal arbitration law enunciates the "clear and unmistakable" standard, *First Options*, 514 U.S. at 944, state contract law determines whether that standard has been met. "When deciding whether the

30

Now that *Gostev* has clarified California's law on this issue, many of the arguments in Verizon's brief are moot.[16] A California appellate court has spoken, so it simply does not matter what other federal circuits have said.[17] OAB 23–24.

---

parties agreed to arbitrate a certain matter (*including arbitrability*), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* (applying Illinois and Pennsylvania law to determine if standard met); *see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 474 (1989) ("[T]he interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review[.]").

[16]    Even with regard to the other federal circuits, only two published circuit decisions directly address the topic of delegation by reference when at least one party is unsophisticated—and those two decisions are less than they seem. OAB 24. The ruling in *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018) (OB 24), is based on citations to two authorities that do not actually address the issue of unsophisticated parties—one case in which both litigants were sophisticated (*Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 254 (5th Cir. 2014)) and a second case in which the issue of an individual investor's sophistication was not mentioned (*Cooper v. WestEnd Capital Management, L.L.C.*, 832 F.3d 534, 539 (5th Cir. 2016)). The analysis in *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851 (6th Cir. 2020), is limited to one paragraph of musing about *Arnold*. When the lack of foundation of these two precedents is considered, the reality is that *zero* published circuit court decisions agree with Verizon. None of the other decisions listed in Verizon's long string cite (OB 23–24) directly addressed the unsophisticated party issue.

Meanwhile, this Court's unpublished decision in *G.G. v. Valve Corp.*, 799 Fed. App'x 557, 558 (9th Cir. 2020) ("*Valve Corp.*") (OAB 15) is neither binding nor persuasive. According to *Gostev*, a later authority superseded *Valve Corp.* on this topic as a matter of Washington State law (*Cooper v. Agrify Corp.*, No. C21-0061RSL-JRC, 2022 WL 2374587, *3 & n.2 (W.D. Wash. June 2, 2022)). Verizon also cites *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016), but fatally admits that the court reached its decision "without any discussion of the sophistication of the parties." OAB 24.

[17]    This Court's application of *Gostev* is subject to the standard of review which

31

**VI. The Delegation Clause Promises An Illusory Remedy Because It Structures An Arbitration Regime That Prevent Claimants From Having Access To An Arbitrator.**

The clause is also illusory and unenforceable because it prevents claimants from having access to an arbitrator.

Verizon has written a delegation clause that promises an arbitration but imposes obstacles that prevent arbitration from actually happening in any realistic sense, rendering the prospect of arbitration illusory. If this Court were to delegate the issue of arbitrability to the arbitrator, this Court would in reality be delegating it to the wind—i.e., to a wait for decades or for a lifetime—because no arbitrator may be appointed for decades or longer given the requirement that arbitrations can be filed and proceed only 10 at a time. The arbitration is an illusory remedy, and the delegation clause—the mini-contract that provides for the arbitration of threshold "arbitrability" questions—is unenforceable.

In 2009, the First Circuit identified and enunciated the "illusory remedy" problem: "[I]f the terms for getting an arbitrator to decide the issue are impossibly burdensome, that outcome would indeed raise public policy concerns. If arbitration prevents plaintiffs from vindicating their rights, it is no longer a valid alternative to

---

requires federal courts to apply state law "however much the state rule may have departed from prior decisions of the federal courts" and regardless of how superior a different rule "may appear from the viewpoint of general law." *Judd*, 967 F.3d at 955. *See* Standards of Review, *supra*.

traditional litigation." *Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 12 (1st Cir. 2009) (quotation marks omitted).

The concern is "whether the arbitration regime here is structured so as to *prevent* a litigant from having access to the arbitrator to resolve claims, including unconscionability defenses. The standard for such a showing of illusoriness would also be high—all formal dispute resolution involves costs and inconvenience. But if the remedy is truly illusory, a court should not order arbitration at all but decide the entire dispute itself." *Id.* at 13 (emphasis in original).

Later in 2009, this Court recognized *Awuah* and its illusory remedy principle when *Awuah* was cited on this point in both the majority opinion and the dissenting opinion in *Jackson v. Rent-A-Center, Inc.*, 581 F.3d 912 (9th Cir. 2009) ("*Rent-A-Center I*"), *rev'd on other grounds*, *Rent-A-Center II*, 561 U.S. at 76.

Since an illusory remedy issue is a question of contract formation, it must be decided by a court and not by an arbitrator, regardless of the existence of a potentially applicable delegation clause. "Issues of contract formation may not be delegated to an arbitrator." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022); *Ahlstrom v. DHI Mortgage Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) (same).

In Section IV, *supra*, Plaintiffs provided a particularized recitation of the many reasons why Verizon's mass arbitration provision—which would work as

applied to the delegation clause for purposes of an arbitrator deciding threshold arbitrability issues—is "structured so as to prevent a litigant from having access to the arbitrator" because "the terms for getting an arbitrator to decide the issue are impossibly burdensome." *Awuah*, 554 F.3d at 12–13. The mass arbitration provision as applied through the delegation clause renders the purported promise of arbitration illusory.[18]

Verizon's mass arbitration provision is structured to block claimants at each step of the process. In order to have access to an arbitrator, a claimant must, at a minimum, ***file a demand for arbitration*** with the AAA or the BBB,[19] but Verizon expressly postpones that elementary step for an indefinite length of time. Access to an arbitrator requires the ***appointment of an arbitrator***—another step that Verizon defers. Verizon also delays the ***payment of fees*** and the ***scheduling and holding of the hearing*** for decades or longer.

The point of Verizon's arbitration structure is to throttle or extinguish claims instead of speedily administering them. The mass arbitration provision as applied

---

[18]    In this argument, the flaws of the mass arbitration provision are analyzed "as applied" to the delegation clause. This type of argument has been recognized by the U.S. Supreme Court, which held that it must be decided by a court (not an arbitrator). *Rent-A-Center II*, 561 U.S. at 74; *Predmore v. Nick's Management, Inc.*, 2021 WL 409736, *5 (N.D. Tex. Feb. 4, 2021).

