**No. 22-16020**

# In the United States Court of Appeals for the Ninth Circuit

TERESA MACCLELLAND, KAREN UMBERGER, SCOTT WILLITS, VALERIE REED, JOHN ST. JARRE, LOUISE MONSOUR, VANESSA WEST, TIM FRASCH, DARLEEN PEREZ, WILLIAM KAUPELIS, KERRY SHOWALTER, BRUCE SCHRAMM, PATRICIA GAGAN, WILLIAM ERIC LOUGH, MICHAEL CARNEY, ANNA GUTIERREZ, JANETTE LISNER, MARILYN KAYE, TERESA TOY, MICHAEL BRANOM, GLORIA STERN, DAVID MASSARO, AUGUSTUS JOHNSON, EDNA TOY, MOLLY BROWN, LINDA JENKINS, and GABRIELLE POZZUOLI, for themselves, as Private Attorneys General, and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

CELLCO PARTNERSHIP, D/B/A VERIZON WIRELESS and VERIZON COMMUNICATIONS, INC.,

*Defendants-Appellants.*

On Appeal from the United States District Court for Northern California
Case No. 3:21-cv-08592-EMC (The Hon. Edward M. Chen)

## BRIEF OF AMERICAN ASSOCIATION FOR JUSTICE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

JESSIE GARLAND
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336

TAD THOMAS, PRESIDENT
AMERICAN ASSOCIATION FOR JUSTICE
777 Sixth Street, Suite 200
Washington, DC 20001
(502) 387-0694

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
*matt@guptawessler.com*

March 24, 2023                    *Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* the American Association for Justice states that it is a non-profit organization. It has no parent corporation or publicly owned corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

Corporate disclosure statement ................................................................. iii

Table of authorities ................................................................................. iii

Interest of amicus curiae ........................................................................... 1

Introduction ............................................................................................ 2

Argument ............................................................................................... 3

    I.    Verizon's contractual provision designed to restrict individual arbitrations is unconscionable and its contract is therefore unenforceable ................................................................................ 3

        A.    The mass-arbitration provision's forced delay of claims is unconscionable ..............................................................................5

        B.    Forcing consumers to relinquish their right to counsel of choice is substantively unconscionable........................................ 11

Conclusion .......................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Adir International, LLC v. Starr Indemnity & Liability Co.*,
    994 F.3d 1032 (9th Cir. 2021) ...................................................12

*Ali v. J.P. Morgan Chase Bank, N.A.*,
    647 F. App'x 783 (9th Cir. 2016)..............................................14

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    6 P.3d 669 (Cal. 2000) ........................................................ 14, 16

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................2

*Baltazar v. Forever 21, Inc.*,
    367 P.3d 6 (Cal. 2016)...........................................................3, 6

*Baxter v. Genworth North America Corp.*,
    16 Cal. App. 5th 713 (2017) ....................................................14

*Brobeck, Phleger & Harrison v. Telex Corp.*,
    602 F.2d 866 (9th Cir. 1979)...................................................10

*Carbajal v. CWPSC, Inc.*,
    245 Cal. App. 4th 227 (2016) ....................................................7

*Dietrich v. Boeing Co.*,
    14 F.4th 1089 (9th Cir. 2021) ...................................................6

*Elite Logistics Corp. v. Hanjin Shipping Co.*,
    589 F. App'x 817 (9th Cir. 2014) .............................................13

*Ellis v. U.S. Security Associates*,
    224 Cal. App. 4th 1213 (2014) ............................................7, 14

*Ferguson v. Countrywide Credit Indusries, Inc.*,
    298 F.3d 778 (9th Cir. 2002) ...................................................14

*International Brotherhood of Teamsters v. NASA Services, Inc.*,
    957 F.3d 1038 (9th Cir. 2020)...................................................9

*Lim v. TForce Logistics, LLC,*
    8 F.4th 992 (9th Cir. 2021) ...................................................................3, 5, 10

*Nino v. Jewelry Exchange, Inc.,*
    609 F.3d 191 (3d Cir. 2010) ...................................................................15

*OTO, L.L.C. v. Kho,*
    447 P.3d 680 (Cal. 2019) ...................................................................6, 13, 15