[19]    Meanwhile this demand for arbitration can only be submitted to the AAA or BBB 60 days after the claimant has notified Verizon of the dispute in writing. Agr. ¶ 4 (ER-38).

through the delegation clause creates a bottleneck that only about 20 claimants may pass per year; everyone else must wait.

The delays built into the operation of Verizon's delegation clause border on the geological. Less time has passed since the explosion at Krakatoa (140 years ago) than the 156-year delay created by Verizon for the claimants being represented by Plaintiffs' counsel. ER-23:3-10; *MacClelland*, at 1042. Under the FAA, one of the goals of arbitration is "increasing the speed of dispute resolution." *Concepcion*, 563 U.S. at 345. Verizon's goal is the opposite—to force claimants who want to arbitrate a threshold issue to wait as long as possible before actually reaching an arbitrator. Consequently, the delegation clause's promised remedy—an arbitration—is illusory, and, as such, "a court should not order arbitration at all but decide the entire dispute itself." *Awuah*, 554 F.3d at 13.

## VII. The Delegation Clause And The Arbitration Agreement Are Each Unconscionable.

Like other contracts, an arbitration agreement "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center II,* 561 U.S. at 68 (quoting 9 U.S.C. § 2).

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. Under this standard, the unconscionability doctrine has both a procedural and a substantive element. The

procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689–90 (Cal. 2019) (citations and quotation marks omitted).

"Both procedural and substantive unconscionability must be shown for the defense to be established, but they need not be present in the same degree. Instead, they are evaluated on a sliding scale. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable." *Id.* at 690 (citations and quotation marks omitted).

## A. The Delegation Clause And The Arbitration Agreement Are Procedurally Unconscionable.

The district court correctly held that the arbitration agreement (which contains the delegation clause and was formed at the same time) was a contract of adhesion and therefore "at least minimally procedurally unconscionable." ER-11:1-2; *MacClelland*, at 1033; *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015) ("[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability.").

Verizon's brief did not challenge the district court's finding of the existence of procedural unconscionability, so its existence is established for purposes of this appeal.

### B.      The Delegation Clause Is Substantively Unconscionable.

The delegation clause is substantively unconscionable because of the appalling delays purposely built into Verizon's arbitration system, which are designed to prevent the consumer from bringing even the threshold issue of arbitrability before an arbitrator. As detailed in Section IV, *supra*, it can take decades or longer simply to have a demand for arbitration ***filed***. Meanwhile, the statutes of limitation tick away and expire. Wait times of decades or a lifetime shock the conscience and are in grotesque violation of the federal guarantee of speedy arbitration. *Concepcion*, 563 U.S. at 345.

The cruelty of the delegation clause is best illustrated by the example of a claimant who successfully contends that the arbitration agreement is unconscionable. By operation of the mass arbitration provision as applied to the delegation clause, *Rent-A-Center II*, 561 U.S. at 74, that claimant could be forced to wait 10 or 30 or 60 years only to "prevail" when the arbitrator rules that the very contract that required her to wait so long was unconscionable and never should have been enforced in the first place.

For all the reasons described here and listed in Section IV, *supra*, the delegation clause is substantively unconscionable.

### C.   The Arbitration Agreement Is Substantively Unconscionable.

The arbitration agreement contains so many unlawful provisions that strip consumers of the ability to fairly adjudicate their claims that one must believe Verizon, one of the largest wireless companies in the world, is intentionally trying to insulate itself from claims. Many of the provisions contain language that had been declared unlawful years earlier. Many of the provisions are obviously unconscionable.

While each unconscionable provision is bad enough, the cumulative effect of the provisions is worse. The combined effect of Verizon's many unlawful provisions is to create a substandard but mandatory arbitration system that tilts heavily in Verizon's favor—a result that is anathema to California law. *Armendariz*, 6 P.3d at 697 ("Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.").

Plaintiffs will now address these provisions in the same sequence as did the district court in its Order.

### 1. Verizon's 180-Day Contractual Limitations Period Unconscionably Curtails the Three and Four Years Claimants Have to File UCL, FAL, and CLRA Claims.

The arbitration agreement contains a ***180-day contractual limitations period***

for all disputes related to charges on a customer's bill, a category that includes

Plaintiffs' claims regarding Verizon's Administrative Charge. The provision reads:

> If you're a Postpay customer, you can dispute your bill within 180 days of receiving it . . . . You may call us to dispute charges on your bill or any service(s) for which you were billed, but if you wish to preserve your right to bring an arbitration or small claims case regarding such dispute, you must write to us at the customer service address on your bill, or send us a completed notice of dispute form (available at verizon.com), within the 180-day period mentioned above. If you do not notify us in writing of such dispute within the 180-day period, you will have waived your right to dispute the bill or such service(s) and to bring an arbitration or small claims case regarding any such dispute.

ER-35 (bold and all capitalization omitted).[20]

---

[20] Verizon maintains with a straight face that the 180-day contractual limitations period is not part of the arbitration agreement because it is located on a different page of the Customer Agreement. OAB 31–34. Verizon makes the same argument regarding the punitive damages waiver and the exculpatory clause integration clause, discussed *infra*. *Ibid.*

The district court correctly rejected Verizon's farcically formalistic argument. ER-9:20-27; *MacClelland*, at 1032. The district court held that a provision is part of the arbitration agreement if it is "functionally intertwined with the arbitration clause." *Ibid.*

Verizon also argues that the three provisions apply "regardless of forum" and are not "unique to arbitration." OAB 32. Yet the undeniable reality is that these provisions are immediately recognizable as being procedural rules that are intended to be applied in arbitration and, once applied, could limit the claims alleged, the evidence presented, and the damages awarded; they are functionally a part of the arbitration agreement. The Court has dealt with this situation before. *In re Safeguard Self-Storage Trust*, 2 F.3d 967, 970 (9th Cir. 1993) ("we must determine whether an animal which looks like a duck, walks like a duck, and

The district court found that the provision contained "some degree of substantive unconscionability" because "a customer who fails to notify Verizon within the 180-day notice window (because, *e.g.*, they are unaware of this contractual provision which has no precedent in the California Civil Code) will forfeit her right to bring suit." ER-13:9-11, 14:6-9; *MacClelland*, at 1035. Verizon appears to concede that, while this provision is written in the form of a notice requirement, it functions as a limitations period. OAB 54–57.