*Outdoor Services, Inc. v. Pabagold, Inc.,*
    185 Cal. App.3d 676 (1986) ...................................................................12

*Penilla v. Westmont Corp.,*
    3 Cal. App. 5th 205 (2016) ...................................................................13

*Pokorny v. Quixtar,*
    601 F.3d 987 (9th Cir. 2010) ...................................................................3

*Potashnick v. Port City Construction Co.,*
    609 F.2d 1101 (5th Cir. 1980) ...................................................................12

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) ...................................................................3, 13

*Roa v. Lodi Medical Group, Inc.,*
    37 Cal. 3d 920 (1985) ...................................................................12

*Sanchez v. Valencia Holding Co., LLC,*
    353 P.3d 741 (Cal. 2015) ...................................................................12

*Sonic-Calabasas A, Inc. v. Moreno,*
    311 P.3d 184 (Cal. 2013) ...................................................................*passim*

*Ting v. AT&T,*
    319 F.3d 1126 (9th Cir. 2003) ...................................................................3, 13

## Statutes

California Business & Professional Code § 17200 .......................................7

California Business & Professional Code § 17500 .......................................7

California Civil Code § 1750 .......................................................................7

**Other Authorities**

Loren H. Brown, Matthew A. Holian, Arindam Ghosh,
*Bellwether Trial Selection in Multi-District Litigation: Empirical Evidence in Favor of Random Selection*, 47 Akron L. Rev. 663 (2014) ....................................................... 11

J. Maria Glover,
*Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022) ........................................................... 11

Alexandra D. Lahav,
*Bellwether Trials*, 76 Geo. Wash. L. Rev. 576 (2008) ................................................. 11

## INTEREST OF AMICUS CURIAE[1]

The American Association for Justice is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ's members primarily represent plaintiffs in personal injury actions, employment rights cases, consumer cases, and other civil actions. Throughout its 75-year history, AAJ has served as a leading advocate for the right of all Americans to seek legal recourse for wrongful conduct.

AAJ files this brief for two reasons. First, the brief highlights the key ways in which Verizon's contract forces its customers to give up their right to file claims against the company even in arbitration. Second, the brief explains why Verizon's "mass-arbitration" requirements are classic examples of unconscionable contractual provisions that may not be enforced under longstanding California contract law. Based on its members' expertise in both arbitration and litigation—and its organizational concern for the development of the law on those issues—AAJ is well positioned to offer a unique perspective on these issues.

---

[1] All parties consent to the filing of this brief, and no counsel for any party authored it in whole or in part. Apart from the amicus curiae, no person, party, or party's counsel contributed money intended to fund the brief's preparation and submission.

## INTRODUCTION

Corporations like Verizon have fought for years to close the courts to consumers and restrict claims brought against them to individual arbitrations. They were ultimately successful. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Forced arbitration requirements—including class-action bans—are now a ubiquitous part of most consumer contracts. As a result, corporations have left many consumers with only one remaining pathway to pursue claims—individual arbitration.

But now, as thousands of its customers pursue individual arbitrations, Verizon has sought to shut that pathway down as well. The company's take-it-or-leave-it contract imposes a set of "mass arbitration" procedural requirements that, if upheld, would force its consumers to wait years, even decades, before filing their claims if they decide to retain the same lawyer as other consumers. And by coupling this forced-delay requirement with applicable statutes of limitations, Verizon's contract guarantees that most consumers' claims will be time-barred. Of the 2,712 Verizon customers who retained the same law firm to bring similar claims against Verizon through arbitration, all but a tiny fraction will simply lose their ability to pursue their claims at all. The earliest some would be permitted to file their claims under Verizon's contract would likely be the year 2179—156 years from now.

Because Verizon's contract is "unduly oppressive," *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal. 2013), and "unreasonably favorable to the more powerful party," it is "unconscionable" and therefore unenforceable. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021). The district court was right in refusing to enforce Verizon's contract. This Court should affirm.

## ARGUMENT

## I.  Verizon's contractual provision designed to restrict individual arbitrations is unconscionable and its contract is therefore unenforceable.