Contractual agreements to shorten statutes of limitation are generally disfavored because they derogate statutory intent. *Lewis v. Hopper*, 295 P.2d 93, 95 (Cal. Ct. App. 1956); *Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir. 2008). Such agreements cross the line into being unconscionable when "the period fixed [is] so unreasonable as to show imposition or undue advantage in some way." *Moreno v. Sanchez*, 131 Cal. Rptr. 2d 684, 695 (Cal. Ct. App. 2003) (internal quotation marks omitted).

California courts have gauged the unreasonableness of a contractual limitations period by comparing the length of the original limitations period under the law and the adjusted period under the contract. Two striking examples are *Wherry v. Award, Inc.*, 123 Cal. Rptr. 3d 1, 7 (Cal. Ct. App. 2011), and *Nyulassy v.*

---

quacks like a duck, is in fact a duck") (holding that document that looked and acted like a lease was in fact a lease).

*Lockheed Martin Corp.*, 16 Cal. Rptr. 3d 296, 307 & n.12 (Cal. Ct. App. 2004), in which the courts found evidence of unconscionability when the limitations period set by law was one year but the contract cut it to 180 days—a 50% reduction.

The much greater reductions suffered by Plaintiffs are plainly unconscionable. Plaintiffs' CLRA and FAL claims have statutes of limitation of three years,[21] and their UCL claims have four years,[22] but Verizon unlawfully cuts those to only 180 days—reductions of 83% and 87%, respectively. This percentage-of-reduction approach is supported by *Soltani v. Western & Southern Life Insurance Co.*, 258 F.3d 1038, 1044 (9th Cir. 2001), which Verizon cites (OAB 55); there, a six-month contractual limitations period was upheld because the two analogous statutes had six-month limitations periods, resulting in a net reduction of 0%. The numbers speak for themselves. This Court should affirm.[23]

Verizon contends that 180 days is sufficient time to "investigate and file an action." OAB 55. The argument lacks foundation, since Verizon presented no

---

[21]    Cal. Civ. Code § 1783 (CLRA); Cal. Civ. Proc. Code § 338(a) (FAL).

[22]    Cal. Bus. & Prof. Code § 17208 (UCL).

[23]    Verizon's provision is particularly egregious because it lacks mutuality, and "the paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422, 436 (Cal. Ct. App. 2004). Verizon's 180-day limitations provision applies only to a *customer's* claim related to service or charges on the bill; *none* of Verizon's potential claims against customers are affected.

41

evidence to the district court that 180 days is sufficient. Worse for Verizon,

Plaintiffs alleged in robust detail why 180 days would not be sufficient: because

Verizon intentionally concealed its scheme and even designed its monthly billing

statements to prevent customers from realizing they were being overcharged.

Verizon hides the Administrative Charge (FAC ¶¶ 57–81 (ER-50–59)) and has lied

to customers about the Charge for years by falsely stating on the customer bill,

month after month, that the Charge is to "cover the costs that are billed to us by

federal, state or local governments." (FAC ¶¶ 73–75 (ER-55–57)). In fact,

Plaintiffs have requested that the district court apply the discovery rule to any

statutes of limitation due to Verizon's intentional misconduct and

misrepresentations which prevented customers from learning of the scheme. FAC ¶

502 (ER-144).

### 2. Verizon's Punitive Damages Waiver is Unconscionable.

Verizon's arbitration agreement contains the following ***punitive damages***

***waiver***, which reads:

> You and Verizon both agree to limit claims against each other solely to
> direct damages. That means neither of us will claim any damages that
> are indirect, special, consequential, incidental, treble or punitive.

ER-36 (original entirely in bold).[24]

---

[24] This clause is functionally a part of the arbitration agreement. *See* Footnote
20, *supra*.

The district court correctly held that the punitive damages waiver is unconscionable because it "limits the types of remedies that would be available under the statute, thus violating the principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." ER-15:22-25; *MacClelland*, at 1037 (quotation marks omitted).

Verizon does not contest the substance of the district court's decision on this point. OAB 11, 60.

### 3. The Provision Waiving Public Injunctive Relief Violates the *McGill* Rule—Which Was Not Overturned by *Viking River*.

The arbitration agreement contains the following ***public injunctive relief waiver***:

> Notwithstanding any other provision of this agreement, the arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.

Agr. ¶ 3 (ER-37) (original entirely capitalized and entirely in bold).

The district court correctly held that, "[b]y precluding injunctive relief benefitting anyone other than the individual claimant, the contract prevents Plaintiffs from seeking public injunctive relief in any forum, a right which cannot be denied whether in arbitration or otherwise." ER-16:22-24; *MacClelland*, at 1037. In so ruling, the district court was applying the "*McGill* rule," a rule of California contract law which states that a contract cannot waive a person's right to

43

obtain public injunctive relief from any forum, i.e., from a court *and* from an arbitrator. *See McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017).

In its brief, Verizon's sole argument regarding the *McGill* rule is that it has been preempted by the FAA, as evidenced by the recent U.S. Supreme Court decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). OAB 47–54.[25]

Verizon's sole appellate argument—that *Viking River* establishes that the FAA preempts *McGill*—faces a steep uphill climb. Within *McGill* itself, the California Supreme Court held that the FAA did not preempt the *McGill* rule. *McGill*, 393 P.3d at 93–98. Two years later, this Court concurred. *Blair*, 928 F.3d at 827–31. Last year, a panel of this Court declined to recommend an *en banc* reconsideration of *Blair* "because the issue of whether the FAA preempts the *McGill* rule is settled." *Fernandez v. Bridgecrest Credit Co., LLC*, 2022 WL 898593, *1 (9th Cir. March 28, 2022).