In California, contracts that are "unreasonably favorable to the more powerful party" are unenforceable. *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016); *see Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010) (state contract law determines the enforceability of an arbitration contract). Form contracts, like the one here, are procedurally unconscionable. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see also* Verizon Br. 35 (acknowledging that its contract is a form contract). And if the terms of a procedurally unconscionable contract are substantively unconscionable—because they are "overly harsh, unduly oppressive, or unfairly one-sided*," Lim*, 8 F.4th at 1002—the contract is unenforceable. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). Although Verizon's contract is littered with substantively unconscionable terms, this brief focuses on just one: the mass-arbitration provision.

3

*See* ER 12–25. Because that provision is substantively unconscionable, Verizon's contract is unenforceable.

The text of Verizon's mass arbitration provision says the following:

> If 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims, and counsel for the Verizon Wireless customers bringing the claims are the same or coordinated for these customers, the claims shall proceed in arbitration in a coordinated proceeding. Counsel for the Verizon Wireless customers and counsel for Verizon Wireless shall each select five cases to proceed first in arbitration in a bellwether proceeding. The remaining cases shall not be filed in arbitration until the first ten have been resolved. If the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding, each side may select another five cases to proceed to arbitration for a second bellwether proceeding. This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration. A court will have authority to enforce this clause and, if necessary, to enjoin the mass filing of arbitration demands against Verizon.

ER 38. There is little dispute about what this provision means. By its terms, the clause specifies that if 25 customers bring similar individual claims against Verizon in arbitration and retain the same counsel, only ten of their claims can be heard at once. The eleventh customer's claim cannot even "be filed in arbitration until the first ten have been resolved." *Id.* The remaining claims can proceed to arbitration only ten at a time.

The consequences of this provision are also clear. Of the 2,721 Verizon customers who have chosen the same counsel to represent them in pursuing their individual claims against the company, all but the first ten must wait an indefinite

amount of time before they can file their claims. And although the amount of time they must wait is indefinite, statistics from the American Arbitration Association show "that the average disposition time for an arbitration takes a little under seven months." ER 21. Under these conditions, it will take roughly 156 years for the 2,712 Verizon customers who have chosen plaintiffs' counsel to represent them to have their claims resolved. Couple this requirement with a three- to four-year statute of limitations, ER 14, and most of Verizon's consumers with claims will simply lose them.

It is no answer to say, as Verizon does here, that its customers can avoid this outcome by giving up their right to hire the lawyer of their choice. Not only is the right to choose counsel fundamental, but Verizon's mass-arbitration provision imposes this condition only on *consumers*; Verizon remains free to use the same lawyer of its choice for all of the individual arbitrations. The one-sidedness of that proposal obviously confers an unfair advantage on Verizon and only adds to its unconscionability. In short, because the effect of Verizon's mass-arbitration requirements is "unreasonably favorable to the more powerful party," it is unconscionable. *See Lim*, 8 F.4th at 1002.

### A. The mass-arbitration provision's forced delay of claims is unconscionable.

By prohibiting no more than ten claims from being filed in arbitration at a time, and then forcing those unfiled claims to wait until the filed ones are resolved,

the mass-arbitration provision is substantively unconscionable because it unreasonably delays—if not outright eliminates—a consumer's right to pursue a legitimate claim against the company. Under the provision's requirements, one third of the 2,721 consumers currently represented by the lawyers in this case would have to wait roughly more than one hundred years to file their claims, and almost all would have to wait at least a decade. *See* ER 21, 38.

That type of delay, standing alone, makes the mass-arbitration provision unconscionable. Because the "fundamental attributes of arbitration" include "greater efficiency and speed," "procedural" requirements that "undermine[]" these attributes are unconscionable. *OTO, L.L.C. v. Kho*, 447 P.3d 680, 698 (Cal. 2019); *see also Sonic-Calabasas A*, 311 P.3d at 200 (the FAA does not "permit[] additional delay that results . . . from an administrative scheme"). And that principle is not specific to arbitration. Unnecessary delay "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021); *see Baltazar*, 367 P.3d at 11 (terms that "contravene the public interest or public policy" are substantively unconscionable).