Verizon's tack is to contend that *Viking River* overturned the preemption rulings in *McGill* and *Blair*. OAB 47–54. Verizon is incorrect.

---

[25]     Verizon does *not* contest the district court's rulings that Plaintiffs seek public injunctive relief, that Plaintiffs sufficiently allege their right to the remedy, and that Verizon's public injunctive relief waiver violates the *McGill* rule. ER-16:22–18:3; *MacClelland*, at 1037–38.

The U.S. Supreme Court has never mentioned or cited *McGill* or *Blair*, so there is no way that the high court has *expressly* overruled the preemption holdings in *McGill* or *Blair*.

Nor does *Viking River* somehow overrule *McGill* and *Blair* by implication. The Ninth Circuit employs the stringent "clearly irreconcilable" test to determine whether a prior decision (in this case, *Blair*) has been impliedly overruled by an intervening U.S. Supreme Court decision, *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), and Verizon fails to satisfy that standard for the simple reason that *Viking River* and *Blair* are on completely different topics and are not clearly irreconcilable.

Three courts have already rejected the argument that *Viking River* silently overturned *McGill* or *Blair*.

The first case was the case at bar. Judge Edward M. Chen ruled: "*Viking River* does not undermine *McGill* or otherwise bear on the present case. *Viking River* focused on a procedural mechanism particular to California's Labor Code Private Attorneys General Act of 2004 ('PAGA'), which allows any 'aggrieved employee' to initiate an action against a former employer to obtain civil penalties that previously could have been recovered only by the State. *Viking River* held that the FAA preempts a rule of California law that PAGA claims could not be split into arbitrable 'individual' claims, which are based on a violation personally

45

experienced by the plaintiff, and nonarbitrable 'representative' claims, which are brought on behalf of violations experienced by other employees. Importantly, *Viking River* found that the FAA does *not* preempt a rule of California law prohibiting wholesale waivers of the right to assert representative claims under PAGA. Thus nothing in *Viking River* overrules or undermines *McGill*'s core holding that an arbitration agreement cannot prohibit a party from seeking public injunctive relief in any forum." ER-18:8-20, *MacClelland*, at 1038–39 (emphasis in original; citations omitted).

Then, in *McBurnie v. Acceptance Now, LLC*, --- F. Supp. 3d ---, 2022 WL 17342195, *5 (N.D. Cal. Nov. 30, 2022) (app. pending), Judge James Donato reached the same conclusion. "*Viking River* does not abrogate *McGill*, and is not clearly irreconcilable with *Blair*, which controls here." *Ibid.* (quotation marks omitted).

Most recently, the First District of the California Court of Appeal agreed. *Vaughn v. Tesla, Inc.*, 303 Cal. Rptr. 3d 457, 479 (Cal. Ct. App. Jan. 4, 2023). In a detailed opinion, the court unanimously held, "[T]he conflict between PAGA and the FAA derives from the statute's built-in mechanism of claim joinder, which permits joinder of the claims of a multitude of other employees to the individual plaintiff's claims. A public injunction claim presents no such possibility. Whether adjudicated in a judicial forum or arbitration, a request for a public injunction is

based on the evidence presented in support of the plaintiff's claims and does not require adjudication of the claims of other parties." (Citation and quotation marks omitted).

*Viking River* does not cast any doubt on *McGill*, and nothing in Verizon's brief should convince this Court otherwise.

Verizon's principal argument is that *Viking River* overruled the decision in *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015), which formed the basis for *Blair*; ergo, *Viking River* overturned *Blair*. But Verizon mistakes rhetorical flourishes in *Blair* with substantive legal arguments.

In writing its decision, the *Blair* panel used enthusiastic language such as "our decision in *Sakkab* all but decides this case" (*Blair*, 928 F.3d at 825) and "[o]ur decision in *Sakkab* is squarely on point" (*Ibid.* at 828), but the boisterous wording does not change the fact that what *Blair* borrowed from *Sakkab* was a routine three-part mode of analysis drawn directly from the landmark decision in *Concepcion*, 563 U.S. 333 (2011). When *Blair* said it was following *Sakkab*, it was talking about following *Sakkab* and *Concepcion*'s mode of analysis—as this Court suggests. *See Miller*, 335 F.3d at 900 (citing with approval law review article "describing lower courts as being bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'").[26]

---

[26]   First, *Sakkab* considered whether the rule of law it was analyzing—called

If anything, *Viking River* supports *McGill*, because *Viking River* affirms that the FAA "does not require courts to enforce contractual waivers of substantive rights and remedies." 142 S. Ct. at 1919. Public injunctive relief is both a substantive right and a substantive remedy of individual plaintiffs under California law.

### 4. Verizon's Exculpatory Clause is Substantively Unconscionable in Two Separate and Independent Ways.

All lawyers are familiar with the garden-variety integration clause. A typical one reads, "This commitment constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes any prior agreements or negotiations, whether written or oral." *Federal Savings and Loan Insurance Corp. v. Gemini Management*, 921 F.2d 241, 242 (9th Cir. 1990).

In contrast, Verizon's two-sentence ***exculpatory clause*** reads:

> This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.

---

the "*Iskanian* rule" after *Iskanian v. CLS Transportation Los Angeles, LLC*, 327 P.3d 129 (Cal. 2014)—was a ground for the revocation of *any* contract, as per the saving clause of Section 2 of the FAA. *Sakkab*, 803 F.3d at 432–33; *see also Concepcion*, 563 U.S. at 341. Second, *Sakkab* considered whether the *Iskanian* rule reflected a hostility to arbitration. *Sakkab*, 803 F.3d at 434; *see also Concepcion*, 563 U.S. at 342. Third, *Sakkab* considered whether the *Iskanian* rule interfered with fundamental attributes of arbitration, in particular, whether the rule prevented the parties from selecting the informal procedures to be used in the arbitration. *Sakkab*, 803 F.3d at 434–35; *see also Concepcion*, 563 U.S. at 344.