Here, though, the contract's forced claim-filing delay is even worse because it effectively eliminates consumers' ability to any obtain relief at all. Regardless of whether the wait time is 10, 20, or a hundred years, the three- or four-year statute of limitations—which Verizon's contract explicitly preserves, *see* ER 37—would kick in

to bar most consumers' claims after just a few years.[2] *See* ER 14. So, under Verizon's forced mass-arbitration requirements, only about 80 of the 2,712 consumers that have currently chosen to be represented by the same lawyer will even have a chance at having their claims heard before the limitations period runs. By creating such a scheme, Verizon has imposed a system of arbitration that serves only to "maximize its advantages." *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1229 (2014); *see Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 248 (2016) (rejecting as unconscionable a contract where the stronger party has "require[d] additional protections merely to maximize its advantage over the weaker party"). Because that kind of claim-killing delay is both "unduly oppressive" and "unfairly one-sided," the provision is clearly unconscionable. *Sonic-Calabasas A, Inc.*, 311 P.3d at 202.

Rather than attempting to explain why this setup isn't unconscionable, Verizon attempts to sidestep it. The company suggests that it's not clear how the statute of limitations would apply to claims subject to its mass-arbitration provision. That is wrong. Verizon explicitly reserved the right to raise a statute of limitations defense in arbitration by including in the contract's arbitration provision a clause

---

[2] The plaintiffs brought statutory claims under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* ER 4.

stating that "[t]he same defenses are also available to both parties as would be available in court, including any applicable statute of limitations." ER 37.

That language could hardly be clearer. Yet Verizon says a "notice provision" found in a different part of the contract somehow eliminates any statute of limitations defense. Verizon Br. 44. In full, that provision states:

> You may call us to dispute charges on your bill or any service(s) for which you were billed, but if you wish to preserve your right to bring an arbitration or small claims case regarding such dispute you must write to us at the customer service address on your bill or send us a completed notice of dispute form…. Within the 180-day period mentioned above. If you do not notify us in writing of such dispute within the 180-day period you have waived your right to dispute the bill or such services and to bring an arbitration or small claims case regarding any such dispute.

ER 35. According to Verizon, a customer who writes to Verizon about their claim has tolled any applicable statute of limitations. Verizon Br. 44. But that is not at all what the notice provision does. By its terms, the contract's notice provision doesn't eliminate any preexisting statute of limitations defense—it adds an *additional* "period of limitation, shorter than that fixed by the statute of limitations," that a consumer must meet to bring their claim. Verizon Br. 55. The contract does not state that providing the required notice overrides any statute of limitations, and its arbitration provision itself specifically *preserves* limitations-based defenses. ER 37; *see Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1045 (9th Cir. 2020) (explaining "the fundamental canon requiring courts to construe contract terms in harmony").

8

Failing that argument, Verizon also suggests (at 42) that it is only "speculative" that its forced-delay procedure would ever delay claims long enough to be time-barred. In the company's view (at 42), the possibility of an extended delay rests on a "chain of multiple hypothetical contingencies": (1) "large numbers of customers would have to raise similar claims," then (2) "choose to be represented by the same counsel," and finally, (3) "multiple rounds of [] arbitrations would need to fail to produce a global resolution." But most of what the company claims is "unlikely" to happen—the first two "hypothetical" circumstances—have already happened. More than 2,000 consumers with similar claims have *already* retained the lawyers in this case. *See* ER 21 n.2 ("Hattis & Lukacs have been retained by 2,712 separate clients from around the country who each have false advertising claims against Verizon that are similar to the claims alleged in the present suit.").

And given the company-friendly incentives Verizon wove into its arbitration process, the third step—no global resolution—is not just likely but also the most rational outcome. The reason is simple: Delay benefits Verizon. Drawing out the process by years will not only lead to some consumers giving up, but within just a few years most claims will be time-barred anyway—meaning that Verizon can simply run out the clock instead of globally resolving claims. That is all the more true given that no more than twenty claims are permitted to proceed in a year, so the cost

to Verizon of waiting a few years is trivial. With no incentives for Verizon to reach a global resolution, the rational outcome is that there won't be one.