ER-39 (original entirely in bold).[27]

The first sentence is a traditional integration clause. But the second sentence transforms the integration clause into an exculpatory clause by sharply limiting what evidence Plaintiffs can rely upon in arbitration against Verizon.

If the first sentence stood alone, the law would read into it an exception allowing Verizon customers to discover and present "extrinsic evidence to show that the agreement was tainted by fraud." *Riverisland Cold Storage, Inc v. Fresno-Madera Production Credit Ass'n*, 291 P.3d 316, 317 (Cal. 2013). But, by adding the second sentence, Verizon replaced that implicit exception with an express provision ***forbidding*** consumers from relying upon "*any* other documents" or *anything* said by one of Verizon's agents—the very evidence that would most likely demonstrate Verizon's misleading or fraudulent statements.

And the word "rely" is broad, forbidding Verizon consumer from *seeking* evidence through discovery and also forbidding consumers from *submitting* evidence to the arbitrator. This exculpatory clause may be fatal to consumer claims, particularly in light of the fact that consumers must rely on advertisements and statements by Verizon's sales persons to prove their false advertising claims.

---

[27]    This clause is functionally a part of the arbitration agreement. *See* Footnote 20, *supra*.

*See* FAC ¶ 57–60 (ER-50–51) (alleging false statements in Verizon advertisements and by Verizon personnel).

> a. **The clause is unconscionable because it is exculpatory.**

Under California law, an exculpatory clause violates public policy and is unconscionable. *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal. 2013) ("terms that … contravene the public interest or public policy" are unconscionable).

An exculpatory clause can take many forms, including—as is the case here—language stating that a person "cannot rely" on representations made by the other party. *See Simmons v. Ratterree Land Co.*, 17 P.2d 727, 728 (Cal. 1932) (exculpatory clause described as stating buyer "does not rely on any representations of the seller or its agents except those mentioned in the contract"); *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.*, 38 Cal. Rptr. 2d 783, 784 (Cal. Ct. App. 1995) (similar); *Smith v. Rickards*, 308 P.2d 758, 761–62 (Cal. Ct. App. 1957) (similar).

The district court correctly held that Verizon's provision is a substantively unconscionable exculpation clause "because the provision does not allow for extrinsic evidence to be considered under any circumstances, including to show fraud." ER-20:3-5; *MacClelland*, at 1039. The district court explained that the second sentence caused the provision to "sweep broader than a common

integration clause" because "it purports to exclude *all* extrinsic evidence without *any* exceptions." ER-19:10-12; *MacClelland*, at 1039 (emphases in original). "The exculpatory [clause] here thus may function to negate substantive legal rights and remedies of Verizon consumers." *Id.*

In its defense, Verizon states that the provision is a "routine integration clause." OAB 57. Verizon is incorrect. A defendant's pre-dispute attempt to limit incriminating evidence is not routine—and none of the judicial decisions cited by Verizon involves an integration clause that attempts to pre-limit the evidence to be used against the drafting party. *See* OAB 58 (citing cases involving routine and irrelevant integration clauses that do not contain language remotely similar to the second sentence of Verizon's clause).

Verizon also argues that the district court should have read the clause "as consistent with the black-letter rule that extrinsic evidence is admissible to establish fraud or negligent misrepresentation." OAB 59 (quotation marks omitted). But Verizon expressly superseded that black letter rule by adding the second sentence.

Verizon argues that "California law requires a contract to be interpreted in a way that will make it lawful." OAB 59. But this canon of construction is not a "Get Out Of Jail Free" card. As Verizon admits, this canon only applies when the contract language is ambiguous, which Verizon's language is not. Additionally, a

lawful interpretation must be consistent with the manifested intent of the parties, *ASP Properties Group, L.P. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (Cal. Ct. App. 2005), which is impossible here because Verizon's intent—manifested in the language it drafted—was to create an unlawful exculpatory clause.[28]

Verizon's last-ditch argument is that "ambiguities should be construed against the drafter." OAB 59. But there is nothing ambiguous about the clause, and "[c]ourts will not strain to create an ambiguity where none exists." *Id.* at 351.

### b. Verizon's exculpatory clause unconscionably limits a consumer's right to adequate discovery in arbitration.

Verizon's exculpatory clause unconscionably limits a consumer's right to adequate discovery in arbitration by commanding that a consumer "cannot rely" upon (and therefore cannot *discover* or *submit*) the very documents and statements that formed the basis of the false advertising or fraud.

When parties "agree to arbitrate statutory claims," they must also agree "to such procedures as are necessary to vindicate that claim." *Armendariz*, 6 P.3d at 684. To that end, a plaintiff is "entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses[.]" *Ibid.* "Adequate discovery is indispensable for the vindication of

---

[28]     Again, Plaintiffs abide by the objective theory of contracts while Verizon does not.

statutory claims, and the denial of adequate discovery in arbitration proceedings leads to the de facto frustration of statutory rights." *Davis v. Kozak*, 267 Cal. Rptr. 3d 927, 938 (Cal. Ct. App. 2020) (internal citations and quotation marks omitted).

The exculpatory clause also lacks mutuality—applying only to the evidence the *consumer* can rely upon. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) ("[M]utuality is the paramount consideration when assessing substantive unconscionability.").

### 5. The Mass Arbitration Provision is Substantively Unconscionable.

#### a. The mass arbitration provision creates an inferior forum tilted unconscionably in favor of Verizon.

The mass arbitration provision is an unconscionable attempt by Verizon to create an inferior system of arbitration in which, heads, Verizon wins, and, tails, Verizon wins. For the details of how the provision works, please *revisit* Section IV, *supra,* but the unavoidable reality is that the mass arbitration provision tilts the playing field so steeply that Verizon will always prevail in one sense or another.