Barring that, Verizon urges (at 44) the Court to just ignore any unconscionability its contract creates because it promises not to raise statute of limitations issues in this case. But "[t]he drafter is saddled with the consequences of the provision *as drafted.*" *Lim*, 8 F.4th at 1004–05. "[W]hether a contract is fair or works an unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979). That rule makes good sense. A provision is unconscionable both due to its effect on these plaintiffs and because it will deter any others from coming forward. *Lim*, 8 F.4th at 1004–05 ("If the provision, as drafted, would deter potential litigants, then it is unenforceable.").

Finally, Verizon argues (at 37–39) that its forced-delay procedure is nothing more than a standard bellwether provision. Far from it. A bellwether process doesn't bar plaintiffs from filing their claims and place them at risk of losing their claims under a statute of limitations; it just selects certain cases to be tried first and then imposes no additional time-based limitations on those that follow. *See* Loren H. Brown, Matthew A. Holian, Arindam Ghosh, *Bellwether Trial Selection in Multi-District Litigation: Empirical Evidence in Favor of Random Selection*, 47 Akron L. Rev. 663, 664 (2014) (explaining that a bellwether process selects several cases to be tried first from a group

of already filed cases). And, in a standard bellwether trial, a defendant who loses faces incentivizes designed to facilitate a global resolution. Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 578 (2008). Those incentives are nonexistent here. For instance, if Verizon loses every one of the first ten claims, it will be even more incentivized to holdout and run the clock out on as many claims as it can. *See supra* I.A; J. Maria Glover, *Mass Arbitration,* 74 Stan. L. Rev. 1283, 1368 (2022) ("Nonbinding bellwethers are not well poised to guard against strategic holdout, where a party threatens inefficiency or delay to change the price of settlement.").

**B.    Forcing consumers to relinquish their right to counsel of choice is substantively unconscionable.**

Faced with overwhelming evidence of unconscionability, Verizon offers up an alternative way around its forced-delay requirements. It says that consumers can avoid the problems created by its contract simply by choosing different lawyers. But this proposed solution itself runs into similar unconscionability problems. Forcing consumers (but not Verizon) to relinquish the right to choose their lawyer is itself "unduly oppressive," "unfairly one-sided," and unjustified. *Sonic-Calabasas A*, 311 P.3d at 202. In short, requiring consumers to choose between two unconscionable options—to risk losing their claim or their lawyer—doesn't make either any less unconscionable.

To start, forcing consumers to give up a long-held right that they would have in standard arbitration proceedings or litigation is "unduly oppressive." *Id.*

"Arbitration is intended as an alternative to litigation, and the unconscionability of an arbitration agreement is viewed in the context of the rights and remedies that otherwise would have been available to the parties." *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 756 (Cal. 2015). But Verizon's contract forces plaintiffs give up a right they would otherwise have in court. In California, it is long recognized that "a party to an arbitration has the right to be represented by counsel at any arbitration proceeding." *Outdoor Servs., Inc. v. Pabagold, Inc.*, 185 Cal.App.3d 676, 685 (1986); *see Roa v. Lodi Med. Group, Inc.*, 37 Cal. 3d 920, 925 (1985) ("[O]ur cases have long recognized that the constitutional due process guarantee" grants the "right to be represented by retained counsel in civil actions"). And the right to hire counsel includes the right to hire counsel of one's choice. *See Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) ("[C]ourts have generally acknowledged a civil litigant's Fifth Amendment due process right to retain and fund the counsel of their choice."); *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980) ("historically and in practice, the right to a hearing has always included the right to the aid of counsel when desired and provided by the party asserting the right"). Under Verizon's contract, however, a consumer's only meaningful way to have their claim heard is to give up their fundamental right to choose a lawyer.

What's more, Verizon's contract only forces consumers—not Verizon—to give up this right. That type of one-sidedness is clearly unconscionable. *Elite Logistics*

*Corp. v. Hanjin Shipping Co.*, 589 F. App'x 817, 819 (9th Cir. 2014) ("Mutuality is the 'paramount' consideration when assessing substantive unconscionability."). Because only consumers must find a different lawyer—Verizon remains free to retain the same lawyer of its choice in every proceeding—the burdens such a condition would impose are faced only by consumers. Consider that Verizon's contract prevents more than 24 consumers from being represented by the same law firm. So, the 2,712 additional consumers who initially chose the lawyers in the case would need to find 113 separate firms to represent them. That would require consumers to not just find their second-choice counsel, but their 113th choice—assuming enough qualified firms can even be found. Verizon, by contrast, faces no similar condition. It remains free to select what it deems is the best firm to represent it in all of its arbitrations. That is "overly harsh [and] one-sided," *OTO, L.L.C.*, 447 P.3d at 690, and therefore unconscionable. *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 218 (2016) (holding that a contract is unconscionable where it would "significantly deter, if not effectively preclude" assertion of claims).