Verizon wins because the mass arbitration provision throttles the number of arbitrations held per year to about 20. If 3,000 claimants want to file demands for arbitration, most will have to wait decades merely to file their demands.[29]

---

[29]     *See* p. 17, *supra*. *See also* Agr. ¶ 6 (ER-38).

Verizon wins because, if the provision is enforced, Verizon caps its arbitral administrative costs at about $66,000 per year plus attorneys' fees—far less than Verizon's total costs would be if thousands of demands for arbitration could move forward at once.[30]

Verizon wins because, if the provision is enforced, Verizon's liability for damages is capped at a statistically insignificant amount—*even if Verizon loses every arbitration*. Assume for purposes of illustration that every consumer prevails on the merits, demonstrates 5 years of unlawful Administrative Charges for two phone lines totaling $46.80 a year[31], and obtains a punitive damages multiplier under the CLRA of ten times the amount unlawfully paid; at a rate of 20 arbitrations a year, Verizon is facing perhaps $51,480 a year in actual and punitive damages. Additional damages awards are delayed for decades. Meanwhile—and critically—Verizon can prevent and avoid a group settlement that otherwise may encourage many of its other tens of millions of consumer subscribers with potentially hundreds of millions of dollars in claims from submitting their claims to arbitration.

---

[30]   *See* pp. 18–19, *supra*. *See also* Oppo. 19:24-28 (SER-65).

[31]   A consumer with two Verizon Wireless phone lines would pay $1.95 per month per line in Administrative Charges, multiplied by twelve months, which equals $46.80 per year. FAC ¶ 2 (ER-43).

Verizon wins because, while the claimants wait years to file their demands for arbitration, the statutes of limitation that Verizon revived will expire.[32] (Verizon belatedly realized this fatal flaw in the provision and offered to toll the limitations period[33]—an ineffectual action prohibited by Verizon's own contract.[34])

Verizon wins because the very existence of the mass arbitration provision will chill some consumers' willingness to vindicate their statutory rights.[35]

Verizon wins because, if claimants attempt to vindicate their rights, many will be forced by the provision to retain inexperienced counsel or to represent themselves if they want their claims filed and heard in a timely manner.[36]

Verizon wins because the mass arbitration provision allows Verizon to retain one law firm to defend Verizon against all claimants and to reap the informational advantages of being a repeat player litigating against relative amateurs.[37]

---

[32]    *See* p. 19, *supra*. *See also* Limitations Revival Clause (ER-37).

[33]    Kennedy Tolling Decl. ¶ 8 (SER-5).

[34]    *See* Section III, *supra*. *See also* Lock-In Clause (ER-33).

[35]    *Armendariz*, 6 P.3d at 687.

[36]    *See* p. 20, *supra*. *See also* Agr. ¶ 6 (ER-38).

[37]    *See* pp. 19–20, *supra*. *See also* Agr. ¶ 6 (ER-38).

And Plaintiffs and other claimants lose—lose by not being able to file their demands for arbitration, lose by not being able to retain the counsel of their choice, lose because the limitations period ticks away, lose because the arbitration is decades away and they may die before their claims are heard, and lose because their federal right to arbitrate is effectively eradicated.

The district court correctly held, "Requiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is unreasonably favorable to Verizon." ER-23:3-5; *MacClelland*, at 1042 (quotation marks omitted). "In addition to the length of delay, the provision is pregnant with the risk that claims will be effectively barred when coupled with the statute of limitations. The Agreement expressly reserves Verizon's right to raise a statute of limitations defense in arbitration. Under the Mass Arbitration Provision, consumers may not 'file' their claims in arbitration until all preceding traunches are adjudicated. Those in the queue who are not able to file within the limitations period would be forever barred. The clause contains no tolling provision. The forfeiture of entire legal rights contravenes public policy." ER-23:11-19; *MacClelland*, at 1042 (citation omitted).

Verizon contends that the implied covenant of good faith and fair dealing bars Verizon from prolonging proceedings. OAB 43. Verizon's argument fails

56

because the arbitration agreement expressly allows Verizon to slowly drag out the arbitrations 10-at-a-time until the bitter end.[38] When conduct is expressly allowed by a contract, "such conduct can never violate an implied covenant of good faith and fair dealing." *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 826 P.2d 710, 729 (Cal. 1992). *See also Prager University v. Google LLC*, 301 Cal. Rptr. 3d 836, 851–52 (Cal. Ct. App. 2022) ("The implied covenant cannot impose substantive duties *or limits* on the contracting parties beyond those incorporated in the specific terms of their agreement.") (cleaned up). Moreover, since Verizon stated repeatedly that it has no obligation to make a settlement offer,[39] the implied covenant cannot force Verizon to ever make a settlement offer.

> **b.   The mass arbitration provision does not provide for a true bellwether process.**

Verizon and its *amici curiae* attempt to defend the mass arbitration provision by claiming that it creates a "fair and established" bellwether process that, after a round or two of 10-batch arbitrations, will allow the parties to reach an informed settlement of all claims. OAB 37.

---

[38]   "This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration." Agr. ¶ 6 (ER-38).

[39]   *See* p. 18, *supra*.

The argument fails because Verizon's so-called "bellwether" process is not a bellwether process at all—much less a fair and established one. The system Verizon designed lacks several of the characteristics vital to a true bellwether.

"A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015).[40]

Verizon's mass arbitration provision is not a true bellwether process designed to settle claims; it is a claims-eating machine designed to destroy claims. In a true bellwether process, all the claimants initiate their claims, and then everyone takes a temporary timeout to see the results of a few cases that go forward in the bellwether proceeding. The parties then mediate or negotiate knowing the results of those cases. And, most critically, after this initial phase is completed, ***any claimants who do not want to settle at that point can go ahead and continue prosecuting their claims***. This ensures there is incentive on both sides to settle.