This lack of mutuality also hands Verizon an unfair informational advantage. It is "unreasonably favorable," *Poublon*, 846 F.3d at 1261, to Verizon to only allow it the "advantages inherent in being a repeat player." *Ting*, 319 F.3d at 1152; *see Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 726 (2017) (where contract just limits one side's ability to do discovery and "the same prohibition does not apply to [the

defense], the arbitration agreement is unfairly one-sided"); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 786 (9th Cir. 2002) (finding "undue advantage[]" creating substantive unconscionability where the agreement limits deposition of a corporate representatives to four designated subjects, but does not impose a similar limitation on depositions of employees.).

That Verizon has failed to provide any persuasive justification for forcing consumers into this unfair, one-sided position means its contract is unenforceable. *See Ellis*, 224 Cal. App. 4th at 1229 (explaining that, when a drafter lacks a "reasonable justification" for imposing a one-sided provision, "i.e., a justification grounded in something other than the [drafters'] desire to maximize its advantage," the contract is unenforceable). *See Ali v. J.P. Morgan Chase Bank, N.A.*, 647 F. App'x 783, 785 (9th Cir. 2016) (where a provision "lacks mutuality, substantive unconscionability 'turns not only on a one-sided result, but also on an absence of justification for it'" (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 694 (Cal. 2000)).

Verizon claims that forcing consumers to give up their right to choose a lawyer "promotes overall efficiency." Verizon Br. 46. But, as we have explained, it does just the opposite. Forcing consumers to give up their currently chosen lawyers and instead seek out new firms to pursue the same claim is anything but "efficient." Nor is requiring 113 different firms to get up to speed on the same issue. To the contrary, it compels consumers to "surrender the benefits and efficiencies of the [standard

dispute resolution] process" without any equivalent gain in "efficiencies or cost savings." *OTO, L.L.C.*, 447 P.3d at 695 (explaining why such provisions are substantive unconscionable).

Verizon's alternative justification fares no better. It asserts that its mass-arbitration provision will avoid the "settlement pressure created by the significant arbitration fees that accompany mass arbitration." Verizon Br. 46. But the company can hardly complain about being stuck with the arbitration fees it voluntarily agreed to pay in the contract it drafted. The only reason the company must pay arbitration fees is because it *chose* to—Verizon assigned itself the arbitration fees in the form contract that it drafted without any input from consumers. ER 38. In drafting the contract, Verizon could have excused itself from paying all the fees for these claims—it pointedly did so for other types of claims. *See* ER 38 (exempting itself from responsibility for fees in any claim "filed for purposes of harassment or [that] is patently frivolous"). Courts may not excuse drafters from the consequences of their own contracts simply because they later regret how the contract was drafted. *See, e.g.*, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 205 (3d Cir. 2010) (explaining that "the [drafter] is saddled with the consequences of the provision *as drafted*").

"Without reasonable justification" for this contract's "lack of mutuality," Verizon's forced mass-arbitration process "appears less as a forum for neutral dispute resolution and more as a means of maximizing [defendant's] advantage." *Armendariz*,

6 P.3d at 692. As the district correctly found, that makes the contract plainly unconscionable and unenforceable.

## CONCLUSION

For the foregoing reasons the Court should affirm the judgment below.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
matt@guptawessler.com

JESSIE GARLAND
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336

TAD THOMAS, PRESIDENT
AMERICAN ASSOCIATION FOR JUSTICE
777 Sixth Street, Suite 200
Washington, DC 20001
(502) 387-0694

March 24, 2023                    *Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,778 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

_/s/ Matthew W.H. Wessler_
Matthew W.H. Wessler