---

[40]    "The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray[.]" *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

58

The district court correctly explained why Verizon's mass arbitration provision is *not* a true bellwether. ER-24:16–25:12; *MacClelland*, at 1043. The district court referenced the decision in *McGrath v. Doordash, Inc.*, No. 19-cv-05279-EMC, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020), and explained why the *McGrath* parties—who had adopted the entirety of the International Institute for Conflict Prevention & Resolution's Employment-Related Mass Claims Protocol ("Protocol") for arbitrations—had agreed to a proper bellwether process.

The district court explained that the Protocol provided for: (1) 10 cases being randomly selected, (2) those cases being resolved within 120 days of a pre-hearing conference, (3) the claimants engaging in a 90-day mediation period intended to resolve all cases, and then, *critically*, (4) after the mediation period, "the parties may choose to opt out of the arbitration process and proceed in court with the remaining claims." ER-24:16–25:3; *MacClelland*, at 1043 (citing *McGrath*, 2020 WL 6526129, at *4).

The *McGrath* process is a true bellwether because it encourages settlement with only a slight delay of a few months, and it does not prevent claimants from prosecuting their claims if they choose not to settle after the first 10 bellwether cases. They can all proceed to court immediately after the mediation. (The *McGrath* process also sets a timetable for events—something conspicuously absent from Verizon's provision.)

59

The *McGrath* process is starkly different from the process that Verizon designed, in which batches-of-10 occur in perpetuity with the other cases completely prohibited from moving forward—in fact, those cases cannot even be **filed**. Verizon's process does something a true bellwether would never do: it incentivizes the claimants to settle on Verizon's terms for fear that their claims will be fatally delayed or not heard at all.

As the district court below put it, "It is one thing to set up a bellwether system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution via ADR," such as the *McGrath* process. ER-25:27–26:1; *MacClelland*, at 1044. "It is another to formally bar the timely adjudication of cases that do not settle," such as Verizon's process. ER-26:1-2; *MacClelland*, at 1044. "[J]ustice delayed is justice denied." ER-23:7; *MacClelland*, at 1042.

As an alternative to randomly selected test cases, a true bellwether can require the selection of *representative* cases. See MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2004) ("MANUAL"). But Verizon's mass arbitration provision prescribes neither random nor representative cases. For purposes of a bellwether, Verizon chose the worst option: each side picks any five cases it wants, with no criteria for selection. ER-38. The MANUAL warns that this technique fails to generate the benefits of a true bellwether: "Some judges permit the plaintiffs and

defendants to choose which cases to try initially, but this technique may skew the information that is produced." MANUAL § 22.315.

This leads directly to another reason why Verizon's provision is not a bellwether: the absence of a neutral party who has designed the rules. Verizon's process was crafted entirely by Verizon and the timetable is entirely at the whim of Verizon; in contrast, the process in the *McGrath* case adopted wholesale a third party arbitration association's rules. At bar, there is no judge or special master selecting representative cases or bending arms to obtain a settlement, and there is nothing like the MANUAL to provide evenhanded guidance.

Separately, if the purpose of the mass arbitration provision were to foster settlement, then some mechanism would exist to force the opposing sides to negotiate in good faith with each other. Yet, Verizon's mass arbitration provision contains nothing to foster settlement negotiations—no mandatory mediation, no mandatory exchange of offers, nothing. To the contrary, Verizon's agreement specifies three times that Verizon has no obligation to ever engage in settlement talks. *See* Section IV, *supra*.

Meanwhile, the most distinctive aspect of Verizon's mass arbitration provision deflates Verizon's insistence that it is merely a bellwether. Verizon forbids claimants from even ***filing*** their claims. MDLs and coordinated proceedings do not routinely prohibit claimants from filing their claims; MDLs and

coordinated proceedings are about administering the thousands of claims that have been filed and the unknown number that may yet be filed.

Verizon's *amici curiae*, the U.S. Chamber of Commerce and the California Employment Law Council, spend many pages of their briefs in agita over the fact that, when thousands of claimants demand arbitration at once, the respondent business is required to pay arbitration fees of (to use their numbers) about $4,500 per claimant which, extrapolated over thousands of claimants, yields a considerable amount of money due the arbitral society—raising the specter of so-called "blackmail settlements" in which the business settles so as not to pay the arbitration fees. U.S. Chamber of Commerce amicus brief at 12–13.

The chutzpah of this argument is breathtaking. Verizon and other large businesses put themselves into this situation because they inserted class action waivers into their consumer contracts and have likewise prohibited class arbitrations. If the claims of thousands of consumers could be maintained in a single class action or class arbitration, Verizon would bear administrative costs for only that one case, instead of for thousands. (In the district court, Plaintiffs requested that Verizon stipulate to allowing Plaintiffs' claims to move forward as a class action[41]; Verizon refused.)

---

[41]     Oppo. 5:3-10 (SER-51).

Verizon chose individual arbitrations. It will always cost more to administrate thousands of individual cases with individual arbitrators or judges than it would to group them together in a class action or class arbitration; this is the whole reason the class action procedure was invented. But that is what Verizon chose to do. Verizon chose the AAA or the BBB to administer claims *individually*. Verizon promised to pay the AAA's or BBB's fees. But when consumers force Verizon and other big businesses to put their money where their mouths are, they hastily draft new—and unconscionable—contract language to avoid the consequences of their actions.

The situation was vividly described in one of the first judicial decisions on this topic: "The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. . . . . This hypocrisy will not be blessed, at least by this order." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020). This Court should join *Abernathy* in its revulsion and should disregard Verizon and *amici*'s argument that mass arbitration provisions like the one here are needed to protect businesses from having to keep their promises.

Verizon's mass arbitration provision is thoroughly unconscionable.

**VIII.    The District Court Acted Within Its Discretion In Refusing To Sever The Unenforceable Provisions, Which Permeate The Arbitration Agreement.**

After ruling that multiple provisions of the arbitration agreement were unenforceable, the district court correctly concluded that the agreement was "a systematic effort to impose arbitration on a customer as an inferior forum." ER-28:24-26, *MacClelland*, at 1046. Since the agreement was permeated by unconscionability, the district court exercised its discretion and declined to sever the unlawful provisions and instead invalidated the entire arbitration agreement. ER-29:16-18, *MacClelland*, at 1046.

This Court has recognized that severance should be denied when the drafter loads an arbitration agreement down with unenforceable provisions. "Although the Federal Arbitration Act expresses a strong preference for the enforcement of arbitration agreements, the Act does not license a party with superior bargaining power to stack the deck unconscionably in [its] favor when drafting the terms of an arbitration agreement. Under generally applicable severance principles, California courts refuse to sever when multiple provisions of the contract permeate the entire agreement with unconscionability." *Zaborowski v. MHN Government Services, Inc.*, 601 F. App'x 461, 464 (9th Cir. 2014) (citation and punctuation omitted); *see also Armendariz*, 6 P.3d at 696 ("If the central purpose of the contract is tainted

with illegality, then the contract as a whole cannot be enforced.") (declining to sever when more than one provision unconscionable).

Recently, **Verizon has admitted that the mass arbitration provision is a central and essential part of the arbitration agreement and, thus, cannot be severed from the agreement.** And indeed, as a matter of law, a material or central provision of a contract cannot be severed.[42]

On February 17, 2023, Verizon filed in a separate but similar civil action[43] a reply memorandum supporting its motion to compel arbitration; in that memorandum, Verizon twice admitted that the identical mass arbitration provision was central and inseverable. Verizon stated:

> Finally, *while the mass-arbitration provision is central to the arbitration agreement, and thus not severable,* if the Court considers the remaining provisions and finds any unenforceable, it can sever them, as set forth in the Agreement.

Reply, p. 2 (RFJN No. 4). Twelve pages later Verizon further stated:

> Here, *the preclusion on allowing a mass of identical arbitration claims to be filed (triggering fee obligations) before the bellwether*

---

[42] "To assess whether unconscionable terms can be severed, a court considers whether the illegality is 'central' or 'collateral' to the purpose of the contract to determine whether an entire contract should be invalidated or whether only a particular term or set of terms should be severed." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1109 (9th Cir. 2003).

[43] *Cintia Corsi et al. v. Cellco Partnership et al.*, Case No. 3:22-cv-04621 (D.N.J.).

> ***trial process has occurred is essential, id., so it is not severable,*** but
> the remaining provisions plaintiffs challenge are not essential.

Reply, p. 14 (RFJN No. 4).

Even absent Verizon's admission, the record still reflects that the mass

arbitration provision was material and central to the arbitration agreement. The

mass arbitration provision is the key component to pushing hundreds or thousands

of demands for arbitration into the far-away future. As the district court noted, the

mass arbitration provision "can operate to effectively thwart arbitration and

vindication of rights altogether." ER-28:23-24; *MacClelland*, at 1046.

If Verizon's arbitration agreement contains more than one unenforceable

provision, then the agreement is permeated with unconscionability; instead of

severing unlawful provisions, this Court should affirm the district court's exercise

of its discretion to invalidate the entire arbitration agreement.[44] *See Nelson*, 292

Cal. Rptr. 3d at 758 ("An agreement to arbitrate is considered permeated by

unconscionability where it contains more than one unconscionable provision[.]")

(quotation marks omitted); *Ajamian*, 137 Cal. Rptr. 3d at 799–800 ("In the matter

before us, there are multiple unconscionable terms in the arbitration provision, and

it was not an abuse of discretion to conclude that the unconscionability so

---

[44]     This Court reviews a district court's decision not to sever under an abuse of
discretion standard. *Bridge Fund Capital*, 622 F.3d at 1000.

66

permeated the provision that it could not be cured except by rewriting it (which the court cannot do) or by refusing to enforce the section in its entirety."); *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 151 (Cal. Ct. App. 1997) ("The one-sidedness in the arbitration clause before us here does not arise out of a single provision of that clause but out of so many provisions that we are obliged to invalidate the entire clause.").

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court affirm the order of the district court denying Verizon's motion to compel arbitration and for a stay of proceedings pending arbitration. If this Court rules that more than one provision is unenforceable (and Verizon has already admitted that one provision—the punitive damages waiver—is unenforceable, *see* Section VII(c)(2), *supra*), then this Court should affirm the district court's decision to not sever those provisions. If this Court rules that the mass arbitration provision is unenforceable, then this Court should affirm the district court's refusal to sever, since the provision is central to the agreement (as Verizon admitted in the New Jersey federal court, *see* Section VIII, *supra*).

Dated: March 17, 2023                     HATTIS & LUKACS

By: _____

Paul Karl Lukacs

67

Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
*Attorneys for Plaintiffs-Appellees*

## STATEMENT OF RELATED CASES

Plaintiffs are not aware of any related cases pending in this Court.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number:** 22-16020 _____

I am the attorney or self-represented party.

**This brief contains <u>15,382</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[**X**] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [**X**] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Paul Karl Lukacs*_____ **Date** March 17, 2023 _____

## <u>CERTIFICATE OF SERVICE</u>

***Teresa MacClelland, et al v. Cellco Partnership, et al***

**Ninth Circuit Case No. 22-16020**

I hereby certify that I electronically filed the foregoing/attached document,

titled **Plaintiffs-Appellees' Answering Brief**, on this date with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit using the

Appellate Electronic Filing system.

By doing so, an electronic copy was served on:

Crystal Nix-Hines, Esq.
Shon Morgan, Esq.
Marina Lev, Esq.
Christina Henriquez, Esq.
QUINN EMANUEL URQUHART & SULLIVAN, LLP

Kannon K. Shanmugam, Esq.
William T. Marks, Esq.
Yishai Schwartz, Esq.
Jing Yan, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*Counsel for Defendants-Appellants*
*Cellco Partnership and Verizon Communications, Inc.*

Signature: *  /s/ Paul Karl Lukacs        *        Date: March 17, 2023